IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
FEB 2 4 2006
U.S. COURT OF FEDERAL CLAIMS

SHELL OIL COMPANY, UNION OIL COMPANY OF CALIFORNIA, ATLANTIC RICHFIELD COMPANY, and TEXACO INC.,

Plaintiffs,

v.

UNITED STATES OF AMERICA,

Defendant.

06-141 C
Case No.

COMPLAINT

1. Plaintiffs Shell Oil Company, Union Oil Company of California, Atlantic Richfield Company, and Texaco Inc. (collectively referred to as the "Oil Companies") bring this action for damages against the United States for breaches of contract under the Tucker Act and the Contract Settlement Act of 1944.

2. This action arises from World War II contracts between the Oil Companies and the United States for the production of high octane aviation fuel known as "Avgas" (the "Avgas Contracts"). The Oil Companies produced Avgas in extraordinary quantities at the demand of, and in fulfillment of the Avgas Contracts with, the United States. During the course of their performance of the Avgas Contracts, and as a direct consequence of their production of Avgas, the Oil Companies generated and discharged hazardous substances at what became the McColl Superfund site ("McColl Site") located in Fullerton, California. The Oil Companies have paid substantial sums in responding to the hazardous substances at the McColl Site and with the

cleanup now substantially complete, they bring this action to recover those amounts from the United States.

**JURISDICTION**

3. This Court has jurisdiction over this matter pursuant to the Tucker Act, 28 U.S.C. § 1491, and pursuant to the Contract Settlement Act of 1944, 41 U.S.C. § 113.

**THE PARTIES**

4. Shell Oil Company ("Shell") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Houston, Texas.

5. Union Oil Company of California ("Union") is a corporation organized and existing under the laws of the State of California with its principal place of business in San Ramon, California.

6. Atlantic Richfield Company ("Atlantic Richfield") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Warrenville, Illinois.

7. Texaco Inc. ("Texaco") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in San Ramon, California.

8. The United States of America is the defendant.

**FACTUAL ALLEGATIONS**

9. The Reconstruction Finance Corporation ("RFC") was established in 1932 and its authority was expanded in June 1940 to aid in national defense programs. The RFC established the Defense Supplies Corporation ("DSC") as a subsidiary corporation to procure strategic commodities (among other activities). Pursuant to this authority, during World War II, the United States, through the DSC, entered into one or more contracts with various predecessors-in-

interest of the Oil Companies to refine and manufacture Avgas for purchase by the United States in support of the war effort. Specifically, DSC and the Oil Companies' various predecessors-in-interest entered into at least the following Avgas Contracts:

a. On April 10, 1942, Shell and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of Avgas.

b. On May 1, 1943, Shell and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of Avgas.

c. On December 31, 1942, Union and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of Avgas.

d. On May 1, 1943, Union and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of Avgas.

e. On February 3, 1942, Richfield Oil Corporation, a predecessor-in-interest to Atlantic Richfield, and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of Avgas.

f. On February 20, 1943, Richfield Oil Corporation, a predecessor-in-interest to Atlantic Richfield, and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of Avgas.

g. On January 17, 1942, The Texas Company, a predecessor-in-interest to Texaco Inc., and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of Avgas.

h. On February 8, 1943, The Texas Company, a predecessor-in-interest to Texaco Inc., and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of Avgas.

i. On June 10, 1942, Tidewater Associated Oil Company, a predecessor-in-interest to Texaco Inc., and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of Avgas.

j. On February 18, 1943, Tidewater Associated Oil Company, a predecessor-in-interest to Texaco Inc., and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of Avgas.

With the exception of certain provisions not pertinent to this action, the Avgas Contracts are substantially identical in all respects.

10. The United States is bound by the Avgas Contracts either in its own right or as the successor-in-interest to both the DSC and RFC.

11. At the end of World War II, the United States terminated the Avgas Contracts.

12. The Avgas Contracts require the United States to pay and/or reimburse the Oil Companies for all unanticipated, extraordinary costs or expenses incurred by the Oil Companies as a result of the production of Avgas pursuant to the Avgas Contracts and/or in otherwise complying with the government mandate to maximize manufacture of Avgas at all costs.

13. For example, the Avgas Contracts expressly require the United States to pay:

> [A]ny new or additional taxes, fees, or charges, other than income, excess profits, or corporate franchise taxes, which Seller may be required to pay by any municipal, state, or federal law in the United States or any foreign country to collect or pay by reason of the production, manufacture, sale or delivery of the [Avgas].

14. Also for example, the Avgas Contracts, either originally or as amended, expressly provide in relevant part with minor variations:

> [I]f by reasons of any cause or condition . . . resulting directly or indirectly from the existence of a state of war, the normal functioning of any refinery at which any portion of the [Avgas] supplied hereunder is manufactured shall be interfered with to such an extent that in the opinion of the Seller the cost of refining [that

> Avgas] is increased in respects other than those corrected by adjustment of the base price under the above paragraphs (a) and (b), Seller may give notice to Buyer that the delivery of [Avgas] will be reduced in an amount sufficient in the judgment of Seller to offset the added cost of refining unless Buyer shall agree with Seller to increase the price paid for [Avgas] by an amount sufficient to offset such increased cost.

15. In addition, the parties' intent was for the United States to pay and/or reimburse the Oil Companies for all unanticipated, extraordinary costs or expenses incurred by the Oil Companies as a result of the production of Avgas pursuant to the Avgas Contracts and/or in otherwise complying with the government mandate to maximize manufacture of Avgas at all costs.

16. The disposal of hazardous substances at the McColl Site from the Oil Companies production of Avgas was brought about directly or indirectly from the existence of a state of war.

