(b) Buyer shall take delivery of said gasoline in tanker barges, tank cars, or tank trucks (tank truck deliveries to be not in ex cess of available tank truck loading facilities for 100 octane aviation gasoline) to be supplied by Buyer (except as otherwise provided in paragraph (1) of this Section IX) at its own cost and expense, at Seller's refinery in quantities approximating the current rate of production.

(c) Each vessel delivery shall be made and title and risk of loss shall pass at the intake pipe of the vessel. Buyer shall give no tice to Seller as far in advance as practicable, and in no case less than forty-eight (48) hours, of the arrival of each vessel and of the quantity of and specifications of the gasoline to be loaded. Seller shall furnish without cost to Buyer berth at which each vessel may safely lie afloat to gether with all connections and facilities for loading, and shall load the product on board. Deliveries shall be made in accordance with the delive conditions at each loading point which currently are in effect with respe to deliveries made at such point to other customers.

(d) Each tank car delivery shall be made and title and ri of loss shall pass at the time the loaded tank car is turned over to the railroad.

(e) Each tank truck delivery shall be made and title and risk of loss shall pass at the time the loading of the truck is complete

(f) On shipments made from refineries and any other poin where licensed inspectors are regularly available, Seller shall furnish certificates of inspection by a licensed inspector satisfactory to Buyer which shall set forth the quantity and quality of each shipment of gaso- line. The inspection procedure and the form of the certificate shall co form with usual industry practice. The certificates of inspection shall be issued in five counterparts, one set of which shall accompany the rel tive shipment, one of which shall be forwarded forthwith to Buyer, a thi submitted to Buyer with the monthly statement required by Section IV hereof, a fourth set of which shall be delivered forthwith to Seller, a a fifth set of which shall be delivered forthwith to the authorized of- ficer or employee of the War Department or Navy Department referred to in paragraph (m) of this Section IX. Buyer may, at its option, waive t



Entry 510
Box 3593
Folder - 360 Tide Water

requirements of inspection by a licensed inspector, and in such event, and in case of shipments made from points (other than refineries) where no licensed inspector is available, Seller shall furnish its own certificates of inspection, which certificates shall be controlling.

(g) Inspection as to quantity of delivery into vessels shall be made by taking the temperature and measuring and gauging the product in shore tanks from which delivery is made immediately before or immediately after loading. Inspection as to quantity of delivery into tank cars and tank trucks shall be made in accordance with the accepted practices of the trade. Adjustment in volume to a sixty degree Fahrenheit (60°F.) basis shall be made in accordance with the correction table of the United States Bureau of Standards prevailing at the time of delivery, except in case of each delivery of a quantity of less than four thousand (4,000) gallons into a tank truck or motor transport in which case no adjustment shall be made.

(h) Inspection as to quality shall be made according the latest standard or tentative standard methods of the American Soc for Testing Materials wherever applicable and the product as shipped sha conform as to quality with the specifications set forth in Exhibit A hereof.

(i) The cost of product inspection shall be paid by Sell and billed separately to Buyer, which shall pay such cost, except when Seller's inspection is accepted in which case Seller shall assume the co of its own inspection.

(j) The certificates of inspection of quantity and quality shall be accepted by Buyer and Seller as conclusive for invoice, payment, and all other purposes of this contract.

(k) Should any such certificate indicate a failure of th product shipped to conform completely to the specifications of quality, Buyer may accept delivery of the product and claim an adjustment for such deficiency, provided, that in the event that such a claim is made Seller shall be notified and given an opportunity to inspect said shipment th five (5) days after arrival at destination but in any event before un ing.

Entry 510
Box 3593
Folder - 360 - Tide Water
AUO 32

(l) Notwithstanding the preceding provisions of this Section IX and at the request of Buyer, Seller shall utilize its existing an available facilities (other than tankers and barges) for handling, metering and delivering the gasoline purchased by Buyer to points (other than Seller's refinery at which the gasoline was manufactured) designated by Buyer within the marketing area in the continental United States served by Associated Division of Seller, such service to be at the expense of Buyer and at Buyer's risk. In the event of loss Seller shall make its re ords available to Buyer to prove the extent and value of such loss.

(m) Until further notice from Buyer to Seller, for the purposes of this Section IX any officer or employee of the War Department or Navy Department who is properly authorized to accept deliveries of gasoline for his Department is hereby nominated as agent for Buyer and authorized to take delivery of aviation gasoline hereunder, to waive the aforesaid requirements of inspection by a licensed inspector, and to receipt on behalf of Buyer, in a manner approved by Buyer, for deliveries of such aviation gasoline from Seller to Buyer.

