Addendum #1

violation of any of the representations and stipulations of the contract as set forth herein may be withheld from any amounts due on the contract or may be recovered in a suit brought in the name of the United States of America by the Attorney General thereof. All sums withheld or recovered as deductions, rebates, refunds, or underpayments of wages shall be held in a special deposit account and shall be paid, on order of the Secretary of Labor, directly to the employees who have been paid less than minimum rates of pay as set forth in such contracts and on whose account such sums were withheld or recovered: PROVIDED, That no claims by employees for such payments shall be entertained unless made within one year from the date of actual notice to the Contractor of the withholding or recovery of such sums by the United States of America.

(g) The Contractor shall post a copy of the stipulations in a prominent and readily accessible place at the site of the contract work and shall keep such employment records as are required in the Regulations under the Act available for inspection by authorized representatives of the Secretary of Labor.

(h) The foregoing stipulation shall be deemed inoperative if this contract is for a definite amount not in excess of $10,000.00.

This Addendum #1 is hereby made a part of the contract between Defense Supplies Corporation and the undersigned dated as of February 18, 1943.

TIDE WATER ASSOCIATED OIL COMPANY

By /s/ L. F. BAYER
Vice-President

RG 253 PAW
refining divisi[on]
Entry 510
Box 3593
Folder - 360 Tide Wat[er]
AUO 32

This order shall be subject to the order of December 18, 1936, of the Secretary of the Interior, establishing Oregon Grazing District No. 7. After the present national emergency has been officially terminated, this order shall be without effect upon notice to the War Department by the Secretary of the Interior that the above-described land is needed for grazing or other uses by the Department of the Interior.

FRANKLIN D ROOSEVELT

THE WHITE HOUSE,
*December 26, 1941.*

[No. 8999]

[F. R. Doc. 41-9767; Filed, December 27, 1941; 9:45 a. m.]

---

## EXECUTIVE ORDER

WITHDRAWING PUBLIC LAND FOR USE OF THE WAR DEPARTMENT FOR MILITARY PURPOSES

OREGON

By virtue of the authority vested in me as President of the United States, it is ordered that, subject to valid existing rights, the following-described public land, in the State of Oregon, be, and it is hereby, withdrawn from all forms of appropriation under the public-land laws, including the mining laws, and reserved for the use of the War Department for military purposes:

WILLAMETTE MERIDIAN

T. 4 N., R. 24 E., sec. 22; containing 640 acres.

This order shall be subject to the order of December 18, 1936, of the Secretary of the Interior, establishing Oregon Grazing District No. 7. After the present national emergency has been officially terminated, this order shall be without effect upon notice to the War Department by the Secretary of the Interior that the above-described land is needed for grazing or other uses by the Department of the Interior.

FRANKLIN D ROOSEVELT

THE WHITE HOUSE,
*December 26, 1941.*

[No. 9000]

[F. R Doc. 41-9768; Filed, December 27, 1941; 9:45 a. m.]

---

## EXECUTIVE ORDER

AUTHORIZING THE WAR DEPARTMENT, THE NAVY DEPARTMENT, AND THE UNITED STATES MARITIME COMMISSION TO PERFORM THE FUNCTIONS AND EXERCISE THE POWERS DESCRIBED IN TITLE II OF AN ACT APPROVED DECEMBER 18, 1941, ENTITLED "AN ACT TO EXPEDITE THE PROSECUTION OF THE WAR EFFORT", AND PRESCRIBING REGULATIONS FOR THE EXERCISE OF SUCH FUNCTIONS AND POWERS

The successful prosecution of the war requires an all-out industrial mobilization of the United States in order that the materials necessary to win the war may be produced in the shortest possible time. To accomplish this objective it is necessary that the Departments of War and the Navy and the United States Maritime Commission cooperate to the fullest possible degree with the Office of Production Management in the endeavor to make available for the production of war material all the industrial resources of the Country. It is expected that in the exercise of the powers hereinafter granted, these Agencies and the Office of Production Management will work together to bring about the conversion of manufacturing industries to war production, including the surveying of the war potential of industries, plant by plant; the spreading of war orders; the conversion of facilities; the assurance of efficient and speedy production; the development and use of subcontracting to the fullest extent and the conservation of strategic materials.

TITLE I

1. By virtue of the authority in me vested by the Act of Congress, entitled "An Act to expedite the prosecution of the War effort", approved December 18, 1941, (hereinafter called "the Act") and as President of the United States and Commander-In-Chief of the Army and Navy of the United States, and deeming that such action will facilitate the prosecution of the war, I do hereby order that the War Department, the Navy Department, and the United States Maritime Commission be and they hereby respectively are authorized within the limits of the amounts appropriated therefor to enter into contracts and into amendments or modifications of contracts heretofore or hereafter made, and to make advance, progress, and other payments thereon, without regard to the provisions of law relating to the making, performance, amendment, or modification of contracts. The authority herein conferred may be exercised by the Secretary of War, the Secretary of the Navy, or the United States Maritime Commission respectively or in their discretion and by their direction respectively may also be exercised through any other officer or officers or civilian officials of the War or the Navy Departments or the United States Maritime Commission. The Secretary of War, the Secretary of the Navy, or the United States Maritime Commission may confer upon any officer or officers of their respective departments, or civilian officials thereof, the power to make further delegations of such powers within the War and the Navy Departments, and the United States Maritime Commission.

2. The contracts hereby authorized to be made include agreements of all kinds (whether in the form of letters of intent, purchase orders, or otherwise) for all types and kinds of things and services necessary, appropriate or convenient for the prosecution of war, or for the invention, development, or production of, or research concerning any such things, including but not limited to, aircraft, buildings, vessels, arms, armament, equipment, or supplies of any kind, or any portion thereof, including plans, spare parts and equipment therefor, materials, supplies, facilities, utilities, machinery, machine tools, and any other equipment, without any restriction of any kind, either as to type, character, location or form.

3. The War Department, the Navy Department, and the United States Maritime Commission may by agreement modify or amend or settle claims under contracts heretofore or hereafter made, may make advance, progress, and other payments upon such contracts of any percentum of the contract price, and may enter into agreements with contractors and/or obligors, modifying or releasing accrued obligations of any sort, including accrued liquidated damages or liability under surety or other bonds, whenever, in the judgment of the War Department, the Navy Department, or the United States Maritime Commission respectively the prosecution of the war is thereby facilitated. Amendments and modifications of contracts may be with or without consideration and may be utilized to accomplish the same things as any original contract could have accomplished hereunder, irrespective of the time or circumstances of the making of or the form of the contract amended or modified, or of the amending or modifying contract, and irrespective of rights which may have accrued under the contract, or the amendments or modifications thereof.

4. Advertising, competitive bidding, and bid, payment, performance or other bonds or other forms of security, need not be required.

TITLE II

Pursuant to Title II of the Act and for the protection of the interests of the United States, I do hereby prescribe the following regulations for the exercise of the authority herein conferred upon the War Department, the Navy Department, and the United States Maritime Commission.

1. All contracts and all purchases made pursuant to the Act and this Executive Order shall be reported to the President of the United States. Such reports shall be made at least quarter-annually, provided, however, that purchases or contracts of less than $100,000 may be consolidated in such reports with other such purchases and need not be separately set forth. In case the War Department, the Navy Department, or the United States Maritime Commission shall deem any purchase or contract to be restricted, confidential, or secret in its nature by reason of its subject matter, or for other reasons affecting the public interest, such purchases or contracts shall not be included with those described in the report just mentioned, but shall be included in a separate report containing such restricted, confidential, or secret purchases or contracts. The Secretary of War, the Secretary of the Navy, and the United

States Maritime Commission shall make public so much of such reports (other than those reports covering restricted, confidential, or secret contracts or purchases) as they shall respectively deem to be compatible with the public interest.

2. Notwithstanding anything in the Act or this Executive Order the War Department, the Navy Department, and the United States Maritime Commission shall not discriminate in any act performed thereunder against any person on the ground of race, creed, color or national origin, and all contracts shall be deemed to incorporate by reference a provision that the contractor and any subcontractors thereunder shall not so discriminate.

3. No claim against the United States arising under any purchase or contract made under the authority of the Act shall be assigned except in accordance with the Assignment of Claims Act, 1940 (Public No. 811, 76th Congress, approved October 9, 1940).

4. Advance payments shall be made hereunder only after careful scrutiny to determine that such payments will promote the national interest and under such regulations to that end as the Secretary of War, the Secretary of the Navy, or the United States Maritime Commission may prescribe.

5. Every contract entered into pursuant to this order shall contain a warranty by the contractor in substantially the following terms:

The contractor warrants that he has not employed any person to solicit or secure this contract upon any agreement for a commission, percentage, brokerage, or contingent fee. Breach of this warranty shall give the Government the right to annul the contract, or, in its discretion, to deduct from the contract price or consideration the amount of such commission, percentage, brokerage, or contingent fees. This warranty shall not apply to commissions payable by contractors upon contracts or sales secured or made through bona fide established commercial or selling agencies maintained by the contractor for the purpose of securing business.

