**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| SHELL OIL COMPANY, UNION OIL COMPANY OF CALIFORNIA, ATLANTIC RICHFIELD COMPANY, and TEXACO INC., Plaintiffs, v. UNITED STATES OF AMERICA, Defendant. | Case No. 06-CV-141 (Senior Judge Smith) |

**PLAINTIFFS' PROPOSED FINDINGS OF UNCONTROVERTED FACT IN SUPPORT OF THEIR CROSS-MOTION <u>FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY</u>**

Pursuant to RCFC 56(h)(1), Plaintiffs Shell Oil Company, Union Oil Company of California, Atlantic Richfield Company, and Texaco Inc. (collectively, the "Oil Companies") respectfully submit the following Proposed Findings of Uncontroverted Fact in Support of their Cross-Motion for Partial Summary Judgment as to Liability.

1. On April 10, 1942, Shell Oil Company, Incorporated, and the United States, through the Defense Supplies Corporation ("DSC"), entered into a contract for the sale and purchase of large volumes of 100-octane aviation gasoline ("Avgas"). Contract between Defense Supplies Corporation and Shell Oil Company, Incorporated (April 10, 1942) ("1942 Shell Contract"), Pl. App. 1-24.

2. On May 1, 1943, Shell Oil Company, Incorporated, and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of Avgas.

Contract between Defense Supplies Corporation and Shell Oil Company, Incorporated (May 1, 1943) ("1943 Shell Contract"), Pl. App. 25-53.

3. On December 31, 1942, Union Oil Company of California and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of Avgas. Contract between Defense Supplies Corporation and Union Oil Company (Dec. 31, 1942) ("1942 Union Contract"), Pl. App. 54-67.

4. On May 1, 1943, Union Oil Company of California and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of Avgas. Contract between Defense Supplies Corporation and Union Oil Company of California (May 1, 1943) ("1943 Union Contract"), Pl. App. 68-98.

5. On February 3, 1942, Richfield Oil Corporation and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of Avgas. Contract between Defense Supplies Corporation and Richfield Oil Corporation (Feb. 3, 1942) ("1942 Richfield Contract"), Pl. App. 99-116.

6. On February 20, 1943, Richfield Oil Corporation and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of Avgas. Contract between Defense Supplies Corporation and Richfield Oil Corporation (Feb. 20, 1943) ("1943 Richfield Contract"), Pl. App. 117-48.

7. On January 17, 1942, The Texas Company and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of Avgas. Contract between Defense Supplies Corporation and The Texas Company (Jan. 17, 1942) ("1942 Texas Contract"), Pl. App. 149-63.

8. On February 8, 1943, The Texas Company and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of Avgas. Contract between Defense Supplies Corporation and The Texas Company (Feb. 8, 1943) ("1943 Texas Contract"), Pl. App. 164-91.

9. On June 10, 1942, Tidewater Associated Oil Company and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of Avgas. Contract between Defense Supplies Corporation and Tidewater Associated Oil Company (June 10, 1942) ("1942 Tidewater Contract"), Pl. App. 192-215.

10. On February 18, 1943, Tidewater Associated Oil Company and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of Avgas. Contract between Defense Supplies Corporation and Tidewater Associated Oil Company (Feb. 18, 1943) ("1943 Tidewater Contract"), Pl. App. 216-43.

11. The contracts identified in Paragraphs 1-10 required the Oil Companies to produce, manufacture, sell, and deliver large volumes of Avgas. 1942 Shell Contract, Pl. App. 1-24; 1943 Shell Contract, Pl. App. 25-53; 1942 Union Contract, Pl. App. 54-67; 1943 Union Contract, Pl. App. 68-98; 1942 Richfield Contract, Pl. App. 99-116; 1943 Richfield Contract, Pl. App. 117-48; 1942 Texas Contract, Pl. App. 149-63; 1943 Texas Contract, Pl. App.164-91; 1942 Tidewater Contract, Pl. App. 192-215; 1943 Tidewater Contract, Pl. App. 216-43.

