***FINAL***

# Second Five-Year Review Report For McColl Superfund Site Fullerton, Orange County, California



Prepared by: US Army Corps of Engineers, Seattle District
Seattle, Washington

Prepared for: US Environmental Protection Agency, Region 9
San Francisco, California

September 25, 2007

There are actually two cover systems, one encompassing the Los Coyotes sump area, and the other covering the Ramparts sump area. These systems are identical except for their location, and differences in acreage and elevation. Design criteria for the two systems are identical: a barrier layer with maximum hydraulic conductivity of 1 x 10 (-7) cm/sec; a drainage layer with minimum hydraulic conductivity of 1 x 10 (-2) cm/sec; and a vegetative layer of 24 inch minimum thickness and three to five percent grade.

Prior to cap construction, two vertical cutoff walls, which serve as subsurface barriers, were installed, one each encircling the Ramparts and Los Coyotes sump areas. Each barrier was constructed using a slurry mixture of soil and bentonite clay. The bottom elevation of both walls is above the static elevation of groundwater; hence the cutoff walls were primarily designed for vapor containment and not hydraulic isolation, although prevention of horizontal movement of minor perched water through the wall is a beneficial byproduct of the design. The design criteria for the cutoff walls was a maximum hydraulic conductivity of 1 x 10 (-7) cm/sec.

The gas collection systems installed beneath the Los Coyotes and Ramparts cover systems consist of a series of eight-inch mains and four-inch laterals. Underground vaults allow access to individual laterals for inspection and flow measurement. The Los Coyotes and Ramparts networks are interconnected, and a single blower induces a vacuum to draw the subsurface gases through the above-ground vapor treatment system. The vapor treatment system is located on site at a location due west of Sunny Ridge Drive near its intersection with Rosecrans Ave., and consists of two granular activated carbon (GAC) vessels operated in series. In addition to the coal-based coarse mesh granular activated carbon used to remove benzene and other organics, the vessels also originally included a top bed of sodium hydroxide impregnated carbon to remove sulfur compounds. The design flow rate for the system is 1,500 cubic feet per minute. The gas collection and vapor treatment systems are collectively referred to as the Gas Collection and Treatment System (GCTS).

On November 13, 1997, EPA and the California DTSC conducted a final inspection of the McColl Superfund Site. EPA determined that construction had been completed according to specifications and the remediation had been successfully implemented. In April 1998, EPA approved the Final Remedial Action Report for the McColl Site. On June 30, 1998, EPA signed the Superfund Closeout Report for the site.

Additional components of the remedy beyond physical construction include institutional controls and long term monitoring. Institutional controls have been implemented as part of the source OU remedy. The property owner, McAuley LCX Corporation, in a Consent Decree with the federal government, agreed to no further development of the site property. McAuley LCX agreed to record a deed restriction on the Los Coyotes and Ramparts areas. This deed restriction runs with the land and is binding on any potential future owner of the site. Long term monitoring at the source OU includes observation of pressure probes to ensure a negative pressure exists within the sump containment systems, and surveying of settlement monuments for the purpose of identifying any areas of differential settlement which could affect the integrity of the containment

systems. Long term monitoring at the groundwater OU consists of sampling the existing network of monitoring wells to determine whether migration of site related contaminants is occurring.

The Groundwater ROD specified continued groundwater monitoring to determine whether migration of site related contaminants is taking place off site. For the purposes of monitoring groundwater, there is a network of 20 wells from which hydraulic head and chemistry data may be collected. All wells are located outside of the capped areas as there were to be no perforations of the cap. Most wells are grouped, i.e. they can monitor several of the groundwater zones at one latitude/longitude. The P-2 (P-2S, P-2I, P-2DR), P-3 (P-3S, P-3D), and P-4 (P-4I, P-4D) series wells are located on site at the hydraulically downgradient boundary of the site, within the boundaries of the Los Coyotes Country Club golf course. The P-10 series wells (P-10D, P-10L, P-10XD) and P-9D are the hydraulically downgradient off site wells. Well W-8B and the P-5 series wells (P-5S, P-5I, P-5D, P-5L) are located east of the site on Fairgreen Drive. Well W-6A is located on the downgradient side of the Lower Ramparts area. The W-9 series wells (W-9B and W-9C) and W-10B are located hydraulically upgradient of the site. Figure 2 shows the well locations with respect to the McColl Site.

