IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SHELL OIL COMPANY, UNION OIL COMPANY OF CALIFORNIA, ATLANTIC RICHFIELD COMPANY, and TEXACO, INC., | ) | |
| Plaintiffs, | ) | No. 06-141 C (Senior Judge Smith) |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT RELEVANT TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56(h)(2) of the Rules of the United States Court of Federal Claims, defendant, the United States, respectfully submits the following "proposed findings of uncontroverted fact as to . . . relevant matters not covered by" the proposed findings of fact filed by plaintiffs ("the Oil Companies") with their June 20, 2008 motion for summary judgment with respect to damages. We respond to plaintiffs' proposed findings in a separate document.

1. The Oil Companies began using sulfuric acid in their refineries "[d]ecades before World War II." Stips. 514, 521 (Def. App. 29, 33); see Stips. 2, 326-328, 409 (Def. App. 1, 4, 15) (all plaintiffs were generating acid sludge as of December 1941), 443-448 (Def. App. 20-21) (describing Shell's acid waste disposal contracts), 484-488 (Def. App. 23-24) (statements of Eli McColl, a former Shell Oil Company employee).

2. During the War, plaintiffs continued to use sulfuric acid to produce products other than military aviation fuel ("avgas"), "including motor gasoline, kerosene, and lubricating oils." Stip. 431 (Def. App. 20); see Stip. 375 (Def. App. 10) (Texas Co.).

3. Plaintiffs' non-avgas "products would have been [acid] treated regardless of [how much] aviation gasoline was made for the U.S. Government or for anybody else." Def. App. 44-45 (Anderson Tr. 582-85).

4. Civilian gasoline, in particular, was a rationed and valuable commodity during World War II. Stip. 623 (Def. App. 36).

5. "The undisputed facts indicate that the Oil Companies . . . dumped acid waste from operations other than avgas production at the McColl site . . . ." United States v. Shell Oil Co., 294 F.3d 1045, 1062 (9th Cir. 2002); see Stip. 431 (Def. App. 20).

6. When plaintiffs produced spent alkylation acid in the production of aviation fuel ("avgas") during World War II, their options were to (1) use the spent acid in their own refineries to produce non-avgas products, until it became acid sludge, which would then typically be dumped; (2) sell the spent acid; (3) reprocess it, or have it reprocessed, to full strength; or (4) dump it. Stips. 325, 329, 343, 346-356, 364, 485, 500, 519-520, 526 (Def. App. 3-4, 6-9, 23, 26, 30-33, 35); Shell, 294 F.3d at 1051.

7. In contrast to acid sludge, spent alkylation acid was a valuable commodity during World War II. Stips. 485, 519-520, 526 (Def. App. 23, 30-33, 35).

8. Reprocessing acid sludge for industrial use was technically possible, but expensive. Stips. 329, 376 (Def. App. 4, 10).

9. Two of the plaintiffs had operated acid sludge reprocessing plants before shutting them down in the 1930s. Stips. 355, 376, 382, 500 (Def. App. 7, 10, 13, 26).

10. Plaintiffs' "decisions to pursue technologies to reprocess, burn, dump, or otherwise dispose of their acid sludge were based in part on economic considerations." Stips. 500-511 (Def. App. 26-28) .

11. If plaintiffs chose not to use spent alkylation acid in their own refineries, their most commercially attractive alternative, when possible, was to reprocess the spent acid, not to dump it. Stips. 343, 346-356 (Def. App. 6-7).

12. "Some of the Oil Companies reprocessed spent alkylation acid themselves, but at various times all of them entered into contracts to have other private entities reprocess it." Shell, 294 F.3d at 1050.

13. Plaintiffs reprocessed more spent alkylation acid during World War II than they used in their refineries to produce non-avgas products. Def. App. 37 (Anderson Tr. 435-38).

