IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| SHELL OIL COMPANY, UNION OIL COMPANY OF CALIFORNIA, ATLANTIC RICHFIELD COMPANY, and TEXACO INC., Plaintiffs, v. UNITED STATES OF AMERICA, Defendant. | Case No. 06-CV-141 (Senior Judge Smith) |

**PLAINTIFFS' RESPONSES TO THE GOVERNMENT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT RELEVANT TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56(h)(2) of the Rules of the Court of Federal Claims, plaintiffs Shell Oil Company, Union Oil Company of California, Atlantic Richfield Company, and Texaco Inc. (collectively, the "Oil Companies") respectfully respond as follows to the Government's Proposed Findings of Uncontroverted Fact Relevant to Plaintiffs' Motion for Summary Judgment (Doc. No. 36):

1. The Oil Companies began using sulfuric acid in their refineries "[d]ecades before World War II." Stip. 514, 521 (Def. App. 29, 33); see Stips. 2, 326-328, 409 (Def. App. 1, 4, 15) (all plaintiffs were generating acid sludge as of December 1941), 443-448 (Def. App. 20-21) (describing Shell's acid waste disposal contracts), 484-488 (Def. App. 23-24) (statements of Eli McColl, a former Shell Oil company employee).

Response: Undisputed.

2. During the War, plaintiffs continued to use sulfuric acid to produce products other than military aviation fuel ("avgas"), "including motor gasoline, kerosene, and lubricating oils." Stip. 431 (Def. App. 20); see Stip. 375 (Def. App. 10) (Texas Co.).

Response: Disputed. The cited stipulations do not support the proposition that 98 percent pure sulfuric acid was used directly in the production of non-avgas products such as motor gasoline, kerosene, and lubricating oils, and the evidence in the record establishes that all of the waste at the McColl Site (except the benzol waste that is not at issue in this case) originated as 98 percent pure sulfuric acid that was used in the production of avgas. *See* Stipulations between the United States and the Oil Companies in *United States v. Shell Oil Co.*, No. 91-0589 (RJK) (C.D. Cal.) ("Stipulation") ¶ 496, Plaintiffs' Appendix in Support of Their Motion for Summary Judgment ("Pl. Damages SJ App.") 37; Defendant's Responses to Plaintiffs' Proposed Findings of Uncontroverted Fact (Doc. No. 18) ("Gov't SJ Liability Fact Resp.") ¶¶ 23-24, Pl. Damages SJ App. 40; *United States v. Shell Oil Co.*, 13 F. Supp. 2d 1018, 1023 (C.D. Cal. 1998), *aff'd in part and rev'd in part on other grounds*, 294 F.3d 1045 (9th Cir. 2002); *United States v. Shell Oil Co.*, 294 F.3d 1045, 1051 (9th Cir. 2002). However, the Oil Companies do not dispute that some of spent alkylation acid resulting from the use of 98 percent pure sulfuric acid was in turn used in the production of non-avgas products, thus deferring and mitigating the acid waste ultimately dumped at the McColl Site. *See* Stipulation ¶ 496, Pl. Damages SJ App. 37.

3. Plaintiffs' non-avgas "products would have been [acid] treated regardless of [how much] aviation gasoline was made for the U.S. Government for anybody else." Def. App. 44-45 (Anderson Tr. 582-85).

Response: Disputed. The district court in the CERCLA case found that "much of the acid treating of non-avgas products, acid treating that often was not necessary but merely preferable, occurred solely because the acid was on hand and had to be put to some use or dumped." *Shell*, 13 F. Supp. 2d at 1026.

4. Civilian gasoline, in particular, was a rationed and valuable commodity during World War II. Stip. 623 (Def. App. 36).

Response: The Oil Companies do not dispute that "[c]ivilian motor gasoline was in short supply during World War II and was rationed until after the end of World War II." Stipulation ¶ 623, Def. App. 36.

5. "The undisputed facts indicate that the Oil Companies … dumped acid waste from operations other than avgas production at the McColl site …." United States v. Shell Oil Co., 294 F.3d 1045, 1062 (9th Cir. 2002); see Stip. 431 (Def. App. 20).

