**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

_____
                                                    )
SHELL OIL COMPANY, ATLANTIC            )
RICHFIELD COMPANY, TEXICO, INC., AND  )
UNION OIL COMPANY OF CALIFORNIA,      )
                                                    )
            Plaintiffs,                             )
                                                    )          No. 1:06-cv-00141-SGB
        v.                                          )          Hon. Susan G. Braden
                                                    )
THE UNITED STATES OF AMERICA,          )
                                                    )
            Defendant.                              )
_____)

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO THE COURT'S
QUESTIONS DURING CLOSING ARGUMENT**

On November 21, 2016, the Court held closing arguments in this case and requested that
Plaintiffs submit certain supplemental information to the Court. In response to the Court's
inquiries, Plaintiffs respectfully submit the following responses.

**A.   Proposed Court Exhibits Calculating Damages for Each Plaintiff.**

During closing argument, the Court requested that Plaintiffs submit proposed Court
Exhibits that (1) break down the total response costs (with statutory interest) incurred by each
Plaintiff Oil Company, and (2) explain how interest has accrued, for each Plaintiff, on the
$64,219,514.46 million in costs incurred through October 31, 1998. *See* Transcript of Closing
Argument at 41–48 (Nov. 21, 2016) ("Closing Argument Transcript").

Plaintiffs have attached to this filing five proposed Court Exhibits that address the Court's
inquiry. Proposed Court Exhibits 1 through 4 identify the total response costs (with statutory
interest) incurred by each Plaintiff Oil Company along with an itemized break-down that

demonstrates the components of that total.[1]

Proposed Court Exhibit 5 calculates the interest that has accrued on the approximately $64 million in costs that were incurred through October 31, 1998. The first $18 million was paid to the United States and California on or about December 12, 1994, and interest began to accrue on that amount no later than January 1, 1995. Plaintiffs' Post-Trial Proposed Findings of Fact & Memorandum of Law at ¶ 430(a)(iii), (v) (Apr. 8, 2016), Doc. 202 ("Plaintiffs' Post-Trial Brief"). The balance of the $64 million—i.e., $46,219,514.46—was paid on or before November 1, 1997, and interest began to accrue no later than November 1, 1997. *Id.* ¶ 430(a)(iv) and evidence cited therein. Plaintiffs are entitled to simple annual interest at the rate of 2.5 percent. 41 U.S.C. § 106(f) (2010); Plaintiffs' Post-Trial Brief at 149 n.8. Thus, Plaintiffs are entitled to $37,500 in interest each month on the $18,000,000 (i.e., $18,000,000 x (0.025 / 12)), running from January 1, 1995 to October 31, 1997. And they are entitled to $133,790.66 in interest each month on the full $64 million (i.e., $64,219,514.46 x (0.025 / 12)), running from November 1, 1997 to November 30, 2015.

**B. Shell's Wilmington and Dominguez Refineries Produced 1.4 Million Barrels of 100 Octane Avgas During 1942.**

The Court asked Plaintiffs to provide the precise number of barrels of aviation gasoline that Shell's Wilmington and Dominguez refineries produced in 1942. Closing Argument Transcript at 14. In 1942, Shell produced 1,410,310 barrels of avgas. *See* PX934, Kipp Rebuttal Report Table 3: Catalytic Cracker and Hyrdogenation Capacity to Offset Acid Treatment.

---

[1] Consistent with the evidence presented at trial, the attached Proposed Court Exhibits calculate damages and interest through November 30, 2015. Plaintiffs propose that after the Court issues its decision detailing its analysis governing the calculation of damages and assessing the amount of damages incurred through November 30, 2015, the parties will confer regarding an appropriate methodology for updating the damage and interest calculations prior to entry of final judgment.

C. **The Twelve Sumps Were Dug in Early 1942, Before Any Acid Waste Was Dumped**.

      The Court asked Plaintiffs to identify when the sumps at McColl were dug, and in particular whether the sumps were dug before waste was first dumped. Closing Argument Transcript at 37. The record makes clear that the sumps were dug in 1942 before any waste was dumped.

      The EPA has recognized that the sumps were dug in 1942, prior to any dumping at McColl. The EPA's Superfund Record of Decision dated April 11, 1984, explains that "[i]n 1942 Eli McColl had 12 pits constructed in what was then a rural area of Orange County." PX511 at 3, 1984 Record of Decision. The Record of Decision then states: "Mr. McColl arranged to haul away acid wastes of refiners producing high octane fuel in the area. From 1942 to 1946, these wastes were dumped in the McColl sumps." *Id.* Dr. Allen J. Medine, an expert witness for the United States, similarly testified that the sumps were dug in 1942 prior to any dumping at McColl. Specifically, Dr. Medine agreed that the sumps "were dug out before any of the waste was put into the ground . . . ." Transcript of Feb. 17, 2016 Trial at 347:3–5. *See also* Plaintiffs' Post-Trial Brief ¶ 337.

D. **Beginning in 1941, Shell Transitioned from Using High-Sulfur Crude from The Signal Hill Oil Field to Less-Sulfurous Crude from Other Sources**.