17. On February 1, 1991, the United States and State of California brought an action against the Oil Companies (and other defendants) in the Central District of California pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), as amended, 42 U.S.C. § 9601 *et seq.*, for recovery of costs ("CERCLA response costs") incurred in responding to the release of hazardous substances at the McColl Site. On April 23, 1991, the Oil Companies counterclaimed against the United States for the CERCLA response costs, for breaches of contract, and for related causes of action.

18. On September 28, 1993, the Central District of California granted summary judgment to the United States on liability against the Oil Companies for the CERCLA response costs. The court bifurcated the issues relating to cost recovery from the Oil Companies' counterclaims, deferring the counterclaims. On December 12, 1994, the parties entered into a partial consent decree pursuant to which the Oil Companies paid $18,000,000 for CERCLA response costs incurred by the United States and the State of California through 1990, and the

Oil Companies retained the right to recover these funds. The partial consent decree also clarified that the September 28, 1993 Order constituted a declaratory judgment pursuant to CERCLA in favor of the United States and the State of California for ongoing CERCLA response costs.

19. On September 18, 1995, the Central District of California granted the Oil Companies summary judgment on liability against the United States for the CERCLA response costs based on some of the Oil Companies' counterclaims, and after trial in 1998, allocated 100 percent of all CERCLA response costs to the United States, including the $18,000,000 previously paid by the Oil Companies. The United States Court of Appeals for the Ninth Circuit reversed the Central District of California's judgment on liability for CERCLA response costs relating to the majority of the hazardous substances at the McColl Site. The Ninth Circuit, however, affirmed the Central District's allocation of 100 percent of the costs to the United States as to a very small amount of the hazardous substances at the McColl Site, which related to the treatment of government-owned benzol. Thus, the Oil Companies were found liable for the CERCLA response costs for the non-benzol related hazardous substances. On remand, the Oil Companies pursued their remaining counterclaims, which have all been dismissed.

20. By letter dated November 23, 2005, the Oil Companies notified the United States General Services Administration (as successor-in-interest to the contracting agency) (the "GSA") of its claims. The GSA received this letter on November 25, 2005.

21. By letter dated February 15, 2006, the GSA stated that it "can find no basis for recovery and no basis for the appointment of a contracting officer." The GSA further stated that it "cannot consider this matter at this time" because "there is no account available within GSA to fund liabilities of the" contracting agency.

## COUNT I

22. Paragraphs 1-21 are re-alleged and incorporated.

23. The Oil Companies have incurred substantial expenses in connection with the presence of hazardous substances at the McColl Site, including litigation costs.

24. All costs incurred by the Oil Companies relating to the McColl Site are new or additional charges that the Oil Companies were required to pay by municipal, state, or federal law by reason of the production, manufacture, sale, or delivery of the Avgas, and/or costs resulting directly or indirectly from the existence of a state of war to which the United States has agreed to pay. As such, the United States is required to pay and/or reimburse the Oil Companies for these costs under the Avgas Contracts.

25. In addition, pursuant to the partial consent decree, the Oil Companies paid the United States $13,248,000 and the State of California $4,752,000 towards their claims for recovery of CERCLA response costs. In the partial consent decree, the Oil Companies retained the right to recover these funds. These costs are new or additional charges that the Oil Companies were required to pay by a municipal, state, or federal law by reason of the production, manufacture, sale, or delivery of the Avgas, and/or costs resulting directly or indirectly from the existence of a state of war to which the United States has agreed to pay. As such, the United States is required to pay and/or reimburse the Oil Companies for these costs under the Avgas Contracts.

26. In addition, any CERCLA response costs incurred by the Oil Companies or which the Oil Companies are required to pay pursuant to any judgment entered in the Central District of California or otherwise are new or additional charges that the Oil Companies were required to pay by a municipal, state, or federal law by reason of the production, manufacture, sale, or

delivery of the Avgas, and/or costs resulting directly or indirectly from the existence of a state of war to which the United States has agreed to pay. As such, the United States is required to pay and/or reimburse the Oil Companies for these costs under the Avgas Contracts.

27. The United States' refusal to pay and/or reimburse the Oil Companies for the costs described in Paragraphs 24-26 under the Avgas Contracts materially breaches those contracts. As a result of the United States' breaches of contract, the Oil Companies are entitled to recover the full amount of the costs described in Paragraphs 24-26, according to proof, by reason of the United States' failure to adhere to its obligation to pay and/or reimburse the Oil Companies for these costs pursuant to the Avgas Contracts, in light of the intent of the parties. Moreover, the United States' breach of the Avgas Contracts entitles the Oil Companies to damages or other monetary relief.

## COUNT II

28. Paragraphs 1-27 are re-alleged and incorporated.

29. The United States' refusal to pay and/or reimburse the Oil Companies for the costs described in Paragraphs 24-26 constitutes a failure to pay "fair compensation" in violation of the Contract Settlement Act of 1944, 41 U.S.C. §§ 101 *et seq.*, for which the Oil Companies are entitled to payment of "fair compensation," together with interest as provided in 41 U.S.C. § 106(f).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray that this Court:

a. Award the Oil Companies Damages in an amount to be determined at trial, together with prejudgment interest, as a result of United States' breaches of contract;

b. Award the Oil Companies its costs, interest, and attorneys' fees as allowed by law; and

c. Order such other relief as the Court may deem just and proper.

Dated: February 24, 2006

Respectfully Submitted,

Michael W. Kirk

Michael W. Kirk
*Counsel of Record*
COOPER & KIRK, PLLC
555 Eleventh Street, NW
Suite 750
Washington, DC 20004
(202) 220-9600

*Of Counsel:*
Vincent J. Colatriano
Nicholas A. Oldham
COOPER & KIRK, PLLC
555 Eleventh Street, N.W.
Suite 750
Washington, D.C. 20004
(202) 220-9600