X. Force Majeure.

Seller shall not be liable for delays or defaults in performan under this contract due to causes beyond its control and without its fau or negligence, including, but not restricted to, acts of God or of the p lic enemy, acts or requests of the Government or of any governmental off cer or agent purporting to act under authority, floods, fires, explosion epidemics, quarantine restrictions, strikes, freight embargoes and failures, exhaustion or unavailability, or delays in delivery of any product service or material necessary in the construction of the facilities cont plated by Section I hereof or in the manufacture and delivery of aviati gasoline deliverable hereunder, including crude oil, supplies, raw materials, ingredients and lead tetraethyl.

XI. Arbitration.

In case of any disagreement between Buyer and Seller as to an right, obligation, term, or provision of this contract, including any d agreement as to the price to be paid for gasoline to be delivered here

Entry 610
Box 3593
Folder - 360 Tide Water
AUO 32

the parties shall make an earnest effort to settle such disagreement their mutual satisfaction. If such effort be unsuccessful, then either party may cause such disagreement to be submitted for determination by ar bitrators (none of whom shall be connected with either party hereto) by g ing to the other party a notice in writing or by telegraph to that effect and giving the name of the arbitrator chosen by the party giving the notice. Within five (5) days of receipt of such notice of arbitration, the other party shall, in writing or by telegraph, name the arbitrator chosen by such party, and within five (5) days after the appointment of the second arbitrator, an additional arbitrator shall be selected by the two (2) arbitrators theretofore appointed, provided, however, if one of the parti shall have failed to appoint an arbitrator as hereinbefore provided, the sole arbitrator shall arbitrate the disagreement alone. If two (2) arbitrators shall have been appointed as aforesaid and shall have failed to select an additional arbitrator within the above stated time, the additional arbitrator shall be appointed by the Senior Judge of the United States Circuit Court of Appeals for the Ninth Circuit acting in his vidual capacity, upon application therefor by either of the parties. The decision of a majority of the arbitrators so appointed, or if either part shall have failed to appoint its arbitrator as aforesaid, the decision of the sole arbitrator shall be final and binding on the parties for all pur poses. Each party shall pay the cost and expenses of the arbitrator appointed by such party, and the other costs and expenses of the arbitratio including the cost and expense of the additional arbitrator, shall be pai by the party to the arbitration whose claim is not sustained or if partially sustained the costs shall be apportioned. Pending such determination of every disagreement as to the price to be paid for gasoline delivered hereunder, Buyer shall, upon contesting any price claimed by Seller to be due, pay the price which Buyer alleges to be due and shall immediately upon such determination pay any balance found by mutual agreement or by said arbitrators to be due.

XII. Taxes.

(a) Buyer shall pay in addition to the prices lished in Sections IV and V hereof, any new or additional taxes, fees, or

Entry 510 Box 3593 Folder - 360 Tide Water AVO 32

charges, other than income, excess profits, or corporate franchise taxes which Seller may be required by any municipal, state, or federal law in the United States or any foreign country to collect or pay by reason of production, manufacture, sale or delivery of the commodities delivered h under. Buyer shall also pay any such taxes on crude petroleum, or the transportation thereof, to the extent such taxes result in increased cos of the commodities delivered hereunder not compensated for by Section V hereof.

(b) Buyer shall also pay in addition to the prices as es tablished in Sections IV and V hereof, any now existing taxes, fees, or charges measured by the volume or sales price of the aviation gasoline d livered hereunder, imposed upon Seller by reason of the production, manu facture, storage, sale or delivery of such gasoline, unless Buyer or Sel ler is entitled to exemption from a given tax, fee or charge by virtue o Buyer's governmental status; it being understood that Buyer now believe that both Buyer and Seller are entitled to such exemption. Seller repr sents that the taxes, fees and charges referred to in this paragraph ha not been included in its computation of costs on which the prices set f in Section IV hereof are based.

(c) If in any case the parties cannot agree on the ques tion as to whether or not Buyer or Seller is entitled to exemption from given tax by virtue of Buyer's governmental status, the burden shall be upon Buyer to obtain a ruling in writing from a duly constituted and au thorized governmental tax authority as to such exemption. Until such ruling is obtained Buyer shall pay the amount of the tax to Seller or the appropriate tax collecting agency or make satisfactory arrangement with such tax collecting agency.