6. Nothing herein shall be construed to authorize the cost-plus-a-percentage-of-cost system of contracting.

7. Nothing herein shall be construed to authorize any contracts in violation of existing law relating to limitation of profits, or the payment of a fee in excess of such limitation as may be specifically set forth in the act appropriating the funds obligated by a contract. In the absence of such limitation, the fixed fee to be paid the Contractor as a result of any cost-plus-a-fixed-fee contract entered into under the authority of this Order shall not exceed seven per centum of the estimated cost of the contract (exclusive of the fee as determined by the Secretary of War, the Secretary of the Navy, or the United States Maritime Commission, as the case may be).

8. No contract or modification or amendment thereof shall be exempt from the provisions of the Walsh-Healey Act (49 Stat. 2036) because of being entered into without advertising or competitive bidding, and the provisions of such act, the Davis-Bacon Act, as amended (49 Stat. 1011), the Copeland Act, as amended (48 Stat. 948), and the Eight Hour Law, as amended by the Act of September 9, 1940 (Public No. 781, 76th Congress) if otherwise applicable shall apply to contracts made and performed under the authority of this Order.

FRANKLIN D ROOSEVELT

THE WHITE HOUSE,
*December 27, 1941.*

[No. 9001]

[F. R. Doc. 41-9798; Filed, December 29, 1941; 11:11 a. m.]

---

## *Rules, Regulations, Orders*

---

## TITLE 7—AGRICULTURE

### CHAPTER VIII—SUGAR DIVISION OF THE AGRICULTURAL ADJUSTMENT ADMINISTRATION

#### PART 802—SUGAR DETERMINATIONS

DETERMINATION OF FARMING PRACTICES TO BE CARRIED OUT IN CONNECTION WITH THE PRODUCTION OF SUGARCANE DURING THE CROP YEAR 1941, FOR THE TERRITORY OF HAWAII, PURSUANT TO THE SUGAR ACT OF 1937, AS AMENDED (REVISED)

Pursuant to the provisions of section 301 (e) of the Sugar Act of 1937, as amended, the following determination is hereby issued:

§ 802.33c *Farming practices in connection with the production of the 1941 crop of sugarcane in the Territory of Hawaii*—(a) *Application of fertilizer.* The requirements of section 301 (e) of the Sugar Act of 1937, as amended, shall be deemed to have been met with respect to a farm in the Territory of Hawaii if fertilizer is applied as follows:

(1) *Amount.* There shall be applied to land on which sugarcane is growing during 1941 sufficient chemical fertilizer to provide an average quantity of plant food per acre fertilized equal to not less than the greater of either 100 pounds or 60 percent of the average quantity of plant food contained in the chemical fertilizer applied to similar land in 1939 or 1940, whichever is smaller, but any amount by which such 60 percent exceeds 250 pounds shall not be considered.

(2) *Acreage requirement.* The number of acres on which fertilizer is applied in 1941 shall be not less than 80 percent of the number of acres on the farm on which sugarcane is planted, or a ratoon crop of sugarcane is started, at any time during 1941.

(b) *Definitions.* "Chemical fertilizer" means commercial chemical fertilizer of which not less than 15 percent of the gross weight consists of plant food. "Plant food" means the aggregate amount of nitrogen, available phosphoric acid and water-soluble potash.

This determination supersedes the "Determination of Farming Practices to be Carried Out in Connection with the Production of Sugarcane During the Crop Year 1941, for the Territory of Hawaii, Pursuant to the Sugar Act of 1937, as Amended", issued April 8, 1941. (Sec. 302, 50 Stat. 910; 7 U.S.C. 1132)

Done at Washington, D. C., this 27th day of December 1941. Witness my hand and the seal of the Department of Agriculture.

[SEAL] CLAUDE R. WICKARD,
*Secretary of Agriculture.*

[F. R. Doc. 41-9792; Filed, December 29, 1941; 10:53 a. m.]

---

## TITLE 14—CIVIL AVIATION

### CHAPTER I—CIVIL AERONAUTICS BOARD

[Amendments 20-24 to 20-30, incl., Civil Air Regulations]

#### PART 20—PILOT RATING

AERONAUTICAL SKILL AND EXPERIENCE REQUIREMENTS FOR A PILOT CERTIFICATE ON TWO-CONTROL NON-SPINNABLE AIRPLANES WITH NOSE WHEEL TYPE LANDING GEAR

At a session of the Civil Aeronautics Board held at its office in Washington, D. C., on the 23rd day of December 1941.

Acting pursuant to the authority vested in it by the Civil Aeronautics Act of 1938, as amended, particularly sections 205 (a), 601 and 602 of said Act, and finding that its action is desirable in the public interest and is necessary to carry out the provisions of, and to exercise and perform its powers and duties under, said Act, the Civil Aeronautics Board amends the Civil Air Regulations as follows:

Effective January 1, 1942, Part 20 of the Civil Air Regulations is amended as follows:

1. By amending § 20.107 to read as follows:

§ 20.107 No requirement is prescribed.

2. By amending § 20.126 to read as follows:

§ 20.126 *Aeronautical experience.* Applicant shall have logged at least 35 hours of solo flight time: *Provided,* That an applicant seeking a rating limited to two-control non-spinnable airplanes with nose wheel type landing gear shall have logged at least 25 hours of solo flight time. As part of the foregoing applicant shall have logged at least 5 hours within the 60 days immediately preceding the date of filing the application, and at least 5 hours of cross-country flying of which at least 3 hours shall be solo, which shall include at least one flight over a course of not less than 50 miles with at least two full-stop landings at different points along the course. Such experience shall be certified to by some person, other than the applicant, having direct knowledge thereof. A graduate of the private pilot course of a certificated flying school will be deemed to have met the above

THE NATIONAL ARCHIVES OF THE UNITED STATES 1934
LITTERA SCRIPTA MANET

# FEDERAL REGISTER

VOLUME 7 NUMBER 12

Washington, Saturday, January 17, 1942

## The President

### Regulations Pertaining to Alien Enemies

BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

### A PROCLAMATION

WHEREAS section 21 of title 50 of the United States Code provides as follows:

Whenever there is a declared war between the United States and any foreign nation or government, or any invasion or predatory incursion is perpetrated, attempted, or threatened against the territory of the United States by any foreign nation or government, and the President makes public proclamation of the event, all natives, citizens, denizens, or subjects of the hostile nation or government, being of the age of fourteen years and upward, who shall be within the United States and not actually naturalized, shall be liable to be apprehended, restrained, secured, and removed as alien enemies. The President is authorized in any such event, by his proclamation thereof, or other public act, to direct the conduct to be observed, on the part of the United States, toward the aliens who become so liable; the manner and degree of the restraint to which they shall be subject and in what cases, and upon what security their residence shall be permitted, and to provide for the removal of those who, not being permitted to reside within the United States, refuse or neglect to depart therefrom; and to establish any other regulations which are found necessary in the premises and for the public safety.

WHEREAS by sections 22, 23, and 24 of title 50 of the United States Code further provision is made relative to alien enemies;

WHEREAS by Proclamation No. 2525 [1] of December 7, 1941, and Proclamations Nos. 2526 [2] and 2527 [3] of December 8, 1941, I prescribed and proclaimed certain regulations governing the conduct of alien enemies; and

WHEREAS I find it necessary in the interest of national defense to prescribe regulations additional and supplemental to such regulations:

[1] 6 F.R. 6321.
[2] 6 F.R. 6323.
[3] 6 F.R. 6324.

NOW, THEREFORE, I, FRANKLIN D. ROOSEVELT, President of the United States of America, acting under and by virtue of the authority vested in me by the Constitution of the United States and the aforesaid sections of the United States Code, do hereby prescribe and proclaim the following regulations, additional and supplemental to those prescribed by the aforesaid proclamations of December 7, 1941, and December 8, 1941:

All alien enemies within the continental United States, Puerto Rico, and the Virgin Islands are hereby required, at such times and places and in such manner as may be fixed by the Attorney General of the United States, to apply for and acquire certificates of identification; and the Attorney General is hereby authorized and directed to provide, as speedily as may be practicable, for the receiving of such applications and for the issuance of appropriate identification certificates, and to make such rules and regulations as he may deem necessary for effecting such identifications; and all alien enemies and all other persons are hereby required to comply with such rules and regulations. The Attorney General in carrying out such identification procedure, is hereby authorized to utilize such agents, agencies, officers, and departments of the United States and of the several states, territories, dependencies, and municipalities thereof and of the District of Columbia as he may select for the purpose, and all such agents, agencies, officers, and departments are hereby granted full authority for all acts done by them in the execution of this regulation when acting by the direction of the Attorney General. After the date or dates fixed by the Attorney General for completion of such identification procedure, every alien enemy within the limits of the continental United States, Puerto Rico, or the Virgin Islands shall at all times have his identification card on his person.

IN WITNESS WHEREOF, I have hereunto set my hand and caused the seal of the United States to be affixed.

*Contents appears on last page*

DONE at the City of Washington this 14th day of January in the year of our Lord nineteen hundred and [SEAL] forty-two, and of the Independence of the United States of America the one hundred and sixty-sixth.