12. "Two byproducts, acid sludge and [spent] alkylation acid, necessarily resulted from the production of avgas." *United Stats v. Shell Oil Co.*, No. 91-0589, 1995 U.S. Dist. LEXIS 19778, at *7 (C.D. Cal. Sept. 18, 1995); *see also United States v. Shell Oil Co.*, 294 F.3d 1045, 1050-51 (9th Cir. 2002); *United States v. Shell Oil Co.*, 13 F. Supp. 2d 1018, 1023-24 (C.D. Cal. 1998); Stipulation ¶¶ 338, 493-96, Pl. App. 452, 510-11.

13. "[I]ncreased avgas production increased acid waste generation." *Shell*, 294 F.3d at 1051; *see also id.* at 1050-51; *Shell*, 13 F. Supp. 2d at 1026; Stipulation ¶¶ 319-21, 338, Pl. App. 448-49, 452.

14. During World War II, the Government was aware that the "increased avgas production increased acid waste generation." *Shell*, 294 F.3d at 1051; *see also Shell*, 13 F. Supp. 2d at 1027; Stipulation ¶ 338, Pl. App. 452.

15. The increased volume of acid waste generated by the Oil Companies' increased production of Avgas in satisfaction of their obligations under the contracts identified in Paragraphs 1-10 overwhelmed existing acid waste reprocessing facilities. *See, e.g., Shell*, 294 F.3d at 1051; *Shell*, 13 F. Supp. 2d at 1023.

16. During World War II, the Government was aware that the increase in acid waste generation created problems for the Oil Companies in how to dispose of the acid waste. *See, e.g., Shell*, 294 F.3d at 1050-51; *Shell*, 13 F. Supp. 2d at 1027-28; Stipulation ¶¶ 360-64, 366-70, 373-75, 378, 388, 391-93, 395, Pl. App. 455-56, 457-59, 459-60, 461, 464-65, 466-67, 468.

17. The Oil Companies sought Government approval to build additional acid reprocessing facilities to handle the increased acid waste. *See, e.g., Shell*, 13 F. Supp. 2d at 1028; Stipulation ¶¶ 339-41, 379-92, Pl. App. 452, 461-67.

18. The "United States refused to allocate resources to build reprocessing plants." *Shell*, 294 F.3d at 1060; *see also id.* at 1051; *Shell*, 13 F. Supp. 2d at 1028; Stipulation ¶¶ 379-92, Pl. App. 461-67.

19. One reprocessing facility that was built near the Oil Companies' refineries during World War II failed to operate at design capacity. *See, e.g., Shell*, 294 F.3d at 1051; Stipulation ¶¶ 357-64, Pl. App. 454-56.

20. “[T]his failure resulted in the dumping of both spent alkylation acid and acid sludge.” *Shell*, 294 F.3d at 1051; *see also* Stipulation ¶ 364, Pl. App. 456.

21. “[T]he United States generally refused to make tank cars available to the Oil Companies to transport the [acid] waste to Northern California for reprocessing.” *Shell*, 294 F.3d at 1060; *see also id.* at 1050-51; *Shell*, 13 F. Supp. 2d at 1027-28; Stipulation ¶¶ 342, 393, 401-02, 414-15, 417-18, 487, Pl. App. 452, 467, 468-69, 471, 472, 507.

22. “By late 1944 and 1945, the Oil Companies were producing so much spent alkylation acid that they could not reuse all of it in their own refineries, and the facilities for reprocessing this acid were insufficient. When the resulting bottleneck threatened to halt avgas production, the Oil Companies dumped large quantities of spent alkylation acid at the McColl site.” *Shell*, 294 F.3d at 1051.

23. “Most of the acid waste at the McColl Site began as fresh sulfuric acid … that was used in the alkylation units to produce alkylate for [Avgas].” Stipulation ¶ 496, Pl. App. 511; *see, e.g.*, *Shell*, 13 F. Supp. 2d at 1023-26.