*System Operations, Maintenance, and Monitoring (OM&M)*

In 2002 (at the time of the first Five Year Review), O&M activities, with the exception of site security and surface maintenance performed by the golf course operator, were being performed by a team consisting of EPA, the U.S. Army Corps of Engineers, and the Corps' contractor Montgomery Watson Harza (MWH). A transition to O&M by the McColl Site Group and their contractor C2 REM occurred in late September 2002.

The site security and surface maintenance portions of the site are the responsibility of the golf course operator, previously McAuley LCX Corporation, and currently AG Los Coyotes, LLC. When the McColl Site Group drew up the plan for O&M, they negotiated and signed a side agreement with McAuley LCX (one to which the federal government was not a party). Under that settlement agreement, in exchange for an annual payment from the McColl Site Group, McAuley LCX would perform surface maintenance and site security. Surface maintenance obligations included:

1) Regular watering and fertilizing of the site sufficient to maintain green vegetation and to prevent over watering such that erosion occurs.
2) Routine site inspections of irrigation system components.
3) Repair of malfunctioning irrigation components.
4) Maintenance of surface drainage systems to allow normal drainage (maintenance did not include removal of silt from the retention pond).
5) Routine maintenance to the site perimeter fencing to ensure security.
6) Routine repair of surface conditions leading to erosion.
7) Routine removal of all surface vegetation not reflected in the approved design which could result in root growth that may impact the containment system.

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| SHELL OIL COMPANY, UNION OIL COMPANY OF CALIFORNIA, ATLANTIC RICHFIELD COMPANY, and TEXACO INC., Plaintiffs, v. UNITED STATES OF AMERICA, Defendant. | ) | Case No. 06-CV-141 (Senior Judge Smith) |

**DECLARATION OF EDMOND BOURKE**

I, Edmond Bourke, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. This declaration attests to specific project information as it relates to the McColl Superfund Site located in Fullerton, California.

2. I am the Principal and Owner of C2 REM, Inc. ("C2 REM") an environmental management and development company. I have been involved with coordinating and executing the Operations, Maintenance, and Monitoring ("OM&M") activities currently being conducted at the McColl Site since 2002.

3. C2 REM was hired by Plaintiffs Shell Oil Company; Union Oil Company of California; Atlantic Richfield Company; and Texaco, Inc. ("the Oil Companies") through a competitive bid process in June 2002 to conduct the OM&M activities.

4. In addition to the Plaintiffs, ConocoPhillips has paid one percent (1%) of the total amount contributed to the operation, maintenance and monitoring of the McColl Site. I understand that ConocoPhillips is not a party to this litigation.

5. Beginning in November 2002, the Oil Companies have incurred operations and maintenance expenses in connection with the work done by C2 REM.

6. C2 REM sends monthly invoices for services rendered.

7. Attached to my Declaration is a chart listing each invoice sent to the Oil Companies, the amount of the invoice, and the date the invoice was paid. *See* Exhibit A. The chart also shows the total interest calculated on a daily basis.

8. To date, the Oil Companies and ConocoPhillips have paid C2 REM invoices totaling $1,686,488.19.

9. Excluding the one percent paid by ConocoPhillips, the Oil Companies have paid a total of $1,669,623.31 of the OM&M at the McColl site.

10. I understand that the statutory interest rate is 2.5%, pursuant to 41 USCS § 106. The interest is calculated by multiplying the amount of each monthly invoice by 2.5 percent annual interest rate. Plaintiffs calculated the simple interest on daily at a rate .00685 (2.5 percent divided by 365 days). The interest rate was then multiplied by the number of days since the payment was made, ending on June 30, 2008.

11. The interest accrued on the amount paid by the Oil Companies through June 30, 2008, totals $120,986.81.

12. In addition, the Oil Companies and ConocoPhillips have paid a total of $120,000 to McAuley LCX for surface maintenance and site security.

13. Excluding the one percent paid by ConocoPhillips, the Oil Companies have paid a total of $118,800 to McAuley LCX for the surface maintenance and site security.