14. "Much of [plaintiffs'] spent alkylation acid . . . was reprocessed at plants built by Stauffer Chemical Company and General Chemical Company. Some of the [unreprocessed] spent alkylation acid was used within [plaintiffs'] refineries to treat other petroleum fractions including motor gasoline (both civilian and military)[,] kerosene[,] and other products." Stip. 496 (Pl. App. 37); see also Stip. 343-348 (Def. App. 6).

15. The only reason given in this record that plaintiffs dumped any spent alkylation acid (as opposed to acid sludge) at the McColl site is the failure of a modified Stauffer plant to operate at its design capacity in late 1944 and 1945. Stips. 329, 363-364, 376, 493, 500, 524 (Def. App. 4, 9-10, 25-26, 34); Shell, 49 F.3d at 1051 ("[The Stauffer plant] failed to operate at design capacity and this failure resulted in the dumping of both spent alkylation acid and acid sludge.") (emphasis added).

16. These capacity problems at the Stauffer reprocessing plant "resulted from either technical problems or intra-company disagreements, but were not caused by government denials of any priorities or approvals." Stip. 524 (Def. App. 34).

17. Plaintiffs would not have dumped spent alkylation acid (as opposed to acid sludge) at the McColl site if they had sold, used, or reprocessed the spent alkylation acid instead. See Shell, 294 F.3d at 1049; Stips. 323, 325, 329, 343, 346 (Def. App. 3, 4, 6).

18. The operator of the McColl site had a financial incentive, under his purchase agreement for the property, to dump at least 50,000 barrels of acid sludge there per year. Stip. 430 (Def. App. 19).

19. Although plaintiffs' production of spent alkylation acid increased during World War II, their acid sludge production did not increase correspondingly. Stips. 319-321, 410 (Def. App. 2-3, 15); Def. App. 38-40 (Anderson Tr. 459-69).

20. "[D]uring the war, [plaintiff] Shell [Oil Company] elected not to develop a process for acid reprocessing that it could have used, but chose not to use, at its [California] refinery." Stip. 518 (Def. App. 30).

21. The total amount of acid waste at the McColl site was approximately 6.25 percent benzol waste and approximately 93.75 percent non-benzol waste. Def. App. 44-45 n.1; but see Shell, 294 F.3d at 1051 (stating, before stipulation that approximately 6.25 percent of the total waste was benzol waste, that approximately 5.5 percent of the total waste was benzol waste).

22. Spent alkylation acid dumped by plaintiffs was "approximately 12 percent of the total waste at the McColl Site." Shell, 294 F.3d at 1051.

23. Approximately 82.5 percent of the total waste at the McColl site was "most[ly] . . . acid sludge resulting from [plaintiffs'] chemical treatment of non-avgas refinery products using spent alkylation acid." Id.

24. During World War II, the War Production Board approved several applications to construct acid reprocessing plants in the Southern California region. Stips. 351-353, 357, 359, 524 (Def. App. 7-8, 34).

25. As far as is indicated by the record, the War Production Board denied only one request to construct an acid reprocessing plant for use by one of the Oil Companies in California during the War. That application was submitted by plaintiff Texaco, Inc. in early 1942, as part of a refinery expansion plan, but the board denied it based in part upon its determination that existing reprocessing facilities were sufficient to handle the anticipated increase in acid production. Stips. 379-383 (Def. App.11-13).

26. The War Production Board took measures intended to alleviate railroad tank car shortages both nationwide and in California during the War. Stips. 404-405, 413-420 (Def. App. 14, 16-17).

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

s/Jeanne E. Davidson
JEANNE E. DAVIDSON
Director

OF COUNSEL:

RUTH KOWARSKI
Senior Assistant General Counsel
Real Property Division
General Services Administration

s/Kyle Chadwick
KYLE CHADWICK
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit,
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 616-0476
Fax: (202) 305-7644

Attorneys for Defendant

July 11, 2008

CERTIFICATE OF FILING

I certify that on July 11, 2008, the foregoing was filed electronically. I understand that service is complete upon filing and parties and others may access this filing through the Court's electronic system.

s/Kyle Chadwick