Response: Disputed. The cited stipulation merely states that the acid sludge dumped at the McColl Site resulted from both avgas production and the production of other products. It does not follow from this that any of the acid waste at the McColl Site arose exclusively from operations other than avgas production. To the contrary, the acid sludge arising from the production of non-avgas products *also* arose from the production of avgas. It is undisputed that the acid sludge resulting from the production of non-avgas productions had its origins in spent alkylation acid generated during avgas production. *See* Plaintiffs' Response to Defendant's Proposed Finding of Uncontroverted Fact ¶ 2, *supra*.

6. When plaintiffs produced spent alkylation acid in the production of aviation fuel ("avgas") during World War II, their options were to (1) use the spent acid in their own refineries to produce non-avgas products, until it became acid sludge, which would then typically be

dumped; (2) sell the spent acid; (3) reprocess it, or have it reprocessed, to full strength; or (4) dump it. Stips. 325, 329, 343, 346-356, 364, 485, 500, 519-520, 526 (Def. App. 3-4, 6-9, 23, 26, 30-33, 35); Shell, 294 F.3d at 1051.

Response: Disputed in large part. While options (1) and (4) were available to the Oil Companies, options (2) and (3) were largely foreclosed. As for option (3), other than a single sale for which the buyer provided the tank cars, *see* Stipulation ¶ 526, Def. App. 35, there is no evidence that the Oil Companies could have sold the vast quantities of spent alkylation acid generated by the production of avgas. Even if someone wanted to buy it (and the Government has not identified a potential buyer), the fact remained that tank cars were largely unavailable to transport the waste. *See* Gov't SJ Liability Fact Resp. ¶ 21, Plaintiffs' Supplemental Appendix in Support of Their Motion for Summary Judgment ("Pl. Supp. Damages SJ App.") 61 (" '[T]he United States generally refused to make tank cars available to the Oil Companies to transport the [acid] waste to Northern California for reprocessing.") (quoting *Shell*, 294 F.3d at 1060); *see also Shell*, 13 F. Supp. 2d at 1028 ("tank cars were needed by the Government for war purposes" and thus were rarely available to transport acid waste); *see also* Stipulation ¶¶ 342, 393, 417-18, 487, Pl. Supp. Damages SJ App. 64-68. Nor was option (3) available to the Oil Companies once existing reprocessing facilities reached capacity. The Government has squarely admitted that " '[o]n two occasions, the government refused to allocate the materials and resources necessary to build new acid reprocessing facilities in northern California.' " Gov't SJ Liability Fact Resp. ¶ 18, Pl. Supp. Damages SJ App. 60 (quoting *Shell*, 294 F.3d at 1060). The Government has also admitted that "the Oil Companies were producing so much spent alkylation acid that they could not reuse all of it in their own refineries, and the [existing] facilities for reprocessing this acid were insufficient." Gov't SJ Liability Fact Resp. ¶ 22, Pl. Supp. Damages SJ App. 61 (quoting

*Shell*, 294 F.3d at 1051); *see also Shell*, 13 F. Supp. 2d at 1028 (finding Government policy to refuse grant priority for reprocessing plants unless needed for fresh acid to be used in manufacture of avgas, and concluding that "this policy … in combination with the unavailability of tank cars, … left the Oil Companies with no reasonable choice but to dump acid sludge").

7. In contrast to acid sludge, spent alkylation acid was a valuable commodity during World War II. Stips. 485, 519-520, 526 (Def. App. 23, 30-33, 35).

Response: Disputed. To be sure, in theory spent alkylation acid "*could be* a valuable commodity," Stipulation ¶ 329, Def. App. 4 (emphasis added), both because it could be reprocessed into fresh 98 percent pure sulfuric acid for use in the production of avgas and because it could be utilized in the production of non-avgas product. However, its value during World War II was severely limited by the lack of tank cars and reprocessing plant capacity. *See* Plaintiffs' Response to Defendant's Proposed Finding of Uncontroverted Fact ¶ 6, *supra*. The value of spent alkylation acid during World War II was also limited by the overwhelming volume of it generated by the massive production of avgas demanded by the Government. As a result, the Oil Companies often used spent alkylation acid in the production of non-avgas products even when it was not necessary. *See id.* at ¶ 3, *supra*.

8. Reprocessing acid sludge for industrial use was technically possible, but expensive. Stips. 329, 376 (Def. App. 4, 10).

Response: Undisputed.

9. Two of the plaintiffs had operated sludge reprocessing plants before shutting them down in the 1930s. Stips. 355, 376, 382, 500 (Def. App. 7, 10, 13, 26).