      At the closing argument, the Court explored the reasons why acid waste production in 1944 should be compared to production in 1946, not in 1941. *See* Closing Argument Transcript at 34–35. Plaintiffs' Post-Trial Brief discusses several reasons why 1946 provides the more appropriate baseline comparison. *See, e.g.*, Plaintiffs' Post-Trial Brief at ¶ 162 (citing evidence). One of those reasons is that in 1941, Shell's refineries relied primarily on a high-sulfur, heavy crude oil from the Signal Hill Oil Field. *Id.* at ¶ 162(b). Acid treatment of this type of crude oil produced more acid sludge than treatment of other, less sulfurous crudes. *Id.* In 1941, Shell completed a pipeline to begin making use of low-sulfur crudes from the Ventura Oil Field, which produced less sludge

when acid treated. *Id.* Shell completed its transition away from using the Signal Hill field in 1943, and from 1944 to 1946, Shell's crude oil sources remained fairly consistent. *Id.* Accordingly, Shell's crude oil sources were in a state of transition from 1941 to 1943, and thus do not provide a sound basis for analyzing the effect of avgas production on acid sludge production rates. *Id.*

At the closing argument, the Court inquired about a record cite for the proposition that Shell received its oil from the Signal Hill Oil Field in 1941. Closing Argument Transcript at 35. Based on his analysis of the Shell operating reports, Gregory Kipp, one of Plaintiffs' expert witnesses, testified at trial to the fact that Shell received its oil from the Signal Hill Oil Field in 1941, and that the oil from that field "was very sulfurous and very heavy." Transcript of Feb. 16, 2016 Trial at 246:8–22. Mr. Kipp also testified that "in 1941, [Shell] completed a pipeline to pull the sweet, low sulfur crude from Ventura [Oil Field] that allowed them to be able to make less sludge per barrel . . . ." *Id.* at 246:23–25. Mr. Kipp testified that the use of Signal Hill Oil Field "makes 1941 and the subsequent years not comparable because almost all of their production from '41 was from that sour, heavy feedstock." *Id.* at 247:3–5. *See also* PX1103 at Year 1941 at 3; *id.* at Year 1942 at 3; *id.* at Year 1943 at 3, Shell Wilmington & Dominguez Refineries Operating Reports (1939–1943); PX1104 at Year 1944 at 3; *id.* at Year 1945 at 3; *id.* at Year 1946 at 3, Yearly Operating Reports Wilmington Refinery, Shell Oil Co. (1944–1947).

   E.   **The War Production Board Controlled Tank Car Usage During World War II.**

The shortage of tank cars during World War II, and the subsequent rationing of tank car usage during the War, limited Plaintiffs' ability to send acid sludge to Northern California for reprocessing, and thus forced Plaintiffs to dump more acid sludge than they otherwise would have. Plaintiffs' Post-Trial Brief at ¶¶ 173–82. At the closing argument, the Court and its Law Clerk inquired as to which government entity controlled the use of tank cars during World War II.

Closing Argument Transcript at 57.

The War Production Board was the government entity that controlled and limited the use of tank cars during World War II. Mr. Kipp testified in his written direct testimony that "[t]he War Production Board had the power to allocate the use of these tank cars in order to further the war effort." PX17 at 49, Written Testimony of Gregory Kipp. The parties have also previously stipulated that the War Production Board controlled the use of tank cars. PX11 at Stip. 342, CERCLA Stipulations. *See also Shell Oil Co. v. United States*, 751 F.3d 1282, 1288 (Fed. Cir. 2014) (referring to the War Production Board as the entity responsible for controlling the transportation of acid waste via tank car).

**F.   How to Convert Barrels to Cubic Yards or Tons.**

   **1.   *Converting barrels to cubic yards*.**

The Court inquired as how to convert barrels to cubic yards. Closing Argument Transcript at 15. Gregory Kipp's written direct testimony explains how to convert cubic yards to barrels. *See* PX17 at 120; PX948, Kipp Rebuttal Report Table 10.2: Calculations for Acid Waste at McColl Site. There are three steps to the calculation:

> ➢ *First*, multiply the total number of cubic yards by 27 to obtain total cubic feet;
>
> ➢ *Second*, multiply total cubic feet by 7.48 to convert to gallons; and
>
> ➢ *Third*, divide total gallons by 42 to convert to barrels.

Thus, to convert barrels to cubic yards, one need only reverse the operations:

> ➢ *First*, multiply the total number of barrels by 42 to obtain gallons;
>
> ➢ *Second*, divide total gallons by 7.48 to obtain cubic feet; and
>
> ➢ *Third*, divide cubic feet by 27 to obtain cubic yards.

**2.  *Converting barrels to tons*.**

At oral argument, counsel for the Government presented a formula to convert barrels of acid sludge to tons, Closing Argument Transcript at 16–20, and the Court's Law Clerk provided the parties with a spreadsheet that reflected Government counsel's formula. Upon review of the record, Plaintiffs have identified two errors in Government counsel's formula. First, a barrel contains 42 gallons, not 55 gallons as Government counsel suggested. *See* PX17 at 120. Second, a gallon of water weighs approximately 8.34 pounds, not 8 pounds. *See* FRANK R. SPELLMAN, BASIC MATHEMATICS FOR WATER & WASTEWATER OPERATORS 13 (2d ed. 2014), https://goo.gl/WygB7Z.

December 2, 2016                                        Respectfully submitted,

*Of counsel*:                                           /s/ Michael W. Kirk
Vincent J. Colatriano                                   Michael W. Kirk
William C. Marra                                        *Counsel of Record*
COOPER & KIRK, PLLC                                     COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.                         1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036                                  Washington, D.C. 20036
(202) 220-9600                                          (202) 220-9600
(202) 220-9601 (fax)                                    (202) 220-9601 (fax)
                                                        mkirk@cooperkirk.com

**CERTIFICATE OF SERVICE**

I hereby certify that on December 2, 2016, I caused a copy of the foregoing to be served

by the Court's electronic filing system on the following counsel:

Stephen C. Tosini
Commercial Litigation Branch, Civil Division
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005


/s/ Michael W. Kirk
Michael W. Kirk