XIII. Notices.

Any notice to be given hereunder shall be in writing and may personally delivered or sent by cable, telegram or mail to the party i whom intended at the address of such party as specified above. A noti personally delivered to either party must be personally delivered to a officer or manager thereof. Notice by registered mail shall be deeme have been given at the expiration of that time after mailing which is

Entry 510
Box 3593
Folder - 360 Tide Water
A10 [illegible] 32

normally required by the postal authorities to make delivery. Cabled or telegraphed notice shall be deemed given the day after sending the cable or telegram. Each party shall immediately send to the other by regular mail confirming copies of any notices sent by cable, telegraph or air mail. Either party may by notice given as aforesaid change its address for notices thereafter.

XIV. Entirety of Contract.

This instrument contains the entire agreement between the parties in respect to the subject matter and there are no oral conditions, warranties, representations or stipulations relating thereto which are not merged herein. The right of either party to require strict performance shall not be affected by any previous waiver or course of dealing, unless such waiver be in writing signed by an officer or other duly authorized person and specify a duration sufficient in time to embrace the matter in question.

XV. Assignability.

This contract shall be binding upon, and shall inure to the benefit of, the successors and assigns of the respective parties thereto; provided, however, neither party shall have the right to assign this contract without the written consent of the other party, except that Buyer may assign to any other Governmental agency, department, instrumentality or wholly Government-owned corporation, in which event Buyer shall remain liable. With Buyer's consent, which consent shall not be unreasonably withheld, Seller may assign to any party to whom Seller may transfer substantially all of the assets of its Associated Division, including the Avon, California, Refinery.

XVI. Statutory Compliance.

(a) In carrying out this contract Seller agrees to comply with, and give all stipulations and representations required by applicable federal laws and further agrees to require such compliances, representations and stipulations with respect to any contract entered into by it with others incidental to or in connection with this contract as may be required by applicable federal laws; and notwithstanding the generality of the foregoing, Seller further agrees that in the performance of

Entry 510
Box 3593
Folder - 360 Tide Water
AUO 32

contract it will not discriminate against any worker because of race, color or national origin, except as directed by the United States Government.

(b) Seller is a corporation and this contract is made it for its general benefit and no Member of or Delegate to Congress, or Resident Commissioner shall be admitted to any share or part of this co tract or to any benefit that may arise therefrom in violation of the la of the United States covering such matters.

(c) If any statute now in existence or hereafter enacte or any present or future governmental ruling or order, or the action of any governmental department, agency or instrumentality shall reduce any price payable to Seller, as provided for in this contract, or shall pre or prohibit the Seller from receiving from Buyer the prices provided fo in this contract; then Seller and Buyer agree that this shall, for the purpose of this contract, be deemed to be and shall constitute a breach by Buyer of its obligation to accept and pay for aviation gasoline at t prices provided for in this contract, and thereupon the Seller shall ha the option upon thirty (30) days' written notice to Buyer to elect to c tinue to make the deliveries provided for in this contract at the maxim price fixed by any such ruling, order or action, or to consider this co tract terminated, unless within said thirty (30) days said ruling or or shall be rescinded or changed so as not to reduce the price payable to Seller or otherwise changed in a manner satisfactory to Seller.

XVII. Right to Terminate.

Seller shall have the right to terminate this contract within ninety (90) days of the date thereof, unless within said ninety (90) da it shall receive all governmental assistance which is available or nec sary for performing this contract and for the prompt completion of the panded facilities which Seller will construct hereunder, including, wi out limitation, priorities and allocations necessary for obtaining mat als, equipment, supplies and crude petroleum, and such certificates as be necessary to permit it to invoke the provisions of Section 124, Int Revenue Code.

Entry 510
Box 3503
Folder - 360 - Tide Water
AVO

IN WITNESS WHEREOF the parties hereto have executed this contract as of the date and year first above written.

DEFENSE SUPPLIES CORPORATION

By /s/ H. A. MULLIGAN
President

(Seal)

ATTEST:

H. H. TURNER
~~Acting~~ Secretary

TIDE WATER ASSOCIATED OIL COMPANY

By /s/ L. F. BAYER
Vice-President

(Seal)

ATTEST:

/s/ J. P. EDWARDS
Exec. Secretary

Entry 510
Box 3593
Folder - 360 - Tide Water
AVO 31

EXHIBIT A

Item 1. (Omitted)

Item 2.