FRANKLIN D ROOSEVELT

By the President:
CORDELL HULL,
*Secretary of State.*

[No. 2537]

[F. R. Doc. 42-452; Filed, January 16, 1942; 10:49 a. m.]

---

### EXECUTIVE ORDER

#### Establishing the War Production Board in the Executive Office of the President and Defining Its Functions and Duties

By virtue of the authority vested in me by the Constitution and statutes of the United States, as President of the United States and Commander in Chief of the Army and Navy, and in order to define further the functions and duties of the Office for Emergency Management with respect to the state of war declared to exist by Joint Resolutions of the Congress, approved December 8, 1941, and December 11, 1941, respectively, and for the purpose of assuring the most effective prosecution of war procurement and production, it is hereby ordered as follows:

1. There is established within the Office for Emergency Management of the Executive Office of the President a War Production Board, hereinafter referred to as the Board. The Board shall consist of a Chairman, to be appointed by the President, the Secretary of War, the Secretary of the Navy, the Federal Loan Administrator, the Director General and the Associate Director General of the Office of Production Management, the Admin-

Case 1:06-cv-00141-EAS Document 10-12 Filed 06/30/2006 Page 5 of 14

FEDERAL REGISTER

Published daily, except Sundays, Mondays and days following legal holidays by the Division of the Federal Register, The National Archives, pursuant to the authority contained in the Federal Register Act, approved July 26, 1935 (49 Stat. 500), under regulations prescribed by the Administrative Committee, approved by the President.

The Administrative Committee consists of the Archivist or Acting Archivist, an officer of the Department of Justice designated by the Attorney General, and the Public Printer or Acting Public Printer.

The daily issue of the FEDERAL REGISTER will be furnished by mail to subscribers, free of postage, for $1.25 per month or $12.50 per year; single copies 10 cents each; payable in advance. Remit money order payable to the Superintendent of Documents directly to the Government Printing Office, Washington, D. C.

istrator of the Office of Price Administration, the Chairman of the Board of Economic Warfare, and the Special Assistant to the President supervising the defense aid program.

2 The Chairman of the War Production Board, with the advice and assistance of the members of the Board, shall:

a. Exercise general direction over the war procurement and production program.

b. Determine the policies, plans, procedures, and methods of the several Federal departments, establishments, and agencies in respect to war procurement and production, including purchasing, contracting, specifications, and construction; and including conversion, requisitioning, plant expansion, and the financing thereof; and issue directives in respect thereto as he may deem necessary or appropriate.

c. Perform the functions and exercise the powers vested in the Supply Priorities and Allocations Board by Executive Order No. 8875[1] of August 28, 1941.

d. Supervise the Office of Production Management in the performance of its responsibilities and duties, and direct such changes in its organization as he may deem necessary.

e. Report from time to time to the President on the progress of war procurement and production; and perform such other duties as the President may direct.

3. Federal departments, establishments, and agencies shall comply with the policies, plans, methods, and procedures in respect to war procurement and production as determined by the Chairman; and shall furnish to the Chairman such information relating to war procurement and production as he may deem necessary for the performance of his duties.

4. The Army and Navy Munitions Board shall report to the President through the Chairman of the War Production Board.

5. The Chairman may exercise the powers, authority, and discretion conferred upon him by this Order through such officials or agencies and in such manner as he may determine; and his decisions shall be final.

6. The Chairman is further authorized within the limits of such funds as may be allocated or appropriated to the Board to employ necessary personnel and make provision for necessary supplies, facilities, and services.

7. The Supply Priorities and Allocations Board, established by the Executive Order of August 28, 1941, is hereby abolished, and its personnel, records, and property transferred to the Board. The Executive Orders No. 8629[2] of January 7, 1941, No. 8875[1] of August 28, 1941, No. 8891[3] of September 4, 1941, No. 8942[4] of November 19, 1941, No. 9001[5] of December 27, 1941, and No. 9023[6] of January 14, 1942, are hereby amended accordingly, and any provisions of these or other pertinent Executive Orders conflicting with this Order are hereby superseded.

FRANKLIN D ROOSEVELT

THE WHITE HOUSE,
*January 16, 1942*

[No. 9024]

[F. R. Doc. 42-482; Filed, January 16, 1942; 1:45 p. m.]

## *Rules, Regulations, Orders*

### TITLE 10—ARMY: WAR DEPARTMENT

#### CHAPTER VI—ORGANIZED RESERVES

##### PART 64—ENLISTED RESERVE CORPS[7]

§ 64.13 *Separation from service*—(a) *Discharge before expiration of enlistment.* When on inactive status or active status for training, a member of the Enlisted Reserve Corps will not be discharged before the expiration of his term of enlistment, except—

(1) By order of the President or of the Secretary of War.

(2) By direction of the commander of a corps area, or such officers as may be designated by him for that purpose:

(i) On account of physical disability;

(ii) Upon acceptance of a commission in the Regular Army, Officers' Reserve Corps, or National Guard;

(iii) For the purpose of enlisting in the Regular Army, Navy, Marine Corps, National Guard or Coast Guard;

(iv) On account of absence beyond the continental limits of the United States for a period of six months or longer;

(v) Upon application in writing forwarded through channels 90 days before the discharge is to take effect in cases of those authorized to be enlisted for one year;

(vi) On account of sentence of imprisonment by a civil court whether suspended or not;

(vii) Under the provisions of paragraph 25, AR 150-5; or

(viii) On account of minority, action in such cases to be as provided for the Regular Army under the provisions of paragraph 33, AR 615-360.[8]

(3) Pursuant to sentence of a general court-martial, the enlisted man being in an active duty status.

(4) In compliance with an order of one of the United States courts or a justice or judge thereof on a writ of habeas corpus.

When on active duty in a national emergency (§ 64.2 (b)), the discharge of a member of the Enlisted Reserve Corps will be governed by the provisions of Army Regulations applicable to enlisted men of the Regular Army. (39 Stat. 195; 41 Stat. 780, 44 Stat. 705; 10 U.S.C. 421, 423-427) [Par. 22, AR 150-5 Sept. 30, 1931, amendments in Cir. 167, W.D., Aug. 13, 1941 (6 F.R. 4360) having been rescinded by Cir. 6, W.D., Jan. 9, 1942]

* * * * *

[SEAL] E. S. ADAMS,
*Major General,*
*The Adjutant General.*

[F. R. Doc. 42-447; Filed, January 15, 1942; 2:10 p. m.]

#### CHAPTER VII—PERSONNEL

##### PART 71—ENLISTMENT IN THE REGULAR ARMY[1]

§ 71.5 *Enlistments in the Regular Army requiring special authority from the War Department.* The following classes of personnel will not be enlisted or reenlisted in the Regular Army without special authority in each case from The Adjutant General:

* * * * *

(b) Former enlisted men over 45 years of age who were last discharged as privates and failed to reenlist within 3 months thereafter. In such cases the application must show that the reenlistment will be for the interests of the service. (41 Stat. 765; 10 U.S.C. 42) [Par. 16*b*, AR 600-750, April 10, 1939, as amended by Cir. 5, W.D., January 8, 1942]

* * * * *

[SEAL] E. S. ADAMS,
*Major General,*
*The Adjutant General.*

[F. R. Doc. 42-448; Filed, January 15, 1942; 2:22 p. m.]

[1] 6 F.R. 4483.

[2] 6 F.R. 191.
[3] 6 F.R. 4623.
[4] 6 F.R. 5909.
[5] 6 F.R. 6787.
[6] 7 F.R. 302.
[7] § 64.13 (a) is amended.

[1] § 71.5 (b) is amended.
[8] Administrative regulations of the War Department relative to discharge of enlisted man.

Case 1:06-cv-00141-LAS Document 10-12 Filed 06/30/2006 Page 6 of 14

JAN 30 1942

THE NATIONAL ARCHIVES
LITTERA SCRIPTA MANET

# FEDERAL REGISTER

OF THE UNITED STATES 1934

VOLUME 7 NUMBER 18

*Washington, Tuesday, January 27, 1942*

## *The President*

### EXECUTIVE ORDER

DEFINING ADDITIONAL FUNCTIONS AND DUTIES OF THE WAR PRODUCTION BOARD

By virtue of the authority vested in me by the Constitution and the statutes, as President of the United States and Commander in Chief of the Army and Navy, and for the purpose of assuring the most effective prosecution of war procurement and production, it is hereby ordered as follows:

1. In addition to the responsibilities and duties described in paragraph 2 of Executive Order No. 9024,[1] of January 16, 1942, the Chairman of the War Production Board, with the advice and assistance of the members of the Board, shall:

a. Perform the functions and exercise the powers heretofore vested in the Office of Production Management.

b. Perform the functions and exercise the powers vested in the Supply Priorities and Allocations Board, by Executive Order No. 8942,[2] of November 19, 1941.

c. Perform the functions and exercise the authority vested in the President by Section 120 of the National Defense Act of 1916, (39 Stat. 213).

2. Paragraph 1 of said Executive Order No. 9024 of January 16, 1942, is amended to provide that the Lieutenant General in charge of War Department Production, and the Director of the Labor Division of the War Production Board shall be members of the War Production Board vice the Director General and Associate Director General of the Office of Production Management.