24. The remaining acid waste at the McColl Site was related to benzol production. *Shell*, 294 F.3d at 1051; *Shell*, 13 F. Supp. 2d at 1023.

25. The United States was held liable under the Comprehensive Environmental Response, Compensation and Liability Act (“CERCLA”), as amended, 42 U.S.C. §§ 9601 *et seq*, for 100 percent of the cleanup costs of the benzol-related acid waste dumped at the McColl Site. *Shell*, 294 F.3d at 1059-61.

26. The Oil Companies were held liable under CERCLA for the cleanup costs of the non-benzol-related acid waste dumped at the McColl Site. *Shell*, 294 F.3d at 1048-49 (summarizing rulings).

27. The Oil Companies were required under CERCLA to pay for the cleanup costs of the non-benzol-related acid waste dumped at the McColl Site. *Shell*, 294 F.3d at 1048-49 (summarizing rulings).

28. Each of the Contracts identified in Paragraphs 1-10 contain the following contract clause, in relevant part:

> [A]ny new or additional taxes, fees, or charges, other than income, excess profits, or corporate franchise taxes, which Seller may be required to pay by any municipal, state, or federal law in the United States or any foreign country to collect or pay by reason of the production, manufacture, sale or delivery of the [Avgas].

1942 Shell Contract 15, Pl. App. 16; 1943 Shell Contract 11, Pl. App. 26; 1942 Union Contract 7-8, Pl. App. 61-62; 1943 Union Contract 16, Pl. App. 84; 1942 Richfield Contract 13, Pl. App. 112; 1943 Richfield Contract 15, Pl. App. 132; 1942 Texas Contract 10, Pl. App. 159; 1943 Texas Contract 19-20, Pl. App. 183-84; 1942 Tidewater Contract 16, Pl. App. 208; 1943 Tidewater Contract 15-16, Pl. App. 231-32.

29. Each of the contracts identified in Paragraphs 1-10 were terminated at the end of World War II. Stipulation ¶¶ 296, 609, Pl. App. 444, 545.

30. On November 23, 2005, in accordance with § 13(a) of the Contract Settlement Act of 1944, 41 U.S.C. § 113(a), the Oil Companies submitted their demand for written findings addressing their termination claims under the contracts identified in Paragraphs 1-10 for the costs of cleaning up the non-benzol related waste at the McColl Site. Letter from Michael W. Kirk to the Acting Administrator of the United States General Services Administration (Nov. 23, 2005), Pl. App. 554-59.

31. On February 15, 2006, the General Services Administration denied the Oil Companies termination claim. Letter from Ruth Kowarski to Michael W. Kirk (Feb. 15, 2006), Pl. App. 560.

June 30, 2006

Respectfully Submitted,

s/ Michael W. Kirk
Michael W. Kirk
*Counsel of Record*
COOPER & KIRK, PLLC
555 Eleventh Street, NW
Suite 750
Washington, DC 20004
(202) 220-9600
(202) 220-9601 (fax)

*Of Counsel*:
Nicholas A. Oldham
COOPER & KIRK, PLLC
555 Eleventh Street, N.W.
Suite 750
Washington, D.C. 20004
(202) 220-9600
(202) 220-9601 (fax)

**CERTIFICATE OF FILING**

I certify that on June 30, 2006, the attached document was filed electronically. I understand that service is complete upon filing and that parties may access this filing through the Court's ECF system.

s/ Michael W. Kirk
Michael W. Kirk
*Counsel of Record*
COOPER & KIRK, PLLC
555 Eleventh Street, NW
Suite 750
Washington, DC 20004
(202) 220-9600
(202) 220-9601 (fax)

*Of Counsel*:
Vincent J. Colatriano
Nicholas A. Oldham
COOPER & KIRK, PLLC
555 Eleventh Street, N.W.
Suite 750
Washington, D.C. 20004
(202) 220-9600
(202) 220-9601 (fax)