14. Interest accrued on these expenses through June 30, 2008 totals $7,635.21.

15. The Total amount paid by the Oil Companies to C2 REM and McAuley LCX, including interest is $1,917,045.33

16. The Oil Companies allocated these costs among themselves as follows:

| | |
|---|---|
| Shell | 58.58 percent |
| Union | 18.94 percent |
| Arco | 18.94 percent |
| Texaco | 3.54 percent |

The allocation excludes the one percent contributed by ConocoPhillips. The one percent was then reallocated among the Oil Companies based on their proportionate share to reflect the share above.

17. The Oil Companies continue to incur monthly expenses for the work done by C2 REM, and interest continues to accrue on both past and current expenses.

Executed:

/s/Edmond Bourke
Edmond Bourke

3:14 PM
02/12/08

# C2REM, INC.
## Customer QuickReport
All Transactions

| | Type | Num | Amount | Date Paid | Interest Ending | Days of Interest | Total Interest |
|---|---|---|---|---|---|---|---|
| C2 REM | | | | | | | |
| | Invoice | 02/110/1 | 53,287.08 | 1/7/2003 | 6/30/2008 | 2002 | 7,306.90 |
| | Invoice | 02/110/2 | 27,689.76 | 01/07/2003 | 06/30/2008 | 2002 | 3,796.91 |
| | Invoice | 02/110/3 | 29,034.69 | 02/04/2003 | 06/30/2008 | 1974 | 3,925.65 |
| | Invoice | 02/110/4 | 31,260.20 | 02/18/2003 | 06/30/2008 | 1960 | 4,196.57 |
| | Invoice | 02/110/4B | 4,278.03 | 03/28/2003 | 06/30/2008 | 1922 | 563.18 |
| | Invoice | 02/110/5 | 30,587.68 | 03/28/2003 | 06/30/2008 | 1922 | 4,026.68 |
| | Invoice | 02/110/6 | 39,796.31 | 04/28/2003 | 06/30/2008 | 1891 | 5,154.44 |
| | Invoice | 02/110/7 | 18,603.74 | 05/21/2003 | 06/30/2008 | 1868 | 2,380.26 |
| | Invoice | 02/110/8 | 23,881.73 | 06/26/2003 | 06/30/2008 | 1832 | 2,996.67 |
| | Invoice | 02/110/9 | 30,015.71 | 07/23/2003 | 06/30/2008 | 1805 | 3,710.85 |
| | Invoice | 02/110/10 | 26,306.15 | 08/22/2003 | 06/30/2008 | 1775 | 3,198.18 |
| | Invoice | 02/110/11 | 20,250.50 | 09/17/2003 | 06/30/2008 | 1749 | 2,425.90 |
| | Invoice | 02/110/12 | 12,401.27 | 11/20/2003 | 06/30/2008 | 1685 | 1,431.24 |
| | Invoice | 02/110/13 | 20,867.04 | 11/21/2003 | 06/30/2008 | 1684 | 2,406.86 |
| | Invoice | 02/110/14 | 19,403.25 | 12/29/2003 | 06/30/2008 | 1646 | 2,187.52 |
| | Invoice | 02/110/15 | 31,719.00 | 01/26/2004 | 06/30/2008 | 1618 | 3,515.16 |
| | Invoice | 02/110/16 | 28,238.05 | 02/23/2004 | 06/30/2008 | 1590 | 3,075.24 |
| | Invoice | 02/110/17 | 16,683.80 | 03/26/2004 | 06/30/2008 | 1558 | 1,780.37 |
| | Invoice | 02/110/18 | 24,845.76 | 04/26/2004 | 06/30/2008 | 1527 | 2,598.59 |
| | Invoice | 02/110/19 | 34,646.05 | 05/21/2004 | 06/30/2008 | 1502 | 3,564.27 |
| | Invoice | 02/110/20 | 29,261.85 | 06/23/2004 | 06/30/2008 | 1469 | 2,944.22 |
| | Invoice | 02/110/21 | 35,797.04 | 07/26/2004 | 06/30/2008 | 1436 | 3,520.86 |
| | Invoice | 02/110/22 | 31,921.84 | 08/23/2004 | 06/30/2008 | 1408 | 3,078.49 |
| | Invoice | 02/110/23 | 32,110.23 | 09/29/2004 | 06/30/2008 | 1371 | 3,015.28 |
| | Invoice | 02/110/24 | 20,809.22 | 10/22/2004 | 06/30/2008 | 1348 | 1,921.29 |
| | Invoice | 02/110/25 | 18,359.70 | 11/22/2004 | 06/30/2008 | 1317 | 1,656.15 |
| | Invoice | 02/110/26 | 19,429.44 | 12/30/2004 | 06/30/2008 | 1279 | 1,702.07 |