Response: Undisputed.

10. Plaintiffs' "decisions to pursue technologies to reprocess, burn, dump, or otherwise dispose of their acid sludge were based in part on economic considerations." Stips. 500-511 (Def. App. 26-28).

Response: Undisputed, although the quotation from Stipulation ¶ 500 does not include the words "to pursue technologies".

11. If plaintiffs chose not to use spent alkylation acid in their own refineries, their most commercially attractive alternative, when possible, was to reprocess the spent acid, not to dump it. Stips. 343, 346-356 (Def. App. 6-7).

Response: Undisputed.

12. "Some of the Oil Companies reprocessed spent alkylation acid themselves, but at various times all of them entered into contracts to have other private entities reprocess it." Shell, 294 F.3d at 1050.

Response: Undisputed.

13. Plaintiffs reprocessed more spent alkylation acid during World War II than they used in their refineries to produce non-avgas products. Def. App. 37 (Anderson Tr. 435-38).

Response: Because Plaintiffs currently lack information that would permit them to confirm or deny this statement, it is disputed. The cited testimony, at most, reflects the Government's expert's conclusion that Shell Oil Company reprocessed most of the spent alkylation acid it generated during the period 1942 through 1946. The Government's expert did not address the other Plaintiffs in the cited passage.

14. "Much of [plaintiffs'] spent alkylation acid … was reprocessed at plants built by Stauffer Chemical Company and General Chemical Company. Some of the [unreprocessed] spent alkylation acid was used within [plaintiffs'] refineries to treat other petroleum fractions

including motor gasoline (both civilian and military)[,] kerosene[,] and other products." Stip. 496 (Pl. App. 37); see also Stip. 343-348 (Def. App. 6).

Response: Undisputed.

15. The only reason given in this record that plaintiffs dumped any spent alkylation acid (as opposed to acid sludge) at the McColl site is the failure of a modified Stauffer plant to operate at its design capacity in late 1944 and 1945. Stips. 329, 363-364, 376, 493, 500, 524 (Def. App. 4, 9-10, 25-26, 34); Shell, 49 F.3d at 1051 ("[The Stauffer plant] failed to operate at design capacity and this failure resulted in the dumping of both alkylation acid and acid sludge.") (emphasis added).

Response: Disputed. "The Oil Companies were producing so much spent alkylation acid that they could not reuse all of it in their own refineries, and the [existing] facilities for reprocessing this acid were insufficient. When the resulting bottleneck threatened to halt avgas production, the Oil Companies dumped large quantities of spent alkylation acid at the McColl site." *Shell*, 294 F.3d at 1051; *see also* Gov't SJ Liability Fact Resp. ¶ 22, Pl. Supp. Damages SJ App. 61 (admitting same).

16. These capacity problems at the Stauffer reprocessing plant "resulted from either technical problems or intra-company disagreements, but were not caused by government denials of any priorities or approvals." Stip. 524 (Def. App. 34).

Response: Undisputed.

17. Plaintiffs would not have dumped spent alkylation acid (as opposed to acid sludge) at the McColl site if they had sold, used, or reprocessed the spent alkylation acid instead. See Shell, 294 F.3d at 1049; Stips. 323, 325, 329, 343, 346 (Def. App. 3, 4, 6).

Response: The Statement is tautological, and therefore undisputed. The Oil Companies do dispute any assertion that sale, use, or reprocessing of the spent alkylation acid that was dumped would have been feasible.

18. The operator of the McColl site had a financial incentive, under his purchase agreement for the property, to dump at least 50,000 barrels of acid sludge there per year. Stip. 430 (Def. App. 19).

Response: The Oil Companies do not dispute that Helen Grant could cancel her agreement to sell the land to Eli McColl if he failed to pay her an average of $208.33 per month in fees for dumping sludge, which corresponds to 50,000 barrels per year. It is unclear whether this arrangement in fact gave him a financial incentive to dump at least 50,000 barrels of acid sludge per year.

19. Although plaintiffs' production of spent alkylation acid increased during World War II, their acid sludge production did not increase correspondingly. Stips. 319-321, 410 (Def. App. 2-3, 15); Def. App. 38-40 (Anderson Tr. 459-69).

Response: Undisputed.

20. "[D]uring the war, [plaintiff] Shell [Oil Company] elected not to develop a process for acid reprocessing that it could have used, but chose not to use, at its [California] refinery." Stip. 518 (Def. App. 30).