U. S. ARMY - NAVY SUPPLY

AN-VV-F-781 Sept. 26, 1940

Amendment No. 4 Nov. 24, 1941

Knock Test Method AN-VV-F-746

100 Octane Number by Method AN-VV-F-746

Tetraethyl Lead Limit 4.0 cc/Gal.

Item 3.

U. S. ARMY - NAVY SUPPLY

AN-F-28 Dec. 23, 1942

100 Octane Number by Method AN-VV-F-746, or

99 Octane Number by Method ASTM-D-357-41T

S+1.25 cc. tetraethyl lead by Method AN-VV-F-748

Tetraethyl Lead Limit 4.0 cc/Gal.

Entry 510
Box 3593
Folder - 360 Tide Water
AVO

EXHIBIT B

I (A). Seller represents that the base prices for 100 octane gasoline set forth in Section IV of the foregoing contract include a cer "alkylation royalty sum" representing royalties under process license ag with Shell Development Company which Seller will be obligated to pay to licensor for a certain sulphuric acid alkylation process employed by Sel in the manufacture of said aviation gasoline; that said "alkylation roya is calculated at the rate of $0.15 per barrel of total alkylate included aviation gasoline, and which rate is the royalty rate thereon effective July 1, 1943 (present royalty rate thereon effective until July 1, 1943, $0.21 per barrel); and that said "alkylation royalty sum", at the said r rate of $0.15 per barrel, is $0.0013 per gallon for 100 octane aviation in accordance with Item 3 of Exhibit A of the foregoing contract.

I (B). In the event that during the term of said contract the royalties per barrel that Seller has obligated itself to its licensor to such alkylation process, shall be reduced below $0.15 per barrel with re to the 100 octane aviation gasoline manufactured by Seller and deli the foregoing contract, then the base prices of 100 octane aviation gaso set forth in Section IV of said contract manufactured by Seller and deli thereunder, and as to which gasoline Seller's royalty payments to its sai licensor are in accordance with said reduced royalty rate, shall be reduc accordance herewith. The amount of said reduction in the base price of gasoline shall be the difference between the "alkylation royalty sum" ap ble thereto as set forth in Section I (A) of this Exhibit B, and an amou equal to such "alkylation royalty sum" multiplied by the factor $\frac{A}{B}$ where A equals the reduced running royalty per barrel that Seller is obligated to and B equals fifteen cents ($0.15). As to any of said gasoline delivered and paid for by Buyer under said contract at a price including said "alk royalty sum", and as to which gasoline the base price is subject to reduc hereunder, Seller, within sixty (60) days of receipt by it of such paymen Buyer, shall refund to Buyer, without interest, an amount of money equa total number of gallons of said gasoline subject to the aforesaid reduce royalties, multiplied by an amount equal to the said difference by "alkylation royalty sum" has been reduced.

Entry 510
Box 3593
Folder: 360 Tide Water
AVO

II (A). Seller further represents that the base prices for 100 aviation gasoline set forth in Section IV of the foregoing contract inclu certain "isomerization royalty sums" representing royalties which Seller obligated to pay to its licensor, the Shell Development Company, for a ce isomerization process employed by Seller in the manufacture of said aviat gasoline; that said "isomerization royalty sums" are calculated at the ra $0.05 per barrel of isobutane produced by said process and used in the ma facture of said aviation gasoline and are as follows per gallon of 100 oct aviation gasoline in accordance with Item 3 of Exhibit A of the foregoing

For period prior to effective date of notification referred to in Section II (a) of foregoing contract - - - - - - - - - - - - - - - $0.0001 per gal.

For period subsequent to said effective date of notification - - - - - - - - - - - - - $0.0002 per gal.

II (B). In the event that during the term of said contract the royalties per barrel that Seller has obligated itself to its licensor to such isomerization process shall be reduced with respect to the 100 octan tion gasoline manufactured by Seller and delivered under the foregoing co then the base prices of 100 octane aviation gasoline, as set forth in Sec of said contract, manufactured by Seller and delivered thereunder, and as which gasoline Seller's royalty payments to its said licensor are in acco with said reduced royalty rate, shall be reduced in accordance herewith. amount of said reduction in the base price of said gasoline shall be the ference between the "isomerization royalty sum" applicable thereto, as se in Section II (A) of this Exhibit B, and an amount equal to such "isomeri royalty sum" multiplied by the factor $\frac{A}{B}$ where A equals the reduced runnin per barrel that Seller is obligated to pay, and B equals five cents ($0.0 to any of said gasoline delivered to and paid for by Buyer under said con at price including said "isomerization royalty sum", and as to which gaso base price is subject to reduction hereunder, Seller, within sixty (60) d of receipt by it of such payment from Buyer, shall refund to Buyer, witho interest, an amount of money equal to the total number of gallons of said line subject to the aforesaid reduced royalties, multiplied by an amount to the said difference by which said "isomerization royalty sum" has bee luced.