3. The Chairman of the War Production Board may exercise the powers, authority, and discretion conferred upon him by this or any other Order through such officials or agencies and in such manner as he may determine; and his decisions shall be final.

4. The Office of Production Management, established by Executive Order No. 8629[2] of January 7, 1941, is abolished and its personnel, records, property, and funds are transferred to the War Production Board.

5. Executive Order No. 8629, of January 7, 1941, is rescinded, and Executive Order No. 9024, of January 16, 1942, and any other Executive Orders the provisions of which are inconsistent with the provisions of this Order, are amended accordingly.

FRANKLIN D ROOSEVELT

THE WHITE HOUSE,
*January 24, 1942.*

[No. 9040]

[F. R. Doc. 42-735; Filed, January 26, 1942; 12:53 p. m.]

[1] 7 F.R. 329.
[2] 6 F.R. 5909.

### EXECUTIVE ORDER

AMENDING EXECUTIVE ORDER NO. 9017 OF JANUARY 12, 1942, TO PROVIDE FOR THE APPOINTMENT OF ASSOCIATE MEMBERS OF THE NATIONAL WAR LABOR BOARD

By virtue of the authority vested in me by the Constitution and the statutes of the United States, it is hereby ordered that Executive Order No. 9017[1] of January 12, 1942, entitled "Establishment of the National War Labor Board", be, and it is hereby, amended so as to provide for the appointment of associate members of the National War Labor Board. Such associate members shall be authorized to act as Mediators in any labor dispute pursuant to the direction of the Board.

Associate members shall receive compensation and expenses during any period of service in like manner as regular members of the Board.

FRANKLIN D ROOSEVELT

THE WHITE HOUSE,
*January 24, 1942.*

[No. 9038]

[F. R. Doc. 42-739; Filed, January 26, 1942; 12:23 p. m.]

[1] 7 F.R. 237.
[2] 6 F.R. 191.

CONTENTS

THE PRESIDENT


| | Page |
|---|---|
| Executive Orders: | |
| National War Labor Board, appointment of associate members | 527 |
| Panama Canal and Panama Railroad Co., sick and rest leave authorized for alien employees | 528 |
| War Production Board, additional functions and duties defined | 527 |
| RULES, REGULATIONS, ORDERS | |
| TITLE 14—CIVIL AVIATION: | |
| Administrator of Civil Aeronautics: | |
| Designation of radio fixes | 529 |
| Civil Aeronautics Board: | |
| Air traffic rules, emergency regulations | 528 |
| TITLE 30—MINERAL RESOURCES: | |
| Bituminous Coal Division: | |
| Minimum price schedules, relief orders, etc.: | |
| District 1 (3 documents) | 534, 536, 537 |
| District 10 | 538 |
| District 13 | 539 |
| District 18 | 539 |
| Reports and records, certain requirements modified | 533 |
| TITLE 32—NATIONAL DEFENSE: | |
| Office of Price Administration: | |
| Chemicals, price schedule for hide glue | 544 |
| Coke, price schedule for beehive oven furnace coke produced in Pennsylvania | 545 |
| Sugar, amendment to price schedule | 544 |
| Office of Production Management: | |
| Aluminum, supplementary conservation order | 539 |
| Chemical production maintenance, repair and operating supplies; preference rating order | 541 |
| Fats and oils, supply and distribution order amended | 543 |
| Wool, interpretation of conservation order | 543 |


(Continued on next page)



0248

and the Federal Works Agency (relating to the administration of the agencies and functions transferred therefrom hereunder) and of the agencies and functions, powers, and duties consolidated hereunder, such sums, and in such proportions, as he may find necessary for the administrative expenses of the National Housing Agency. None of the agencies established or consolidated hereunder shall incur any obligations for administrative expenses except pursuant to appropriations, allocations, or other authorizations of funds specifically available now or hereafter for administrative expenses.

12. The National Housing Administrator may appoint necessary personnel and make necessary expenditures to carry out the functions, powers, and duties of the National Housing Agency. The Administrator and the Commissioners hereunder may delegate their respective functions, powers, and duties to such agencies, officials, or personnel as they may designate, respectively. Until the appointment or designation of a National Housing Administrator, the Commissioners respectively shall exercise such of the functions, powers, and duties of the National Housing Administrator as relate to the agencies, functions, powers, and duties to be administered by such Commissioners respectively.

13. Nothing herein shall impair or affect any outstanding obligations or contracts of any agency consolidated hereunder or of the United States of America (including its pledge of faith to the payment of all annual contributions now or hereafter contracted for pursuant to the United States Housing Act, as amended), or of any Insurance Funds created under the National Housing Act.

14. All orders, rules, regulations, permits, or other privileges made, issued or granted by or in respect of any agency, function, power, or duty consolidated hereunder shall continue in effect to the same extent as if such consolidation had not occurred until modified, superseded, or repealed, except that the regulations of January 11, 1941, relating to defense housing coordination shall hereby be revoked upon the appointment or designation of the National Housing Administrator.

15. All unexpended balances of appropriations, authorizations, allocations, or other funds transferred under this order shall be used only for the respective purposes and in the administration of the respective functions for which such funds were made available.

16. Transfers of available funds under this order shall include funds available for the fiscal year ending June 30, 1943.

17. This order shall become effective as of the date hereof and shall be in force and effect so long as Title I of the First War Powers Act, 1941, remains in force.

FRANKLIN D ROOSEVELT

THE WHITE HOUSE,
*February 24, 1942.*

[No. 9070]

[F. R. Doc. 42-1663; Filed, February 25, 1942; 12:16 p. m.]

## EXECUTIVE ORDER

### TRANSFERRING FUNCTIONS OF THE FEDERAL LOAN AGENCY TO THE DEPARTMENT OF COMMERCE

Whereas by an Executive order issued this date[1] under Title I of the First War Powers Act, several agencies were transferred from the Federal Loan Agency to the National Housing Agency established by such order, and it is deemed advisable that the remaining functions of the Federal Loan Agency be administered in the Department of Commerce;

Now, therefore, by virtue of the authority vested in me by Title I of the First War Powers Act, 1941, approved December 18, 1941, it is hereby ordered as follows:

SEC. 1. *Transfer of Functions.* All functions, powers, and duties of the Federal Loan Agency and of the Federal Loan Administrator which relate to the Reconstruction Finance Corporation, Electric Home and Farm Authority, RFC Mortgage Company, Federal National Mortgage Association, Disaster Loan Corporation, Export-Import Bank of Washington, Defense Plant Corporation, Rubber Reserve Company, Metals Reserve Company, Defense Supplies Corporation, and War Insurance Corporation, together with all other functions, powers, and duties not transferred by the Executive order establishing the National Housing Agency, are transferred to the Department of Commerce and shall be administered under the direction and supervision of the Secretary of Commerce.

SEC. 2. *Transfer of Records, Property, and Personnel.* All records and property (including office equipment) and all personnel of the Federal Loan Agency used in the administration of the functions transferred by this order are transferred to the Department of Commerce for use in the administration of the functions transferred by this order.

SEC. 3. *Transfer of Funds.* So much of the unexpended balances of the appropriations, allocations, or other funds available or to be made available for the use of the Federal Loan Agency in the exercise of any function transferred by this order, as the Director of the Bureau of the Budget with the approval of the President shall determine, shall be transferred to the Department of Commerce for use in connection with the exercise of the functions so transferred. In determining the amount to be transferred the Director of the Bureau of the Budget may include an amount to provide for the liquidation of obligations incurred against such appropriations, allocations, or other funds prior to the transfer.

SEC. 4. *Effective and Termination Dates.* This order shall become effective as of the date hereof and shall continue in force and effect until the termination of Title I of the First War Powers Act, 1941.

FRANKLIN D ROOSEVELT

THE WHITE HOUSE,
*February 24, 1942.*

[No. 9071]

[F. R. Doc. 42-1664; Filed, February 25, 1942; 12:17 p. m.]

[1] E.O. 9070, *supra.*

## EXECUTIVE ORDER

### TRANSFERRING CERTAIN VESSELS AND PERSONNEL FROM THE COAST AND GEODETIC SURVEY TO THE WAR AND NAVY DEPARTMENTS

By virtue of the authority vested in me by section 16 of the act of May 22, 1917, 40 Stat. 87 (U.S.C., title 33, sec. 855), and as President of the United States, and in view of the existing national emergency, it is hereby ordered as follows:

1. The following-named vessels are transferred from the Coast and Geodetic Survey to the service and jurisdiction of the Navy Department:

PIONEER (Ex ARGUS)
GUIDE (Ex ANDRADITE)
PRATT (Ex (YP-96)

2. The following-named commissioned officers are hereby transferred from the Coast and Geodetic Survey to the service and jurisdiction of the Navy Department:

Lieut. Comdr. Lyman D. Graham
Lieut. Comdr. George L. Bean
Lieut. Charles M. Thomas
Lieut. William M. Gibson
Lieut. (jg) Walter J. Chovan
Lieut. (jg) Junius T. Jarman
Lieut. (jg) Edgar F. Hicks, Jr.
Ensign Ernst E. Stohsner
Ensign Charles A. Schoene

3. The following-named commissioned officers are hereby transferred from the Coast and Geodetic Survey to the service and jurisdiction of the War Department:

Lieut. Ralph W. Woodworth
Lieut. Albert J. Hoskinson
Lieut. H. Arnold Karo
Lieut. Hubert A. Paton
Lieut. Riley J. Sipe
Lieut. Frank G. Johnson
Lieut. Alvin C. Thorson
Lieut. (jg) Maurice A. Hecht
Lieut. (jg) William C. Russell
Ensign Fair J. Bryant

4. The above-named officers shall, while under the jurisdiction of the War or Navy Department, serve under their commissions in the Coast and Geodetic Survey, and while so serving shall constitute a part of the active military or naval forces of the United States and shall be under direct orders of the War or Navy Department and subject to the laws, regulations, and orders for the government of the Army or Navy so far as they may be applicable.