3:14 PM
02/12/08

# C2REM, INC.
## Customer QuickReport
All Transactions

| Type | Num | Amount | Date Paid | Interest Ending | Days of Interest | Total Interest |
|---|---|---|---|---|---|---|
| Invoice | 02/110/27 | 16,733.88 | 01/28/2005 | 06/30/2008 | 1250 | 1,432.70 |
| Invoice | 02/110/28 | 29,255.23 | 02/25/2005 | 06/30/2008 | 1222 | 2,448.62 |
| Invoice | 02/110/29 | 21,354.12 | 04/04/2005 | 06/30/2008 | 1184 | 1,731.73 |
| Invoice | 02/110/30 | 21,257.16 | 05/04/2005 | 06/30/2008 | 1154 | 1,680.19 |
| Invoice | 02/110/31 | 16,424.37 | 06/29/2007 | 06/30/2008 | 368 | 413.98 |
| Invoice | 02/110/32 | 25,567.29 | 06/29/2005 | 06/30/2008 | 1098 | 1,922.80 |
| Invoice | 02/110/33 | 28,665.87 | 07/29/2005 | 06/30/2008 | 1068 | 2,096.93 |
| Invoice | 02/110/34 | 20,142.46 | 08/26/2005 | 06/30/2008 | 1040 | 1,434.81 |
| Invoice | 02/110/35 | 20,921.53 | 09/26/2005 | 06/30/2008 | 1009 | 1,445.88 |
| Invoice | 02/110/36 | 16,446.83 | 10/15/2005 | 06/30/2008 | 990 | 1,115.23 |
| Invoice | 02/110/37 | 25,456.61 | 11/14/2005 | 06/30/2008 | 960 | 1,673.86 |
| Invoice | 02/110/38 | 34,554.14 | 01/06/2006 | 06/30/2008 | 907 | 2,146.62 |
| Invoice | 02/110/39 | 31,374.42 | 02/22/2006 | 06/30/2008 | 860 | 1,848.08 |
| Invoice | 02/110/40 | 14,803.47 | 02/22/2006 | 06/30/2008 | 860 | 871.99 |
| Invoice | 02/110/41 | 19,214.43 | 03/24/2006 | 06/30/2008 | 830 | 1,092.33 |
| Invoice | 02/110/42 | 18,591.69 | 04/14/2006 | 06/30/2008 | 809 | 1,030.18 |
| Invoice | 02/110/43 | 22,663.42 | 05/11/2006 | 06/30/2008 | 782 | 1,213.89 |
| Invoice | 02/110/44 | 28,356.03 | 05/18/2006 | 06/30/2008 | 775 | 1,505.20 |
| Invoice | 02/110/45 | 26,489.15 | 07/18/2006 | 06/30/2008 | 714 | 1,295.43 |
| Invoice | 02/110/46 | 16,321.18 | 08/28/2006 | 06/30/2008 | 673 | 752.34 |
| Invoice | 02/110/47 | 19,664.24 | 09/15/2006 | 06/30/2008 | 655 | 882.20 |
| Invoice | 02/110/48 | 14,841.21 | 11/03/2006 | 06/30/2008 | 606 | 616.01 |
| Invoice | 02/110/49 | 21,555.97 | 11/20/2006 | 06/30/2008 | 589 | 869.62 |
| Invoice | 02/110/50 | 24,988.82 | 01/11/2007 | 06/30/2008 | 537 | 919.11 |
| Invoice | 02/110/51 | 12,305.32 | 02/01/2007 | 06/30/2008 | 516 | 434.90 |
| Invoice | 02/110/52 | 16,419.64 | 04/13/2007 | 06/30/2008 | 445 | 500.46 |
| Invoice | 02/110/53 | 19,086.27 | 03/30/2007 | 06/30/2008 | 459 | 600.04 |
| Invoice | 02/110/54 | 30,595.23 | 05/31/2007 | 06/30/2008 | 387 | 810.98 |