Response: Disputed. The quoted statement does not appear in the cited stipulation.

21. The total amount of acid waste at the McColl site was approximately 6.25 percent benzol waste and approximately 93.75 percent non-benzol waste. Def. App. 44-45 n.1; but see Shell, 294 F.3d at 1051 (stating, before stipulation that approximately 6.25 percent of the total waste was benzol waste, that approximately 5.5 percent of the total waste was benzol waste).

Response: Undisputed.

22. Spent alkylation acid dumped by plaintiffs was "approximately 12 percent of the total waste at the McColl Site." Shell, 294 F.3d at 1051.

Response: Undisputed.

23. Approximately 82.5 percent of the total waste at the McColl site was "most[ly] … acid sludge resulting from [plaintiffs'] chemical treatment of non-avgas refinery products using spent alkylation acid." Id.

Response: The Oil Companies do not dispute that approximately 82.5 percent of the total waste was acid sludge, and some portion of the acid sludge resulted from the treatment of non-avgas products using spent alkylation acid that was generated during the production of avgas.

24. During World War II, the War Production Board approved several applications to construct acid reprocessing plants in the Southern California region. Stips. 351-353, 357, 359, 524 (Def. App. 7-8, 34).

Response: The Oil Companies do not dispute that the cited stipulations reflect that the War Production Board approved two applications to construct new acid reprocessing plants in Southern California.

25. As far as is indicated by the record, the War Production Board denied only one request to construct an acid reprocessing plant for use by one of the Oil Companies in California during the War. That application was submitted by plaintiff Texaco, Inc. in early 1942, as part of a refinery expansion plan, but the board denied it based in part upon its determination that existing reprocessing facilities were sufficient to handle the anticipated increase in acid production. Stip. 379-383 (Def. App. 11-13).

Response: The War Production Board refused to authorize priorities for acid regeneration plants in California on two occasions (one on an application by Texaco and the other on an application by Monsanto), *see* Stipulation ¶¶ 379, 383, Def. App. 11, 13; *see also* Gov't SJ Liability Fact Resp. ¶ 18, Pl. Supp. Damages SJ App. 60 (quoting *Shell*, 294 F.3d at 1060), and it refused to approve yet another reprocessing plant proposed by Shell in Houston. *See Shell*, 13 F. Supp. 2d at 1028. Moreover, the Government has admitted that "the Oil Companies were producing so much spent alkylation acid that they could not reuse all of it in their own refineries, and the [existing] facilities for reprocessing this acid were insufficient." Gov't SJ Liability Fact Resp. ¶ 22, Pl. Supp. Damages SJ App. 61 (quoting *Shell*, 294 F.3d at 1051).

26. The War Production Board took measures intended to alleviate railroad tank car shortages both nationwide and in California during the War. Stips. 404-405, 413-420 (Def. App. 14, 16-17).

Response: The Oil Companies do not dispute that the War Production Board "*occasionally* worked with refiners to find available tank cars which the refiners could use to move spent alkylation acid or acid sludge." Stipulation ¶ 403, Def. App. 14 (emphasis added). However, the fact remained that tank cars were largely unavailable to transport the overwhelming volume of waste generated by the production of avgas. As a result, and because reprocessing capacity was also limited, "the Oil Companies with no reasonable choice but to dump acid sludge" at the McColl Site. *Shell*, 13 F. Supp. 2d at 1028.

July 25, 2008

Respectfully Submitted,

s/ Michael W. Kirk

Michael W. Kirk
*Counsel of Record*

COOPER & KIRK, PLLC
1523 New Hampshire Avenue, NW
Washington, DC 20036
(202) 220-9600
(202) 220-9601 (fax)

Counsel for Plaintiffs

*Of Counsel*:

Michael Weitzner

COOPER & KIRK, PLLC
1523 New Hampshire Avenue, NW
Washington, DC 20036
(202) 220-9600
(202) 220-9601 (fax)

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of July 2008, I caused to be served by the Court's electronic filing system a copy of the foregoing on the following counsel:

Stephen C. Tosini, Esq.
Commercial Litigation Branch
Civil Division
United States Department of Justice
1100 L Street, N.W., Room 11014
Attn: Classification Unit—8th Floor
Washington, DC 20530

s/ Michael W. Kirk