Entry 510
Box 3593
Folder - 360 Tide Water
AUO

III (A). In the event that any base price of said aviation g oline is reduced under the provisions of this Exhibit B, and in th that at any time prior to six (6) years following the date of terminat cancellation or expiration of the foregoing contract, a claim or claim suit or suits for infringement with respect to the aforesaid alkylatior process or the products thereof, or with respect to the aforesaid isome zation process or the products thereof, shall be made or brought agains Seller, and if such suit or suits so brought, or any suit or suits brou on any such claim or claims so made, shall result in final adjudication or settlement which shall establish an obligation to be paid by Seller satisfaction thereof, Buyer shall make payment to Seller as follows: T amount so payable by Buyer to Seller in each case shall in no event exc whatever amount is the lesser of (1) the amount whereby Buyer's price f the total quantity of gasoline purchased under this contract subsequent t April 30, 1943 and involved in such claim or suit was reduced under this Exhibit B, or (2) the amount required to be paid in settlement or satis-faction of such claim or suit, above any portion thereof for which Selle ~~shall have been~~ is reimbursed by its licensor; it being expressly unde that all payments by Buyer to Seller (under this paragraph) shall be sole for the purpose of paying damages or other moneys applicable to the case it being expressly understood that Seller's said obligation, as the term is used herein, shall not include any expenses of settlement (as distin-guished from actual payments to the party or parties with whom settlemen is made) or costs of litigation; provided, however, that with respect to such settlement no payment shall be made by Buyer to Seller unless Buyer shall first have given in writing its approval to such settlement; Buyer hereby agreeing that it will give its approval to any such settlement which, under the circumstances, appears to be reasonable.

III (B). With respect to such claim or claims, suit or suits for infringement referred to in Section III (A) hereof, Seller agrees tha promptly upon receipt of notice by Seller of the making or institution of each such claim or suit, Seller will notify Buyer thereof. Under Seller' present licenses covering said alkylation process and said isomerization process, respectively, Seller's licensors have certain rights and ob tions concerning handling of such claims or suits. Subject to the approv of its respective licensors and to the extent that Seller has the right

Refining division
Entry 510
Box 2593
Folder - 300 Tide Water
AVO

under its said licenses to do so, Buyer shall be permitted at its election to be represented in any such suit by counsel of its own choice and at its own expense and subject to such conditions and restrictions, if any, as Seller's licensors may specify.

III (C). If an adjudication adverse to Seller has been made in any such suit by the court of record having primary jurisdiction thereof, and if no settlement approved by Buyer has been effected previously, and if election is made not to appeal from such adverse adjudication or to continue the defense of such suit, then Seller agrees that upon receiving notice, from its licensors or otherwise, of such events and decisions, it will promptly give notice thereof to Buyer; and Seller further agrees that subject to the same conditions as those hereinabove specified in paragraph III (B) hereof, Buyer at its election and at its own expense may continue the defense of such suit, file and perfect appeals to courts of higher jurisdiction, and do such other things as Buyer believes necessary or desirable to obtain a final adjudication or settlement of such suit, and in such event and subject to the same conditions, Seller agrees that Buyer may use Seller's name for all proper purposes connected with the continuance of such suits and that it will cooperate fully with Buyer in any proper and legal manner necessary to aid Buyer in the furtherance of the defense of such suits, all of same, however, to be at Buyer's expense; it being further agreed that in the event Buyer elects to do any of the things covered by this paragraph III (C), Buyer will indemnify and hold harmless Seller, its officers, agents and representatives from and against any and all liability, costs, damages, claims, judgments and obligations decreed by the court resulting therefrom over and above those to which Seller would have been liable had such actions and elections not been taken by Buyer.

IV. Seller also represents that there have not been included in its computation of the base prices set forth in Section IV of the foregoing contract any patent royalties for processes employed by Seller in the manufacture of aviation gasoline hereunder other than those set forth in Sections I and II of this Exhibit B.