5. The above-named vessels and officers shall be returned to the Coast and Geodetic Survey when the present national emergency ceases to exist.

FRANKLIN D ROOSEVELT

THE WHITE HOUSE,
*February 24, 1942.*

[No. 9072]

[F. R. Doc. 42-1665; Filed, February 25, 1942; 12:17 p. m.]

THE NATIONAL ARCHIVES OF THE UNITED STATES 1934

# FEDERAL REGISTER

VOLUME 7 NUMBER 185

*Washington, Saturday, September 19, 1942*

## *The President*

### EXECUTIVE ORDER 9246

PROVIDING FOR THE COORDINATION AND CONTROL OF THE RUBBER PROGRAM

By virtue of the authority vested in me by the Constitution and the statutes, particularly the Act of December 18, 1941, entitled "First War Powers Act, 1941" (Public 354—77th Congress), as President of the United States and Commander in Chief of the Army and Navy, and in order to carry out certain recommendations made to the President by the Rubber Survey Committee for the purpose of assuring an adequate supply of rubber for war and essential civilian needs, it is hereby ordered as follows:

1. The Chairman of the War Production Board is authorized and directed to assume full responsibility for and control over the Nation's rubber program in all of its phases, including, but not limited to: technical research and development, importation, purchase, sale, acquisition, storage, transportation, provision of facilities, conservation, production, manufacturing, processing, marketing, distribution, and use of natural and synthetic rubber, related materials, and products manufactured therefrom.

2. There shall be, within the War Production Board, a Rubber Director, appointed by and responsible to the Chairman of the War Production Board for the administration of the Nation's rubber program.

3. In carrying out this order, the Rubber Director may direct the Rubber Reserve Company and other subsidiaries of the Reconstruction Finance Corporation, the Office of the Petroleum Coordinator for War, the Board of Economic Warfare, the Office of Defense Transportation, the Office of Price Administration, the Department of Agriculture, and such other departments, establishments, and agencies as he may deem necessary, to execute such aspects of the rubber program in such manner and for such period of time as he deems advisable, and full compliance shall be accorded such directives by the Federal agencies concerned.

4. In accordance with the provisions of paragraph 3 and unless future directives issued thereunder shall otherwise provide:

A. The Office of the Petroleum Coordinator for War shall, upon and under the direction of the Rubber Director:

(1) Conduct or promote developmental research in the production and manufacture of butadiene from petroleum and natural gas products and recommend new production and manufacturing methods for the consideration of the Rubber Director.

(2) Serve as the agency of the Government in supervising, upon completion of construction, the operation of plants producing synthetic rubber raw materials made from petroleum and natural gas products.

B. The Rubber Reserve Company shall, upon and under the direction of the Rubber Director, serve as the agency of the Government in supervising the construction of all plants under the rubber program, including plants manufacturing butadiene from petroleum and natural gas products.

5. Nothing herein shall be construed to limit the powers conferred upon the Price Administrator by the "Emergency Price Control Act of 1942."

6. Any provision of any Executive Order conflicting with this order is superseded to the extent of such conflict.

FRANKLIN D ROOSEVELT

THE WHITE HOUSE,
*September 17, 1942.*

[F. R. Doc 42-9278; Filed, September 18, 1942, 12:08 p. m.]

### EXECUTIVE ORDER 9247

TRANSFERRING CERTAIN EMPLOYMENT SERVICE AND TRAINING FUNCTIONS TO THE WAR MANPOWER COMMISSION

By virtue of the authority vested in me by the First War Powers Act, 1941 and for the purpose of enabling the

(Continued on next page)

CONTENTS


THE PRESIDENT

| | Page |
|---|---|
| EXECUTIVE ORDERS: | |
| Rubber program, coordination and control | 7379 |
| War Manpower Commission, transfer of certain employment service and training functions | 7379 |

REGULATIONS AND NOTICES

| | |
|---|---|
| AGRICULTURAL MARKETING ADMINISTRATION: | |
| Milk handling orders: | |
| Boston, Mass | 7410 |
| Lowell-Lawrence, Mass | 7412 |
| BITUMINOUS COAL DIVISION: | |
| Flash Coal Co., hearing postponed | 7410 |
| Minimum price schedules amended: | |
| District 10 | 7382 |
| District 13 | 7383 |
| District 15 (corr.) | 7384 |
| District 19 | 7383 |
| Shelby Coal Co., hearing | 7408 |
| ECONOMIC WARFARE BOARD: | |
| Export control; ship and plane stores, supplies and equipment (Am. 38) | 7384 |
| ENTOMOLOGY AND PLANT QUARANTINE BUREAU: | |
| Japanese beetle administrative instructions modified (2 documents) | 7381 |
| FEDERAL COMMUNICATIONS COMMISSION: | |
| Amateur radio station licenses, issuance | 7407 |
| Telephone companies, uniform system of accounts | 7407 |
| FEDERAL POWER COMMISSION: | |
| Cooperative Service Assn., hearing | 7413 |
| FEDERAL TRADE COMMISSION: | |
| Remus, Stanley J., hearing | 7413 |
| OFFICE OF DEFENSE TRANSPORTATION: | |
| Harrisburg, Pa., and New York, N. Y., coordination of motor passenger service | 7414 |


(Continued on next page)



SEPTEMBER 19

THE NATIONAL ARCHIVES OF THE UNITED STATES 1934 LITTERA SCRIPTA MANET

# FEDERAL REGISTER

VOLUME 7 NUMBER 221

*Washington, Tuesday, November 10, 1942*

## *The President*

### EXECUTIVE ORDER 9262

AUTHORIZING THE SECRETARY OF THE NAVY TO PERFORM AND EXERCISE CERTAIN ADDITIONAL FUNCTIONS, DUTIES, AND POWERS

By virtue of the authority vested in me by the Constitution and laws of the United States, and particularly by Title I of the First War Powers Act, 1941, approved December 18, 1941 (55 Stat. 838), as President of the United States and Commander in Chief of the Army and Navy of the United States, it is hereby ordered as follows:

1. The Secretary of the Navy is hereby authorized to perform and exercise the same functions, powers, and duties, on behalf of the Navy Department, as are authorized to be performed and exercised by the Secretary of War, on behalf of the War Department, by the provisions of subdivisions (a) and (b) of section 1 of the act entitled "An Act to expedite the strengthening of the national defense", approved July 2, 1940 (54 Stat. 712), as continued in effect by Public Law 580, 77th Congress, approved June 5, 1942.

2. Any provision of any Executive order, and any provision, rule, or regulation of any officer, department, board, commission, bureau, agency or instrumentality of the Government of the United States conflicting with this order are superseded to the extent of such conflict.

3. This order shall become effective as of the date hereof, and shall continue in force and effect until the termination of Title I of the First War Powers Act, 1941.

FRANKLIN D ROOSEVELT

THE WHITE HOUSE,
*November 5, 1942.*

[F. R. Doc. 42-11595; Filed, November 6, 1942; 2:40 p. m.]

### EXECUTIVE ORDER 9263

REVOKING THE DESIGNATIONS OF CORDOVA, ALASKA, AND MAHUKONA, HAWAII, AS CUSTOMS PORTS OF ENTRY

By virtue of the authority vested in me by section 1 of the act of August 1, 1914, 38 Stat. 609, 623 (U.S.C., title 19, sec. 2), the designations of Cordova, Alaska, and Mahukona, Hawaii, as customs ports of entry in Customs Collection District No. 31 (Alaska) and Customs Collection District No. 32 (Hawaii), respectively, are hereby revoked.

This order shall become effective on the thirtieth day from the date hereof.

FRANKLIN D ROOSEVELT

THE WHITE HOUSE,
*November 5, 1942.*

[F. R. Doc. 42-11596; Filed, November 6, 1942; 2:40 p. m.]