Pl. Damages SJ App. 56

3:14 PM
02/12/08

## C2REM, INC.
## Customer QuickReport
All Transactions

| | Type | Num | Amount | Date Paid | Interest Ending | Days of Interest | Total Interest |
|---|---|---|---|---|---|---|---|
| | Invoice | 02/110/55 | 21,886.85 | 05/31/2007 | 06/30/2008 | 396 | 593.64 |
| | Invoice | 02/110/56 | 24,666.68 | 06/25/2007 | 06/30/2008 | 371 | 626.80 |
| | Invoice | 02/110/57 | 40,638.34 | 08/06/2007 | 06/30/2008 | 329 | 915.75 |
| | Invoice | 02/110/58 | 21,889.28 | 09/11/2007 | 06/30/2008 | 293 | 439.28 |
| | Invoice | 02/110/59 | 31,941.37 | 09/27/2007 | 06/30/2008 | 278 | 608.20 |
| | Invoice | 02/110/60 | 31,496.92 | 11/16/2007 | 06/30/2008 | 228 | 491.87 |
| | Invoice | 02/110/61 | 23,433.11 | 10/16/2007 | 06/30/2008 | 259 | 415.70 |
| | Invoice | 02/110/62 | 27,248.40 | 12/11/2007 | 06/30/2008 | 203 | 378.86 |
| | Invoice | 02/110/63 | 25,057.62 | 01/17/2008 | 06/30/2008 | 166 | 284.90 |
| | Invoice | 02/110/64 | 35,300.20 | 02/13/2008 | 06/30/2008 | 139 | 336.08 |
| | Invoice | 02/110/65 | 28,280.59 | 04/25/2008 | 06/30/2008 | 67 | 129.78 |
| | Invoice | 02/110/66 | 22,161.38 | 05/01/2008 | 06/30/2008 | 61 | 92.59 |
| | Invoice | 02/110/67 | 26,952.35 | 06/15/2008 | 06/30/2008 | 16 | 29.54 |
| | | | **1,686,488.19** | **Subtotal** | | | 122,208.90 |
| **McAuley** | ck 1006 | | 20,000.00 | 07/01/2003 | 06/30/2008 | 1827 | 2,502.74 |
| | ck 1018 | | 20,000.00 | 06/01/2004 | 06/30/2008 | 1491 | 2,042.47 |
| | ck 1037 | | 20,000.00 | 06/01/2005 | 06/30/2008 | 1126 | 1,542.47 |
| | ck 1053 | | 20,000.00 | 06/01/2006 | 06/30/2008 | 761 | 1,042.47 |
| | ck 1065 | | 20,000.00 | 06/01/2007 | 06/30/2008 | 396 | 542.47 |
| | ck 1076 | | 20,000.00 | 06/02/2008 | 06/30/2008 | 29 | 39.73 |
| | | | **120,000.00** | **Subtotal** | | | 7,712.33 |
| | | | **1,806,488.19** | **Total** | | | 129,921.23 |

**SUMMARY OF INTEREST CALCULATION**
**ON PRE-1998 STIPULATED COSTS**

A. Interest on $18 million Dec. 1994 Payment Through Oct. 31, 1997

Simple interest at 2.5 percent on $18 million running from Jan. 1, 1995 through Oct. 31, 1997: 34 months * [2.5 percent/12] * $18 million = **$1,275,000.00**

B. Interest on $64,219,514.46 Pre-1998 Costs Through June 30, 2008

Simple interest at 2.5 percent on $64,219,514.46 running from Nov. 1, 1997 through June 30, 2008: 128 months * [2.5 percent/12] * $64,219,514.46 = **$17,125,203.86**

C. Total Interest on Pre-1998 Stipulated Costs

**$18,400,203.86** through June 30, 2008

Continuing to accrue at **$133,790.66 per month** [$64,219,514.46 * (2.5 percent/12)]

**CERTIFICATE OF FILING**

I certify that on June 20, 2008, the attached document was filed electronically. I understand that service is complete upon filing and that parties may access this filing through the Court's ECF system.

s/Michael W. Kirk
Michael W. Kirk
*Counsel of Record*
Cooper & Kirk, PLLC
1523 New Hampshire Ave., N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)