V. Seller convenants that any "alkylation royalty sum" and any "isomerization royalty sum" paid by it and included within the base price set forth in Section IV of the foregoing contract, shall be paid in good faith only to third party or parties who, in Seller's judgment, are entitled to receive such royalties and to license the respective processes

Entry 510
Box 3593
Folder - 360 - Tide Water
AVO 32
(Utility Division)

58959

GUARANTEE BY RECONSTRUCTION FINANCE CORPORATION

In consideration of the execution of the within contract and as an inducement to Tide Water Associated Oil Company to enter into said contract, Reconstruction Finance Corporation does hereby guarantee the full and complete performance of all of the terms and conditions of said contract on the part of Defense Supplies Corporation (a subsidiary of Reconstruction Finance Corporation) to be performed at the time and in the manner therein provided; it being further agreed that this guarantee shall cover and attach to any and all changes in, amendments of, or supplements to said contract which may be hereafter agreed upon between Defense Supplies Corporation and Tide Water Associated Oil Company, and the undersigned guarantor hereby approves and consents to any and all such changes in, amendments of, or supplements to said contract.

IN WITNESS WHEREOF, Reconstruction Finance Corporation has caused this Guarantee to be executed by its officers thereunto duly authorized as of February 18, 1943.

RECONSTRUCTION FINANCE CORPORATION

By /s/ CHARLES B. HENDERSON
Chairman

(Seal)

ATTEST:

/s/ A. T. HOBSON
Acting Secretary

Entry 510
Box 3593
Folder - 360 Tide Water
AVO 32

25

ADDENDUM #1

Tide Water Associated Oil Company
San Francisco, California

All material ordered hereunder is for Defense Supplies Corporation, a corporation created by Reconstruction Finance Corporation pursuant to Section 5d of the Reconstruction Finance Corporation Act, as amended, and in accepting this contract, Tide Water Associated Oil Company, a Delaware corporation, (hereinafter designated as "Contractor") agrees to the provisions set forth below, provided, however, that to the extent that the obligations of manufacturers or dealers are limited, restricted or relaxed by amendments of the law or by authorized governmental regulations, then the obligations of the Contractor shall be automatically and correspondingly limited, restricted or relaxed.

I. (a) The Contractor is the manufacturer of or a regular dealer in the materials, supplies, articles, or equipment to be manufactured or used in the performance of the contract.

(b) All persons employed by the Contractor in the manufacture or furnishing of the materials, supplies, articles or equipment used in the performance of the contract will be paid, without subsequent deduction or rebate on any account, not less than the minimum wages as determined by the Secretary of Labor to be the prevailing minimum wages for persons employed on similar work or in the particular or similar industries or groups of industries currently operating in the locality in which the materials, supplies, articles, or equipment are to be manufactured or furnished under the contract; PROVIDED, however, that this stipulation with respect to minimum wages shall apply only to purchases or contracts relating to such industries as have been the subject matter of a determination by the Secretary of Labor.

(c) No person employed by the Contractor in the manufacture or furnishing of the materials, supplies, articles, or equipment used in the performance of the contract shall be permitted to work in excess of eight (8) hours in any one day or in excess of forty (40) hours in any one week, unless such person is paid such applicable overtime rate as has been set by the Secretary of Labor.

(d) No male person under 16 years of age and no female person under 18 years of age and no convict labor will be employed by the Contractor in the manufacture or production or furnishing of any of the materials, supplies, articles, or equipment included in the contract.

(e) No part of the contract will be performed nor will any of the materials, supplies, articles, or equipment to be manufactured or furnished under said contract be manufactured or fabricated in any plants, factories, buildings, or surroundings or under working conditions which are unsanitary or hazardous or dangerous to the health and safety of employees engaged in the performance of the contract. Compliance with the safety, sanitary, and factory inspection laws of the State in which the work or part thereof is to be performed shall be prima-facie evidence of compliance with this subsection.

Any breach or violation of any of the foregoing representations and stipulations shall render the party responsible therefor liable to the United States of America for liquidated damages, in addition to damages for any other breach of the contract, in the sum of ten dollars ($10.00) per day for each male person under 16 years of age or each female person under 18 years of age, or each convict laborer knowingly employed in the performance of the contract, and a sum equal to the amount of any deductions, rebates, refunds or underpayment of wages due to any employee engaged in the performance of the contract; and, in addition, the agency of the United States entering into the contract shall have the right to cancel same and to make open-market purchases or enter into other contracts for the completion of the original contract, charging any additional cost to the original Contractor. Any sums of money due to the United States of America by reason of any

refining division
Entry 510
Box 3593
Folder - 360 Tide Water
AUG 32