### EXECUTIVE ORDER 9264

EXTENSION OF THE PROVISIONS OF EXECUTIVE ORDER NO. 9001 OF DECEMBER 27, 1941, TO CONTRACTS OF THE DEPARTMENT OF COMMERCE

By virtue of the authority vested in me by Title II of the First War Powers Act, 1941, approved December 18, 1941 (Public Law 354, 77th Congress), and as President of the United States, and deeming that such action will facilitate the prosecution of the war, I hereby extend the provisions of Executive Order No. 9001 of December 27, 1941,[1] to the Department of Commerce with respect to all contracts made or to be made by it relating to the prosecution of the war; and subject to the limitations and regulations contained in such Executive Order, I hereby authorize the Secretary of Commerce and such other officers as he may designate, to perform and exercise, as to the Department of Commerce, all of the functions and powers vested in and granted to the Secretary of War, the Secretary of the Navy, and the Chairman of the United States Maritime Commission by such Executive Order.

FRANKLIN D ROOSEVELT

THE WHITE HOUSE,
*November 5, 1942.*

[F. R. Doc. 42-11597; Filed, November 6, 1942; 2:40 p. m.]

[1] 6 F.R. 6787.

CONTENTS

THE PRESIDENT

| | Page |
|---|---|
| EXECUTIVE ORDERS: | |
| Buzzards Bay and Vineyard Sound Defensive Sea Area, establishment | 9107 |
| Campaign medals; American, European-African-Middle Eastern and Asiatic-Pacific | 9106 |
| Cordova, Alaska, and Mahukona, Hawaii; revocation of designations as customs ports of entry | 9105 |
| Department of Commerce contracts, extension of provisions of Executive Order 9001 | 9105 |
| Secretary of the Navy, authorization to perform and exercise certain additional functions, etc | 9105 |
| REGULATIONS AND NOTICES | |
| AGRICULTURAL ADJUSTMENT AGENCY: | |
| Cotton marketing quota referendum, time and place for balloting, etc | 9210 |
| Cotton marketing quotas, 1943-1944 marketing year | 9107 |
| AGRICULTURAL MARKETING ADMINISTRATION: | |
| New York; handling of milk | 9109 |
| Richmond, Va.; designation as tobacco market | 9107 |
| ALIEN PROPERTY CUSTODIAN: | |
| DeNobili Cigar Co., vesting order | 9213 |
| BITUMINOUS COAL DIVISION: | |
| Hearings, etc.: | |
| Columbia Steel Co | 9209 |
| Lillybrook Coal Co., et al | 9209 |
| Minimum price schedules amended: | |
| District 4 | 9118 |
| District 10 | 9118 |
| CIVIL AERONAUTICS BOARD: | |
| Air traffic rules: | |
| Certificate of waiver | 9110 |
| Pilot identification card | 9109 |
| Foreign air carrier regulations | 9109 |
| FEDERAL COMMUNICATIONS COMMISSION: | |
| Hearings: | |
| Delta Broadcasting Co., Inc. (WQBC) | 9212 |
| KMTR Radio Corp | 9212 |

(Continued on next page)



NOVEMBER 10

0251

DEC 11 1942 FILES COLORADO

THE NATIONAL ARCHIVES OF THE UNITED STATES 1934 LITTERA SCRIPTA MANET

# FEDERAL REGISTER

VOLUME 7 NUMBER 237

Washington, Friday, December 4, 1942

## The President

### EXECUTIVE ORDER 9276

ESTABLISHING THE PETROLEUM ADMINISTRATION FOR WAR AND DEFINING ITS FUNCTIONS AND DUTIES

By virtue of the authority vested in me by the Constitution and statutes, as President of the United States and Commander in Chief of the Army and Navy, and in order to coordinate and centralize the war policies and actions of the Government relating to petroleum with a view toward providing adequate supplies of petroleum for the successful prosecution of the war and for other essential purposes, it is hereby ordered as follows:

1. Whenever used in this order:

a. The term "petroleum" means petroleum, petroleum products, and associated hydrocarbons, including but not limited to natural gas, except that natural gas which has entered into gas transmission lines from field gathering lines shall not be so included.

b. The term "petroleum industry" means the production, refining, treating, storage, shipment, receipt, or distribution within the United States, its territories and possessions, of petroleum, exclusive of: (1) the transportation of petroleum, (2) the transmission of natural gas from the point of its entry into gas transmission lines from field gathering lines, and (3) the distribution of natural gas.

c. The term "transportation" means transportation as defined in U. S. Code, Title 49, section 1 (3) (a), and in Executive Orders No. 8989[1] and No. 9156.[2]

2. There is established a Petroleum Administration for War, at the head of which shall be a Petroleum Administrator who shall be directly responsible to the President. The Secretary of the Interior shall serve ex officio as Petroleum Administrator hereinafter referred to as the Administrator.

3. The Administrator shall:

a. Subject to the provisions of this order, establish basic policies and formulate plans and programs to assure for the prosecution of the war the conservation and most effective development and utilization of petroleum in the United States and its territories and possessions, issue necessary policy and operating directives to parties engaged in the petroleum industry, and appoint such general, regional, local, or functional petroleum industry committees or councils as the Administrator finds necessary: *Provided*, that no directive issued hereunder shall conflict with any direction which may be issued by the Chairman of the War Production Board pursuant to Paragraph 1 of Executive Order No. 9125 of April 7, 1942.[3]

b. Serve, as far as practicable, as the liaison and channel of communication between the units of the petroleum industry and the several departments and agencies of the Federal Government on matters directly involving the functions and duties of the Administrator.

c. (1) Obtain from the Departments of War and the Navy, the Office of Lend-Lease Administration, the Department of State and the Board of Economic Warfare, the several divisions and branches of the War Production Board, and such other Federal departments and agencies as may be appropriate, estimates of the amounts of petroleum which will be required from the United States, its territories and possessions, to meet direct and indirect military, and essential industrial and civilian, requirements; and compile and analyze such estimates and submit them to the War Production Board with recommendations for the allocation of petroleum to meet such requirements.

(2) Prepare and recommend to the War Production Board estimates of the quantities and kinds of material needed by the petroleum industry to produce, refine, store, distribute (excluding transportation), or otherwise make available the amount of petroleum recommended by the Administrator for allocation by the War Production Board.

d. Subject to the direction of the Chairman of the War Production Board, exercise the powers, authority, and the discretion conferred upon the Chair-

[1] 6 F.R. 6725.
[2] 7 F.R. 3349.
[3] 7 F.R. 2719.

(Continued on next page)

CONTENTS

THE PRESIDENT


| | Page |
|---|---|
| EXECUTIVE ORDER: | |
| Petroleum Administration for War; establishment and definition of functions and duties | 10091 |
| REGULATIONS AND NOTICES | |
| ALIEN PROPERTY CUSTODIAN: | |
| Vesting orders: | |
| Administrazione dei Monopoli di Stato | 10117 |
| Asahi Corp | 10119 |
| Ballot, Leon, Enterprises | 10117 |
| Gausebeck, August T | 10118 |
| Ricordi, G., and Co., Inc. (2 documents) | 10119, 10120 |
| Romana, Steaua | 10118 |
| Scholler, H | 10119 |
| Teplitzer Maschinenfabriks A. G | 10118 |
| BITUMINOUS COAL DIVISION: | |
| Minimum price schedules amended: | |
| District 3 | 10093 |
| District 8 | 10095 |
| District 11 | 10115 |
| District 15 | 10098 |
| CIVIL AERONAUTICS BOARD: | |
| Pan American Airways, Inc., and American Export Airlines, Inc., postponement of oral argument | 10116 |
| FEDERAL COMMUNICATIONS COMMISSION: | |
| Applications involving construction of telephone or telephone lines; policy | 10114 |
| Columbia Broadcasting System, Inc., et al., hearing | 10116 |
| FEDERAL POWER COMMISSION: | |
| Hearings, etc.: | |
| Georgia Power Co | 10117 |
| Tennessee Gas and Transmission Co | 10117 |
| OFFICE OF DEFENSE TRANSPORTATION: | |
| Chicago, Burlington & Quincy Railroad Co.; substitution of motor vehicle for rail passenger service | 10121 |
| Discontinuance of passenger service between: | |
| Edgemont, S. Dak., and Billings, Mont | 10120 |


(Continued on next page)

FEDERAL REGISTER

Published daily, except Sundays, Mondays, and days following legal holidays by the Division of the Federal Register, The National Archives, pursuant to the authority contained in the Federal Register Act, approved July 26, 1935 (49 Stat. 500), under regulations prescribed by the Administrative Committee, approved by the President.

The Administrative Committee consists of the Archivist or Acting Archivist, an officer of the Department of Justice designated by the Attorney General, and the Public Printer or Acting Public Printer.

The daily issue of the FEDERAL REGISTER will be furnished by mail to subscribers, free of postage, for $1.25 per month or $12.50 per year, payable in advance. Remit money order payable to the Superintendent of Documents directly to the Government Printing Office, Washington, D. C. The charge for single copies (minimum, 10¢) varies in proportion to the size of the issue.

There are no restrictions on the republication of material appearing in the FEDERAL REGISTER.

Telephone information: DIstrict 0525.

CONTENTS—Continued

OFFICE OF DEFENSE TRANSPORTATION—Continued. Page
Discontinuance of passenger service between—Con.
New Albany, Ind., and Princeton, Ind. 10120
International-Great Northern Railroad, and Texas and New Orleans Railroad Co.; establishment of shuttle train 10121
OFFICE OF PRICE ADMINISTRATION:
Adjustments, etc.:
Architectural Decorating Co. 10113
Brooklyn Cooperage Co. 10112
40-Fathom Fish, Inc. 10112
General Ceramics Co. 10122
Irvington Varnish and Insulator Co. 10113
Jackson Coal Co. 10121
Levin Bag and Burlap Co. 10113
Norwood-White Coal Co. 10122
Scozarro, Josephine 10122
United States Testing Co. 10121
Bags, second hand (Rev. MPR 55) 10104
Ferrosilicon (Supp. Reg. 14, Am. 70) 10111
Gasoline rationing regulations:
Mileage (Ration Order 5C, Supp. 1) 10110
Puerto Rico (Ration Order 5B, Am. 11) 10109
Virgin Islands:
(Ration Order 8, Am. 2) 10110
(Revocation of Rationing Emergency Order 1) 10109
Iron ore:
Great Lakes, transportation (Supp. Reg. 14, Am. 73) 10111
Minnesota, Wisconsin and Michigan, maximum prices (MPR 113, Am. 2) 10108
Lumber, aircraft (Rev. MPR 109) 10100

CONTENTS—Continued

OFFICE OF PRICE ADMINISTRATION—Continued. Page
Machines and parts, and machinery services (MPR 136, Am. 60) 10109
Nickel oxide (Rev. Supp. Reg. 4, Am. 14) 10111
Prunes, dried, and raisins (MPR 242, Am. 1) 10108
Rubber goods, mechanical (MPR 149, Am. 3) 10103
Seasonal commodities, retail and wholesale (Corr. to MPR 210, Am. 4) 10109
PUBLIC DEBT BUREAU:
United States Savings Bonds, Series F and G; revocation of designation as war savings bonds 10115
TREASURY:
Hawaii, general licenses under currency regulations (2 documents) 10099
WAGE AND HOUR DIVISION:
Learner employment certificates, various industries (2 documents) 10115
WAR PRODUCTION BOARD:
Butadiene production agreement (Certificate 23) 10123
Cooking appliances, domestic (L-23-d) 10099
Ethyl alcohol and related compounds (M-30) 10099
WAR SHIPPING ADMINISTRATION:
War risk insurance, automatic coverage on import cargoes, etc. 10114

man by Paragraph 1 of Executive Order No. 9125 of April 7, 1942, by issuing, and taking appropriate action to enforce, such orders or directives to the petroleum industry as the Administrator may deem necessary, in order to:

(1) Provide adequate supplies of petroleum for military, or other essential uses; or

(2) Effect the proper distribution of such amounts of materials as the Chairman of the War Production Board may allot for the use of the petroleum industry.

e. Compile data and make continuing surveys with respect to the effect of the prices charged for petroleum upon the efficient wartime operations of the petroleum industry and the maintenance of adequate supplies of petroleum for war and essential industrial and civilian uses. On the basis of such surveys, the Petroleum Administrator shall consult with and recommend to the Administrator, Office of Price Administration, such upward or downward adjustments in the schedule of prices charged for petroleum as will, in the judgment of the Petroleum Administrator, assure the efficient wartime operation of the petroleum industry and the maintenance of adequate supplies of petroleum for war, and essential industrial and civilian uses. In order to enable the Petroleum Administrator to make appropriate recommendations, the Price Administrator shall advise with the Petroleum Administrator prior to the establishment or alteration by the Price Administrator of any schedule of prices to be charged for petroleum.

f. Be advised of all plans or proposals which deal with the civilian rationing of petroleum and consult with rationing authorities in the development of such plans or proposals; and, in those instances where rationing is for the purpose of maintaining adequate supplies of petroleum for war and essential industrial and civilian requirements, determine, after advising with the War Production Board, the areas and the times within which such rationing should be effective and the amount of petroleum available for such purpose.

g. Consult with the War Shipping Administration with respect to the assignment of tankers and the movement of petroleum, and, subject to the requirements of the Departments of War and the Navy, recommend allocations as between units of the petroleum industry of available tankers under the control of the War Shipping Administration.

h. Designate the quantity and kind of petroleum to be shipped and received by those engaged in the petroleum industry, and certify such designations to the Office of Defense Transportation for appropriate action in providing the necessary transportation.

i. Review all plans or proposals for the construction, extension, enlargement or interconnection of petroleum pipe lines; subject to the over-all responsibilities of the Office of Defense Transportation, approve such plans or proposals as are, in his judgment, necessary to provide adequate supplies of petroleum for war and other essential uses and recommend to the War Production Board programs covering the amounts and kinds of materials needed for such pipe lines. The Administrator shall direct the physical operation of petroleum pipe lines to the extent of prescribing the quantity and kind of petroleum to be transported by and the direction of flow through such pipe lines: *Provided*, that nothing herein shall be deemed to limit the functions and authority of the Office of Defense Transportation under Executive Order No. 8989 of December 18, 1941, with respect to the provision of necessary additional transportation facilities and equipment, or to coordinate and direct domestic traffic movements.

j. Advise the several Federal departments and agencies concerned with the construction, enlargement, or additional interconnection of any natural gas transmission line as to the supply and availability of natural gas at the proposed sources of production whenever such construction, enlargement, or interconnection will result in substantially altering the rate of production at such sources.

k. Perform the duties and responsibilities with relation to petroleum and the facilities used in the petroleum industry imposed by Executive Order No. 9165 of May 19, 1942,[4] upon the Department of the Interior.

[4] 7 F.R. 3765.

l. Certify to the various State regulatory bodies having jurisdiction with respect to the production of petroleum, the amounts and kinds of petroleum which should be produced in their respective States, and collaborate with such State regulatory bodies in the coordination of their activities with the programs and policies of the Administrator.

m. Keep the President informed with respect to the progress made in carrying out this order and perform such related duties as the President may from time to time assign or delegate to him.

4. The Administrator shall collaborate with the appropriate Federal departments and agencies authorized to determine plans and policies with respect to foreign petroleum activities. The Administrator shall, in conformity with such plans and policies, issue directives concerning the physical operations of their foreign petroleum facilities to units of the American petroleum industry which directly or indirectly engage in such operations in foreign countries. The Administrator shall be the channel of communication on foreign petroleum matters between the Federal departments and agencies and such units of the American petroleum industry.

5. The Administrator shall perform the functions with respect to rubber conferred upon the Office of Petroleum Coordinator for War by Executive Order No. 9246 of September 17, 1942,[5] subject to such directives as the Rubber Director may issue pursuant to such order. Nothing in this order shall apply to or in any way limit the functions and authority, or the manner of executing the same, of the Chairman of the War Production Board or the Rubber Director in the exercise of control over and administration of the Nation's rubber program pursuant to said Executive Order No. 9246, or the functions and authority of any department, establishment or agency in the execution of such aspects of the rubber program in such manner and for such period of time as the Rubber Director may direct pursuant to said Executive Order.

6. Subject to such restrictions as may be imposed by the Departments of War and the Navy with respect to their own requirements, the several Federal departments and agencies shall supply such information and data as the Administrator may require in performing his functions and shall advise with the Administrator before undertaking any action which might affect the continuous, ready availability of petroleum for military and essential industrial and civilian needs. In order to assist him in carrying out the purposes of this order, the Administrator may establish or designate committees or groups of advisors, representing two or more departments or agencies of the Federal Government, or States. The Administrator shall meet at regular and special intervals with representatives of the various Federal departments and agencies having continuing functions directly related to petroleum or the petroleum industry.

[5] 7 F.R. 7379.

7. The Administrator may appoint, with the approval of the President, a Deputy Administrator, who shall report directly to the Administrator, and to whom he may delegate any and all power, authority, and discretion conferred upon him by this order. The Deputy Administrator shall serve as Acting Administrator in the absence of the Administrator. The Administrator, within the limits of such funds as may be allocated or appropriated for the purpose, may employ necessary personnel and make provision for necessary supplies, facilities, travel, and services.

8. The Office of the Petroleum Coordinator for National Defense, later changed to the Office of Petroleum Coordinator for War, established by the letter of the President dated May 28, 1941, is abolished, and its personnel, records, property, and funds are transferred to the Petroleum Administration for War, effective fifteen days from the date of this order. All orders, directives, agreements, recommendations, and other documents issued or entered into under the functions, duties, and authorities of the Petroleum Coordinator for War shall remain in force as the responsibility of the Administrator until such time as he may revoke, alter, or otherwise change such documents under provisions of this Executive Order.

9. Nothing in this order shall be deemed to limit in any way the authority of the Departments of War and Navy to initiate or carry out directly, without review or approval by the Administrator, any action relating to petroleum or the petroleum industry which either Department deems to be a matter of military necessity or expediency and which arises in such areas and is of such military urgency as to require special or secret disposition; or to limit in any way the functions and authority of the Secretary of State, under the direction of the President, in the formation of the foreign policy and the conduct of the foreign relations of this Government; or to limit in any way the statutory powers of the Interstate Commerce Commission with respect to rates, charges, statistics, accounts, car service (including emergency service powers) or operating authority; or to limit in any way the exercise of the authority of the Federal Power Commission or the performance of its functions and authority under the Natural Gas Act (52 Stat. 821) as amended; or to limit the functions and authority of the Board of Economic Warfare under the Act of June 30, 1942 (56 Stat. 463); or to limit in any way the powers of the Price Administrator under the Emergency Price Control Act (56 Stat. 23) and as amended by Public Law 729—77th Congress, Second Session.

10. Any provisions of pertinent Executive Orders in conflict with the provisions of this order are hereby superseded: *Provided*, that nothing herein shall be deemed in any way to limit the functions and authority of the Chairman of the War Production Board under Executive Orders No. 9024 of January 16, 1942,[6] No. 9040 of January 24, 1942,[7] No. 9125 of April 7, 1942, and No. 9246 of September 17, 1942; or to limit in any way the functions and authority of the Federal Power Commission under Executive Order No. 8202 of July 13, 1939;[8] or to limit in any way the functions, duties, or authority of the War Shipping Administration with respect to the operation, control, purchase, requisition, charter, repair, use, or insurance of any vessel or cargo; or to limit the functions and authority of the Board of Economic Warfare under Executive Orders No. 8839 of July 30, 1941,[9] as amended: No. 8900 of September 15, 1941,[10] No. 8926 of October 28, 1941,[11] No. 8942 of November 19, 1941,[12] and No. 9128 of April 13, 1942; [13] or to limit the functions and authority of the Office of Lend-Lease Administration under Executive Order No. 8926 of October 28, 1941.

[6] 7 F.R. 329.

FRANKLIN D ROOSEVELT

THE WHITE HOUSE,
*December 2, 1942.*

[F. R. Doc 42-12787; Filed, December 2, 1942; 4:05 p. m.]

## *Regulations*

## TITLE 30—MINERAL RESOURCES

### Chapter III—Bituminous Coal Division

[Docket No. A-1702]

### PART 323—MINIMUM PRICE SCHEDULE, DISTRICT NO. 3

ORDER GRANTING RELIEF, ETC.

Order granting temporary relief and conditionally providing for final relief in the matter of the petition of District Board No. 3 for the establishment of price classifications and minimum prices for the coals of certain mines in District No. 3.

An original petition, pursuant to section 4 II (d) of the Bituminous Coal Act of 1937, having been duly filed with this Division by the above-named party, requesting the establishment, both temporary and permanent, of price classifications and minimum prices for the coals of certain mines in District No. 3; and

It appearing that a reasonable showing of necessity has been made for the granting of temporary relief in the manner hereinafter set forth; and

No petitions of intervention having been filed with the Division in the above-entitled matter; and

The following action being deemed necessary in order to effectuate the purposes of the Act;

*It is ordered*, That, pending final disposition of the above-entitled matter, temporary relief is granted as follows: Commencing forthwith, § 323.6 (*Alphabetical list of code members*) is amended by adding thereto Supplement R-I, § 323.8 (*Special prices—(b) Railroad fuel prices for all movements except via*

[7] 7 F.R. 527.
[8] 4 F.R. 3243.
[9] 6 F.R. 3823.
[10] 6 F.R. 4795.
[11] 6 F.R. 5519.
[12] 6 F.R. 5909.
[13] 7 F.R. 2809.

0254

**CHAP. 510.**—An Act Making appropriations to supply urgent deficiencies in the appropriations for the fiscal year ending June thirtieth, nineteen hundred and six, and for prior years, and for other purposes.

February 27, 1906. [H. R. 12320.] [Public, No. 28.]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That the following sums be, and the same are hereby, appropriated, out of any money in the Treasury not otherwise appropriated, to supply deficiencies in the appropriations for the fiscal year nineteen hundred and six, and for prior years, and for other objects hereinafter stated, namely:

Urgent deficiencies appropriations.

## DEPARTMENT OF STATE.

Department of State.

### FOREIGN INTERCOURSE.

Foreign intercourse.

Contingent expenses, missions.

To supply a deficiency in the appropriation "Contingent expenses, foreign missions," for the fiscal year nineteen hundred and five, including all objects mentioned under this title of appropriation in the diplomatic and consular appropriation Act for the fiscal year nineteen hundred and five, twenty-one thousand dollars.

To pay amounts found due by the accounting officers on account of the appropriation for "Contingent expenses, foreign missions," for the fiscal year nineteen hundred and four, twenty-two thousand and twenty-eight dollars and forty-one cents.

Bringing home criminals.

To pay amounts found due by the accounting officers of the Treasury on account of the appropriation "Bringing home criminals," for the fiscal year nineteen hundred and five, one thousand and thirty-three dollars and thirty-three cents.

Relief, etc., American seamen.

To pay amounts found due by the accounting officers of the Treasury on account of the appropriation for "Relief and protection of American seamen," for the fiscal year nineteen hundred and four, one hundred and eighty-six dollars and twenty-five cents.

Contingent expenses, consulates.

To supply a deficiency in the appropriation "Contingent expenses, United States consulates," for the fiscal year nineteen hundred and five, including all objects mentioned under this title of appropriation in the diplomatic and consular appropriation Act for the fiscal year nineteen hundred and five, thirty thousand dollars.

Unforeseen emergencies.

R. S., sec. 291, p. 49.

Restriction.

To enable the President to meet unforeseen emergencies arising in the diplomatic and consular service, and to extend the commercial and other interests of the United States, to be expended pursuant to the requirement of section two hundred and ninety-one of the Revised Statutes, fifty thousand dollars, or so much thereof as may be necessary, no part of which sum shall be disbursed for services rendered or expenses incurred within the District of Columbia, except for the entertainment of visiting representatives of foreign governments.

Peking, China. Improvement of legation grounds at. Vol. 33, p. 1211.

That not to exceed five thousand dollars of the unexpended balance of the appropriation of twenty thousand dollars made by the sundry civil Act of March third, nineteen hundred and five, for furnishing complete the legation buildings in Peking, China, may be used for improving the legation grounds at Peking, China.

## TREASURY DEPARTMENT.

Treasury Department.

Cora B. Thomas. Salary. Vol. 33, p. 1215.

To enable the Secretary of the Treasury to pay Cora B. Thomas her salary as a clerk of class three in the Treasury Department for the fiscal year nineteen hundred and six, at the rate of one thousand six hundred dollars per annum, deducting therefrom any salary paid her during said year as a clerk in said Department, four hundred dollars, or so much thereof as may be necessary; and the Secretary of the Treasury is hereby authorized to continue her name on the rolls of

Claims allowed by Auditor for State and other Departments.

## CLAIMS ALLOWED BY THE AUDITOR FOR THE STATE AND OTHER DEPARTMENTS.

For public printing and binding, thirty-eight dollars.

For improving Botanic Garden, forty-one dollars and seventy-six cents.

For improving buildings, Botanic Garden, five dollars and twenty-two cents.

Vol. 33, p. 2009.

For payment for contesting seats in Congress in contest entitled "Koonce against Grady," Act March third, nineteen hundred and five, one thousand dollars.

For salaries of ministers, sixty-five dollars and ninety-three cents.

For contingent expenses, foreign missions, one hundred and fifty-five dollars and sixty cents.

For rent of buildings for legation in China, three dollars and sixty-seven cents.

For salaries, consular officers while receiving instructions and in transit, twenty dollars and thirty-eight cents.

For pay of consular officers for services to American vessels and seamen, ten dollars.

For Interstate Commerce Commission, nine dollars and sixty cents.

For expenses, Bureau of Animal Industry, eight dollars and twelve cents.

For grass and forage plant investigations, one dollar and fifty cents.

For purchase and distribution of valuable seeds, twenty-seven dollars and seventy-nine cents.

For general expenses, Weather Bureau, fifty-one dollars and sixty-one cents.

For supplies of light-houses, one thousand seven hundred and four dollars and fifty-six cents.

For repairs and incidental expenses of light-houses, two dollars and twenty-three cents.

For expenses of light vessels, one hundred and thirty-eight dollars and fifty-six cents.

For expenses of buoyage, fifty-three dollars and forty-nine cents.

For miscellaneous expenses, Fish Commission, fifty-five cents.

For defense in Indian depredation claims, nine dollars and forty-four cents.

For salaries, fees, and expenses of marshals, United States courts, nine hundred and ninety-eight dollars and eighty cents.

For pay of special assistant attorneys, United States courts, three hundred dollars.

For fees of clerks, United States courts, two hundred and forty dollars.

For fees of commissioners, United States courts, two hundred and thirty-eight dollars and thirty-three cents.

For fees of jurors, United States courts, eighteen dollars and thirty cents.

For support of prisoners, United States courts, one hundred and eighty-nine dollars and thirty-five cents.

For pay of bailiffs, and so forth, United States courts, forty-eight dollars.

For supplies for United States courts, five dollars and eighty-seven cents.

For miscellaneous expenses, United States courts, five dollars.

R. S., sec. 3679, p. 723, amended. Vol. 33, p. 1257.

Sec. 3. That section thirty-six hundred and seventy-nine of the Revised Statutes of the United States, as amended by section four of the deficiency appropriation Act approved March third, nineteen hundred and five, is hereby further amended to read as follows: