1  Kamala D. Harris
2  Attorney General of California
   TIMOTHY R. PATTERSON
3  Supervising Deputy Attorney General
   State Bar No. 72209
4   110 West A Street, Suite 1100
   San Diego, CA 92101
5  P.O. Box 85266
   San Diego, CA 92186-5266
6  Telephone: (619) 645-2013
   Fax: (619) 645-2012
7  E-mail: Tim.Patterson@doj.ca.gov
   *Attorneys for Plaintiff State of California,*
8  *ex. rel. California Department of Health Service,*
   *Hazardous Substance Account, and Hazardous*
9  *Substance Cleanup Fund*

10               UNITED STATES DISTRICT COURT

11       CENTRAL DISTRICT OF CALIFORNIA, WESTERN DISTRICT

12

13

14
   | **UNITED STATES OF AMERICA,** | CASE NO. CV 91-00589 BRO |
15 | **et al.,** | |
16 | Plaintiffs, | **JOINT STATUS REPORT** |
17 | v. | Date:        TBD |
   | | Time:        TBD |
18 | **SHELL OIL COMPANY, et al.,** | Courtroom: Spring Street 14 |
   | | Judge:       Hon. Beverly Reid |
19 | Defendants. | O'Connell |
20

21

22                      **INTRODUCTION**

23       This case was reassigned to the Honorable Beverly Reid O'Connell on

24  November 21, 2013.  The parties submit this joint report pursuant to the Court's

25  order of November 22, 2013, which requires a Joint Status Report "as to any

26  remaining claims and/or parties in this action."

27

28

                                1

## PARTIES

The two plaintiffs in this action to recover environmental cleanup costs are (1) the United States of America ("United States") and (2) the State of California, *ex rel.* California Department of Health Services, Hazardous Account, and Hazardous Substance Cleanup Fund ("State"). The four remaining defendants are (1) Shell Oil Company, (2) Union Oil Company of California, (3) Atlantic Richfield Company and (4) Texaco, Inc. (collectively, the "Oil Companies").

## SUMMARY OF LITIGATION AND REMAINING CLAIMS

### I. CASE HISTORY

The McColl Superfund Site ("McColl Site") is located in Fullerton, California. During World War II, the real property that now comprises the McColl Site received oil refinery wastes generated by the Oil Companies in the production of civilian petroleum products and military petroleum products, including high-octane aviation fuel ("avgas") manufactured for the United States. In the 1980's and thereafter, the United States, the State and the Oil Companies incurred costs addressing the investigation and cleanup of the acid sludge and other hazardous substances at the McColl Site. A long-term remedy was selected and implemented during 1995-1997, involving a capping and containment of the hazardous substances, plus a perpetual gas collection and treatment system and groundwater monitoring. The Oil Companies subsequently preformed the remedy at the Site. Costs continue to be incurred by the United States, the State and the Oil Companies in relation to the ongoing implementation of the remedy.

In 1991, the United States and the State (collectively, "government plaintiffs") filed suit against the Oil Companies (and other entities that have settled out of the case), to recover the government plaintiffs' respective environmental response costs related to McColl Site, pursuant to the Comprehensive Environmental, Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601, et seq. Also in 1991, the Oil Companies counterclaimed against the United States.

1  In 1993, the Court granted the government plaintiffs' Motions for Summary
2  Judgment, holding the Oil Companies jointly and severally liable under CERCLA,
3  42 U.S.C. § 9607(a), for environmental response costs related to contamination at
4  the McColl Site, in *United States of America, et al. v. Shell Oil Company, et al.*,
5  841 F. Supp. 962 (C.D. Cal. 1993). The United States Court of Appeals for the
6  Ninth Circuit affirmed this judgment on June 28, 2002. (Docket No. 505.)

7  On December 12, 1994, the Court entered a consent decree entitled "Partial
8  Consent Decree Among Plaintiffs and Oil Company Defendants Regarding Certain
9  Cost Claims and Order" ("1994 Consent Decree"). (Docket No. 270). Pursuant to
10 the 1994 Consent Decree, the Oil Companies paid $13,248,000.00 to resolve the
11 United States' claim for "Past United States Response Costs," and $4,752,000.00 to
12 resolve the State's claim for "Past State Response Costs," which generally
13 consisted of costs incurred by the United States and the State during the 1980's and
14 a portion of 1990. In Section VII of the 1994 Consent Decree, the parties to the
15 decree acknowledged that the Court's September 28, 1993, judgment and order
16 constituted a declaratory judgment pursuant to Section 113(g)(2) of CERCLA in
17 favor of the United States and the State against the Oil Companies for "Ongoing
18 Response Costs," as defined in the 1994 Consent Decree. The parties further
19 acknowledged in the 1994 Consent Decree the rights of the United States and the
20 State to seek to recover these Ongoing Response Costs in this case and the rights of
21 the Oil Companies to challenge such costs. 1994 Consent Decree, pp. 6, 13.
22 However, the parties also agreed that "[n]o such final judgment shall be entered
23 against the [Oil Companies] prior to entry of judgment on the counterclaims
24 asserted by these defendants in this action." *Id.* at ¶ 14.

25 On September 18, 1995, the Court adjudged the United States, in its capacity
26 as a counterclaim defendant, to be a liable party with respect to the McColl Site
27 pursuant to Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3). (Docket No.
28 379.)

1   On August 11, 1998, the Court issued a Memorandum and Order finding the
2   United States to be responsible for 100 percent of the response costs incurred by the
3   government plaintiffs in relation the McColl Site. (Docket No. 478.)

4   A stipulated Final Judgment Pursuant to Rule 54(b) FRCP was entered on
5   October 13, 1999, allowing the CERCLA liability issues of the Oil Companies and
6   the United States to be appealed. (Docket No. 489.)

7   On June 28, 2002, the United States Court of Appeals for the Ninth Circuit
8   affirmed this judgment with respect to the liability of the Oil Companies for
9   CERCLA response costs related to the McColl Site and also the liability of the
10  United States with respect to wastes at the McColl Site resulting from the
11  production of benzol. The Court also ruled that United States was not liable under
12  CERCLA as an arranger for disposal of the non-benzol wastes, and therefore the
13  trial court's allocation of 100 percent of the liability for all such wastes at the site
14  was moot. *United States, et al. v. Shell Oil Company, et al.*, 294 F.3d 1045, 1048-
15  1049, 1059-1061 (9th Cir. 2002). Two petitions for certiorari subsequently filed by
16  the Oil Companies were denied by the Supreme Court of the United States on
17  January 13, 2003.

18  In August 2003, to resolve the Oil Companies' CERCLA-based counterclaims
19  against the United States, the Oil Companies and the United States stipulated that
20  the United States' share of legal responsibility under CERCLA for response costs
21  related to the McColl Site, based on the United States' liability pursuant to
22  CERCLA for the benzol wastes deposited at the Site, is 6.25%. Joint Request For
23  Status Conference (Aug. 12, 2003) at 1-2, n. 1 (Docket No. 507). On October 29,
24  2003, this Court denied the request of the Oil Companies to conduct further
25  allocation proceedings regarding the non-benzol wastes at the Site and associated
26  response costs (Docket No. 510).

27  As a result of the stipulation and the Court's ruling described above, the Oil
28  Companies are legally responsible under CERCLA for 93.75 percent of the

1   response costs incurred by the United States and the State in relation to the McColl
2   Site. With respect to the costs previously resolved pursuant to the 1994 Consent
3   Decree, the United States is responsible under CERCLA for reimbursing the Oil
4   Companies for the United States' 6.25 percent share of the costs paid by the Oil
5   Companies to the State pursuant to the 1994 Consent Decree.

6       On April 8, 2005, pursuant to the Court's Amended Order to Transfer Certain
7   Counterclaims to the Court of Federal Claims, all remaining counterclaims filed by
8   the Oil Companies against the United States were dismissed or transferred to the
9   Court of Federal Claims. (Docket No. 529.)

10      During February 2006, the United States and the State each filed motions for
11  summary judgment for their respective CERCLA response costs incurred generally
12  from mid-1990 through June 1994. The Oil Companies filed an ex parte
13  application to deny or stay the motions on February 22, 2006. The Hon. Robert J.
14  Kelleher issued a Minute Order on March 20, 2006, finding that "the Motions for
15  Summary Judgment are appropriate for decision without oral argument." The
16  motions were deemed submitted and the hearing date was vacated. (Docket No.
17  583.)

18      The United States, the State and the Oil Companies filed a Joint Request for
19  Decisions on Submitted Motions for Summary Judgment on December 5, 2006.
20  (Docket No. 593.) On January 31, 2007, the parties filed a Joint Request to Chief
21  Judge to Establish an Intended Decision Date Pursuant to L.R. 83-9.4. (Docket No.
22  594.) On May 21, 2007, Chief Judge Stotler issued an Order Establishing an
23  Intended Decision Date, which required a decision to be rendered on the plaintiffs'
24  summary judgment motions no later than 120 days after the decision by the Court
25  of Federal Claims, in Washington, D.C., on certain dispositive motions in that court
26  (i.e., the Oil Companies' motion for summary judgment and the United States'
27  motion to dismiss) becomes final. (Docket No. 598.) On June 26, 2007, the State
28  filed a Motion for Modification of Intended Decision Date and the United States

1   filed a Motion for Reconsideration of Intended Decision Date on June 27, 2007.

2   The Oil Companies opposed the motions. (Docket Nos. 599, 600, 604.)

3      Chief Judge Stotler issued a Tentative Ruling on Law & Motion Matters on

4   August 31, 2007, stating the Chief Judge will consult with the judge assigned to the

5   summary judgment motions. (Docket No. 608.)

6      On October 1, 2007, Judge Kelleher issued a Minute Order vacating the

7   Court's order of submission dated March 20, 2006, stating that the Court had

8   signed the Oil Companies' Proposed Order Granting Defendants' Ex Parte

9   Application for an Order Denying Without Prejudice Plaintiffs' Premature Motions

10   for Summary Judgment. This order denied the United States' and the State's

11   motions for summary judgment without prejudice and further provided that "No

12   party to this action shall file any dispositive motions, including motions for

13   summary judgment, until further order of the Court, which order may be requested

14   by any party by noticed motion." (Docket No. 610.) Chief Judge Stotler took

15   judicial notice of this order and, on October 4, 2007, denied as moot the

16   government plaintiffs' motions for modification and reconsideration. (Docket No.

17   611.)

18      On July 10, 2009, the State resolved its CERCLA cost recovery claim against

19   the United States, in its capacity as a liable party for 6.25 percent of the State's

20   response costs related to the McColl Site, for the period of October 1990 through

21   June 2008, with the entry of a Partial Consent Decree. (Docket No. 619.) The

22   alleged liability of the Oil Companies for 93.75 percent of the State's response

23   costs for this time period was not resolved.

24      On March 16, 2012, the State resolved its CERCLA cost recovery claim

25   against the United States, in its capacity as a liable party for 6.25 percent of the

26   State's response costs related to the McColl Site, for the period of July 2008

27   through June 2011, with the entry of another Partial Consent Decree. (Docket No.

28

622.) The alleged liability of the Oil Companies for 93.75 percent of the State's response costs for this time period was not resolved.

In Washington, D.C., the Oil Companies' non-CERCLA, contract-based claims against the United States concerning the production of avgas have been litigated since 2005 in both the Court of Federal Claims and the United States Court of Appeals for the Federal Circuit. In those proceedings, the Oil Companies have sought in excess of $84 million in alleged costs and interest from the United States. In 2008 and 2009, Senior Judge Smith of the Court of Federal Claims issued final decisions in favor of the Oil Companies as to both liability and damages. *See Shell Oil Company, et al. v. United States*, 80 Fed. Cl. 411 (Fed. Cl. 2008); 86 Fed. Cl. 470, 475 (2009). Subsequently, however, Judge Smith discovered and informed the parties that his wife owned a small amount of stock in a parent company of two of the Oil Companies. On the United States' motion, the United States Court of Appeals for the Federal Circuit vacated these judgments and required Judge Smith to recuse himself from the case. *Shell Oil Company, et al. v. United States*, 672 F.3d 1283 (Fed. Cir. 2012). On January 14, 2013, a different Court of Federal Claims judge, Judge Wheeler, granted summary judgment for the United States. *Shell Oil Company, et al. v. United States*, 108 Fed. Cl. 422 (2013). The Oil Companies have appealed that decision to the United States Court of Appeals for the Federal Circuit. Briefing in that appeal, *Shell Oil Company, et al. v. United States*, Case No. 2013-5051, is now complete and the matter is set for oral argument on January 7, 2014.

## II. REMAINING CLAIMS

The remaining claims in this case consist of (1) the United States' claim under CERCLA for environmental response costs incurred generally between July 1, 1990 and June 30, 2012, plus related prejudgment interest, in an amount that the United States alleges totals approximately $43 million and (2) the State's claim under CERCLA for environmental response costs incurred generally between

1   October 1990 and the June 30, 2013, plus related prejudgment interest, in an

2   amount that the State alleges totals approximately $5.7 to $6 million.  As noted

3   above, the State has settled with the United States for 6.25 percent of the State's

4   claim for costs incurred between October 1990 through June 2011.

5 **III. GOVERNMENT PLAINTIFFS' STATEMENT**

6     **A.  This Case Has Been Delayed Too Long**

7       The key question for the Court to resolve at this juncture is whether the United

8   States and the State can proceed with their outstanding cost recovery claims in this

9   case, while the Oil Companies' contract-related claims against the United States are

10   pending in the United States Court of Appeals for the Federal Circuit in

11   Washington, D.C.  The United States and the State wish to proceed; the Oil

12   Companies do not.

13       The Oil Companies' contract-based counterclaims that were transferred away

14   from this case to the Court of Federal Claims over eight years ago, in April 2005,

15   are still being  litigated, currently in the Federal Circuit Court of Appeals.  There is

16   no well-defined time frame for that separate litigation to end.  It is no longer

17   reasonable to prevent the United States and the State from pursuing their cost

18   claims in this case, due to that separate non-CERCLA litigation, especially in light

19   of the fact that on several occasions throughout the long history of this case this

20   Court has recognized the government plaintiffs' unfettered rights to proceed to

21   judgment, notwithstanding the Oil Companies' breach of contract counterclaims, as

22   described below.

23     **B.  When the Court Granted Summary Judgment for the Plaintiffs in 1993, It Recognized Congress' Intent to Allow Government Plaintiffs to Recover Their Costs While Counterclaims Are Pending**

24

25

26       The law of CERCLA, including the law of this case, provides for the

27   resolution of government cost recovery claims before counterclaims are resolved.

28

1   When granting summary judgment to the United States and the State in 1993, the

2   Court stated:

3       CERCLA clearly provides that cost recovery claims can be sought

4       before counterclaims are resolved.  And the legislative history of

5       CERCLA indicates that Congress intended for the Governments to be

6       entitled to its costs prior to the resolution of any counterclaims or cross-

7       claims for contribution.

8   *United States v. Shell Oil Co.*, 841 F.Supp. 962, 975 (C.D. Cal. 1993.)

9   This Court further stated:

10      The possibility of partial liability on the part of the governments

11      ought not to stand as a bar to expeditious recovery of response costs, as

12      Defendants will be reimbursed in the event the governments are found

13      liable.  *U.S.  v. Western Processing Company*, 748 F.Supp. 930, 939-40

14      (W.D. Wash. 1990).  The Court is of the opinion that allowing the

15      governments to recover their response costs before resolving Defendants'

16      counterclaims and cross-claims will not unduly prejudice Defendants as

17      they will be reimbursed in the future for any costs paid to the Superfund

18      that are properly attributable to other parties.  *Id.*

19  These explicit rulings are inconsistent with the delay of this litigation that has

20  been in effect since 2007, when the plaintiffs' motions for summary judgment to

21  recover costs incurred from 1990 forward were dismissed without reaching the

22  merits of the motions.

23  **C.    The 1994 Consent Decree Allows the United States and the State**
        **to Recover Their Ongoing Response Costs**

24

25  Ever since December 1994, when this Court approved the 1994 Consent

26  Decree and declared that its Judgment and Order of September 28, 1993, constitutes

27  a declaratory judgment for "Ongoing Response Costs," this Court has recognized

28  the rights of the United States and the  State to pursue their response costs.  1994

1  Consent Decree) ¶ 10, p. 13.(Docket No. 270.)  Paragraph 19 of the 1994 Consent

2  Decree provides: "Settling Defendants likewise agree they will not seek to stay or

3  otherwise delay the supplemental response cost claim and further agree that the

4  supplemental claim may proceed simultaneously with the counterclaims."  1994

5  Consent Decree ¶ 19, p. 19, l. 22-26.  Nevertheless, since 2006 the Oil Companies

6  have continued to attempt to do exactly the opposite.

7       When the United States and the State respectively moved for summary

8  judgment in 2006, they were not acting in contravention of Paragraph 14 of the

9  1994 Consent Decree (Docket No. 270, p. 16, lines 14-19), as the Oil Companies

10 assert, because they were not seeking a final judgment to terminate all of their

11 claims for cost recovery in the District Court.  Instead, the government plaintiffs

12 were seeking summary judgments for specific sets of their respective response costs

13 incurred up through June 2004.   Additional United States and State response costs

14 had been – and still are being -- incurred and the government plaintiffs have the

15 right to seek them as Ongoing Response Costs pursuant to the 1994 Consent Decree.

16      Any continued delay is wholly unwarranted, especially in light of the

17 overarching reservation of rights the government plaintiffs included in Paragraph

18 12 of the 1994 Consent Decree, which provides:  "The United States and State

19 reserve, and this Consent Decree is without prejudice to, all rights against Settling

20 Defendants with respect to all other matters, including, but limited to: . . . liability

21 for Ongoing Response Costs; . . . ."  (1994 Consent Decree ¶ 12, p. 14), l. 20-23; p.

22 15, l. 10.)

23      In summary, Paragraphs 19 and 12 of the 1994 Consent Decree establish the

24 rights of the United States and the State to proceed with their unresolved claims for

25 response costs.  Now is the time to move this case forward.

26

27

28

**D.**  **The 1999 Final Judgment Continues to Recognize the Government Plaintiffs' Rights to Obtain Judgments for Their Costs**

The stipulated Final Judgment Pursuant to Rule 54(b) FRCP entered on October 13, 1999, contains a recital approved by the Oil Companies stating "the parties agree that Plaintiffs [the United States and the State] *retain all of their rights to pursue their claims for response costs to judgment in this Court*, . . . ." Final Judgment Pursuant to Rule 54(b) FRCP, p. 4, , l. 1-3 (emphasis added). (Docket No. 489.)  It is improper for the Oil Companies to attempt to argue away a provision to which they fully agreed, nearly five years after entry of the 1994 Consent Decree, and which the Court adopted in the form of a final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.  During 1999, the government plaintiffs included this specific provision in the final judgment to ensure that their rights to pursue their respective ongoing response costs, as recognized in the 1994 Consent Decree, remained in full force and effect after entry of a final judgment on other issues.  The judgment has not been amended or abrogated in any way since 1999.

**E.**  **The Oil Companies Breach of Contract Counterclaims Were Removed from this Case in April 2005**

This Court no longer possesses jurisdiction over any of the counterclaims filed by the Oil Companies against the United States. On April 8, 2005, all remaining counterclaims were dismissed or transferred to the Court of Federal Claims by the Court's Amended Order to Transfer Certain Counterclaims to the Court of Federal Claims. (Docket No. 529, p. 2.)  The transfer was unequivocal, with no conditions connecting this case to any proceeding in Washington, D.C., much less delaying this case in any way.  Therefore, there is no basis for binding the United States and the State, as plaintiffs in a CERCLA cost recovery case pending in the U.S. District Court in Los Angeles, to an entirely separate breach of contract lawsuit the Oil Companies are pursuing against the United States.  Ever since December 1994, the

1    Oil Companies have been liable to the United States and the State for Ongoing

2    Response Costs, subject to the liability stipulation between the United States and

3    the Oil Companies entered into in August 2003. (Docket No. 507.) The Oil

4    Companies will remain liable for Ongoing Response Costs until all such claims of

5    the government plaintiffs are settled or adjudicated. Therefore, this Court should

6    not allow the mere existence of the Oil Companies' unresolved litigation in the

7    Court of Federal Claims and the Court of Appeals for the Federal Circuit, over

8    which this Court has no jurisdiction, to serve as road block to the United States'

9    and the State's legitimate pursuit of their outstanding environmental response costs.

10   **F.    Indemnification Rights, If Any Exist, Are Legally Irrelevant to
         the Oil Companies' CERCLA Liability**

11

12   The basic contention of the Oil Companies has been that a ruling against the

13   United States in the contract claim litigation occurring in the Court of Appeals for

14   the Federal Circuit could effectively moot this action. This is legally incorrect.

15   The Oil Companies have been found to be liable under the Comprehensive

16   Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C.

17   § 9607, for the environmental response costs the United States and the State have

18   incurred, and will incur, in a manner not inconsistent with the National

19   Contingency Plan, 40 C.F.R. Part 300, in connection with the McColl Site. All

20   appellate avenues on the major issue of the Oil Companies' CERCLA liability have

21   been exhausted. Thus, the Oil Companies will be liable under CERCLA regardless

22   of the outcome of the contract litigation and until all judgments liquidating the

23   United States' and the State's claims for CERCLA response costs have been

24   entered and resolved. A contractual right of indemnity, if found to exist by the

25   Court of Federal Claims in favor of the Oil Companies, unequivocally is not a

26   defense to the Companies' existing CERCLA liability to the government plaintiffs.

27   As CERCLA plainly states:

28

12

No indemnification, hold harmless, or similar agreement or conveyance shall be effective to transfer from the owner or operator of any vessel or facility or from any person who may be liable for a release or threat of release under this section, to any other person the liability imposed under this section.

42 U.S.C. § 9607(e)(1).

Thus, the issue of whether the Oil Companies might obtain a right of indemnity against the United States is irrelevant.

## G. Conclusion

In summary, there is no legal reason to delay this matter by tying it to the outcome of contract litigation in another case. The United States and the State respectfully request the Court to allow them to proceed with their outstanding cost recovery claims. If the Court believes further briefing is appropriate or a hearing before the Court would be helpful, the government plaintiffs are ready to respond.

## IV. STATE'S SUPPLEMENTAL STATEMENT

The State is in a unique position here. The Oil Companies never filed any counterclaims against the State, based on contracts or any other matter. The contract-based and other counterclaims filed by the Oil Companies against the United States in 1991 were at issue, but never litigated against the United States for 14 years, until April 2005, when the contract claims were transferred belatedly, but appropriately, to the Court of Federal Claims. The State is not a party to that contract litigation. Based on the rulings, consent decrees and stipulation in this case, as discussed above, the Oil Companies will be liable to the State under CERCLA until the Oil Companies' liability for 93.75 percent of the State's recoverable CERCLA response costs incurred generally since October 1990 is resolved in the instant litigation. Moreover, regardless of the eventual outcome of the contract claim litigation in Washington, D.C., the Oil Companies never will possess a right of indemnification against the State for any outstanding costs related

13

1   to the McColl Site.  Given these circumstances, there is no equitable basis for

2   delaying this case as to the State.

3       If the Court allows this case to proceed, as a first step, the State requests the

4   Court to order mediation between the State and Oil Companies, pursuant to the

5   Court-Directed ADR Program.  Given the State's unique position here, mediation is

6   a reasonable initial means of resolving the State's relatively minor cost claim in this

7   matter.  The State successfully has settled almost all of its claims against the United

8   States regarding the United States' 6.25 percent share of liability for the States'

9   costs related to the McColl Site.  As it always has been during this litigation, the

10  State is very interested at this time in resolving the Oil Companies' 93.75 percent

11  share of the liability for State response costs.  A court-ordered settlement effort

12  between the State and the Oil Companies at this time would promote the efficient

13  administration of this case.

14  **V.   OIL COMPANIES' STATEMENT**

15      This action has been stayed since 2007 to allow the Oil Companies' claims

16  against the United States to be resolved in the Court of Federal Claims prior to

17  further proceedings in this action.  For many years, the United States and State have

18  made no effort whatsoever to overturn or terminate the stay.  However, they are

19  now attempting, through this Joint Status Report, to capitalize on the recent re-

20  assignment of this action by seeking to re-litigate issues that have already been

21  resolved by the prior judge.  These efforts should be denied.

22      The stay should remain in place for four reasons:  (A) the United States and

23  State, in accepting the prior $18 million payment from the Oil Companies for

24  certain costs, already agreed that no judgment on any of their additional costs will

25  be entered prior to entry of a judgment on the Oil Companies' claims against the

26  United States;  (B) continuation of the stay will advance judicial economy; (C) the

27  original judge on this case, in consultation with the former Chief Judge of this

28  Court, already determined, based on the same arguments presented in this Joint

1 Status Report, that this action should be stayed; and (D) since the stay was granted,

2 the Oil Companies have continued to pursue their claims against the United States

3 diligently, and proceedings are moving forward in the Court of Federal Claims and

4 the U.S. Court of Appeals for the Federal Circuit.

5     **A.   The United States and State Should Not Be Allowed to Renege**
6         **on Their Agreement Not to Seek a Judgment on Their**
        **Remaining Claims Prior to a Judgment on the Oil Companies'**
7         **Claims**

8     In 1994, the Oil Companies paid $18 million to the United States and State to

9 resolve claims for certain costs at the McColl site. *See* 1994 Consent Decree. In

10 exchange, the United States and State agreed not to seek a final judgment to require

11 the Oil Companies to pay any additional response costs prior to a judgment on the

12 Oil Companies' claims against the United States. *Id.* The 1994 Consent Decree

13 provides:

14            "No final judgment has been entered in this action from which

15            an appeal as of right may be taken and, by agreement of the

16            parties, <u>no such final judgment shall be entered against the</u>

17            <u>Settling Defendants prior to the entry of judgment on the</u>

18            <u>counterclaims asserted by these defendants in this action</u>."

19            (Emphasis added.) 1994 Consent Decree, ¶ 14.

20     This agreement made good sense at the time and still makes sense today. As

21 noted above, the Oil Companies are pursuing contract claims against the United

22 States that could both effectively moot the United States' cost claims and obviate

23 any need for the Oil Companies to challenge the State's costs. If the Oil

24 Companies prevail on their claims against the United States now pending in the

25 Federal Circuit, the United States will be responsible for the costs at issue in this

26 action, including the State's costs.

27     While the United States and State accepted the $18 million under the terms of

28 the 1994 Consent Decree, they have since attempted to breach their agreement by

1   seeking a judgment on their claims prior to the resolution of the Oil Companies'

2   claims.  In December 2005, the United States and State notified the Oil Companies

3   that they intended to seek summary judgment on their additional alleged costs. *See*

4   Declaration of Peter R. Taft in Support of Defendants' Opposition to United States'

5   *Ex Parte* Application for Issuance of a Protective Order, ¶ 10 (Docket No. 563).

6   The Oil Companies noted in a subsequent meet and confer that these motions

7   would violate the 1994 Consent Decree, since the Oil Companies' claims against

8   the United States were still pending, and proposed that the parties seek this Court's

9   guidance on this issue in a joint status conference request. *See* Declaration of

10  Cynthia L. Burch in Support of Defendants' Opposition to United States' *Ex Parte*

11  Application for Issuance of a Protective Order, ¶ 10 (Docket No. 562).  The United

12  States and State refused and filed their motions in February 2006. (*Id.*; *see also*

13  Docket No. 532.)  The Oil Companies opposed those motions as premature and

14  were required to expend substantial time and money doing so.

15       In numerous motions, oppositions and status reports filed with this Court since

16  2006, the United States and State have asserted various arguments, including the

17  arguments repeated above, seeking to renege on their prior agreement.  None of

18  their arguments has merit.

19       First, the United States and State have argued that paragraph 14 of the 1994

20  Consent Decree was rendered void by a "whereas" provision in a 1999 order

21  (Docket No. 489), which recites that plaintiffs "retain all of their rights to pursue

22  their claims for response costs to judgment in this Court."  The Oil Companies have

23  never argued that the United State and State lost their right to pursue their claims.

24  The question is timing.  The 1994 Consent Decree expressly provides that a

25  judgment on the United States and State's additional costs must await entry of a

26  final judgment on the defendants' claims.  1994 Consent Decree, ¶ 14.  The 1999

27  Order does not alter that agreement.

28

1    Second, the United States and State argue that paragraph 14 of the 1994
2    Consent Decree should be disregarded, asserting that it conflicts with paragraph 19,
3    which provides: "Settling Defendants likewise agree that they will not seek to stay
4    or otherwise delay the supplemental response cost claim and further agree that the
5    supplemental cost claim may proceed simultaneously with the counterclaims." In
6    fact, the two provisions can be reconciled. Paragraph 19 merely provides that the
7    cost claims "may proceed simultaneously with the counterclaims," while paragraph
8    14 addresses the timing and order of the judgments on those claims. Whether or
9    not it is possible under paragraph 19 for the parties to pursue these claims
10   simultaneously through discussions or discovery, the United States and State cannot
11   seek a judgment on their claims until a judgment has been issued on the Oil
12   Companies' contract claims. Since a judgment on the Oil Companies' contract
13   claims could effectively moot the claims against the Oil Companies in this
14   litigation, it still makes good sense to maintain the stay as described in greater
15   detail below.

16   The government plaintiffs also cite various authority for the proposition that
17   contractual indemnification rights are no defense to CERCLA claims. However,
18   none of those cases support the proposition that the parties cannot decide among
19   themselves the order in which they will seek judgment against each other, as the
20   parties here did in agreeing to the terms of the 1994 Consent Decree.

21   Since the United States and State already agreed under the terms of the 1994
22   Consent Decree not to seek a judgment on their claims prior to entry of judgment
23   on the Oil Companies' claims against the United States, they should not be allowed
24   to breach that agreement and circumvent the decree now.

25   **B.    Continuation of the Stay Would Advance Judicial Economy**

26   A court has inherent authority to manage its docket and schedule in
27   furtherance of judicial economy. *See* Fed. R. Civ. P. 16(b); *Zivkovic v. Southern*
28   *California Edison Co.*, 302 F.3d 1080, 1087-88 (9th Cir. 2002) (district courts have

1     broad discretion to modify the trial schedule); *Stewart v. Ragland*, 934 F.2d 1033,

2     1042 (9th Cir. 1991) ("A trial judge is given broad discretion in supervising the

3     pretrial phase of the litigation. . . ."); *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358,

4     1360 (C.D. Cal. 1997) (powers to stay or otherwise manage proceedings are within

5     the trial court's discretion).  Under the circumstances, it makes good sense for this

6     Court to continue the stay of this action to advance judicial economy.

7         As noted above, the parties and Court already have agreed that no judgment

8     will be issued on the claims of the United States and State prior to a judgment on

9     the Oil Companies' claims.  Therefore, even if the United States and State are

10    allowed to conduct fact and expert discovery and engage in motion practice at this

11    time, any judgment on the claims in this action would still need to await a final

12    judgment on the Oil Companies' claims in the Court of Federal Claims and Federal

13    Circuit.  Since a judgment on these claims could moot the United States' claims

14    while obviating any need for the Oil Companies to challenge the State's costs, any

15    further proceedings in this action or court-ordered mediation could constitute a

16    complete waste of time, money and resources.

17         Under the circumstances, this Court can and should enforce the 1994 Consent

18    Decree by exercising its discretion to continue the stay in this action to avoid the

19    substantial waste of resources that could result if this litigation resumes or the

20    parties are directed to court-ordered mediation prior to a resolution of the

21    proceedings in the Court of Federal Claims and Federal Circuit.

22       **C.**   **Judge Kelleher, in Consultation with the former Chief Judge of This Court, Already Determined Based on the Same Arguments Presented Here That This Action Should Be Stayed**

23

24         After reviewing the arguments of the parties (including the same arguments

25    now put forward by the United States and State above), Judge Kelleher previously

26    determined that the United States and State should not be allowed to proceed with

27    their motions for summary judgment, and that this litigation should be stayed.

28    (Docket Nos. 609, 610.)  On October 1, 2007, Judge Kelleher signed the Oil

1   Companies' proposed order granting their *Ex Parte* Application, denying the

2   United States' and State's motions for summary judgment on their costs and staying

3   further proceedings. (Docket No. 610.)

4         Judge Kelleher's decision to stay this action followed a hearing on the parties'

5   various motions presided over by Judge Stotler, the former Chief Judge of this

6   Court. (*See* Docket No. 609.) In issuing his order, Judge Kelleher expressly noted

7   that he issued the order for a stay "after meeting and extensive discussion with

8   Chief Judge Stotler." *Id.*

9         Therefore, the issues raised in the United States' and State's portion of this

10  Joint Status Report were previously fully argued, considered and resolved by the

11  prior judge. Based on these arguments, the judge had determined to maintain the

12  stay consistent with the intent of the 1994 Consent Decree and considerations of

13  judicial economy.

14  **D.    The Oil Companies Have Diligently Pursued Their Claims**

15  **       Against the United States**

16        Since before the stay was first granted in this action, the Oil Companies have

17  diligently pursued their claims against the United States, and proceedings are

18  moving forward in the Court of Federal Claims and the Federal Circuit

19        As described above, the Oil Companies and the United States have been

20  actively litigating in the Court of Federal Claims for several years. Given the

21  recusal of the original trial judge upon the United States' motion, the original

22  rulings and orders in those proceedings were vacated, and it was necessary for the

23  parties to litigate many of the issues a second time. As a result, the proceedings in

24  the Court of Federal Claims have taken more time than anticipated. However, the

25  proceedings are moving forward, and oral arguments in the United States Court of

26  Appeals for the Federal Circuit are scheduled for January 7, 2014, as noted above.

27        Since the Oil Companies are continuing to diligently pursue their claims

28  against the United States in the Court of Federal Claims and the Federal Circuit,

1    there is no reason for this Court to change course by terminating the stay at this

2    time.

3         **E.    Conclusion**

4         For the foregoing reasons, the Oil Companies do not believe that any further

5    proceedings in this action are necessary at this time.  Once the Oil Companies'

6    contract claims are resolved, the parties, in consultation with this Court, can

7    determine whether any further proceedings are needed.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1                                     Respectfully submitted,

2                                       PLAINTIFF STATE OF
CALIFORNIA, et al.

Dated: December 6, 2013

TIMOTHY R. PATTERSON
Supervising Deputy Attorney
General
California Department of Justice
Counsel for the State of California, et al.

PLAINTIFF UNITED STATES OF
AMERICA

*Timothy R. Patterson*
*on behalf of*

Dated: December 6, 2013

WILLIAM A. WEINISCHKE
Senior Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources
Division
United States Department of Justice
Counsel for the United States

COUNTERCLAIM DEFENDANT
UNITED STATES OF AMERICA

*Timothy R. Patterson*
*on behalf of*

Dated: December 6, 2013

JOSHUA M. LEVIN
Senior Trial Attorney
Environmental Defense Section
Environment and Natural Resources
Division
United States Department of Justice
Counsel for the United States

DEFENDANTS SHELL OIL
COMPANY, UNION OIL
COMPANY OF CALIFORNIA,
ATLANTIC RICHFIELD
COMPANY and TEXACO, INC.

*Timothy R. Patterson*
*on behalf of*

Dated: December 6, 2013

GREG A. CHRISTIANSON, Esq.
Bingham McCutchen LLP
Counsel for Shell Oil Company, et al.

21

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:  **United States of America, et al. v. Shell Oil Company, et al.**
No.:        **U.S.D.C. Central District, No. 2:91-cv-00589 RJK**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

On **December 6, 2013**, I served the attached **JOINT STATUS REPORT**

by placing a true copy thereof enclosed in a sealed envelope in the internal mail collection system at the Office of the Attorney General at 110 West A Street, Suite 1100, P.O. Box 85266, San Diego, CA 92186-5266, addressed as follows:

Greg A. Christianson, Esq.
James J. Dragna, Esq.
Sang (Alvin) Lee, Esq.
Bingham McCutchen LLP
355 South Grand Avenue, Ste. 4400
Los Angeles, CA 90071-3106
***Counsel for Shell Oil Company, Union Oil
Company of California, Atlantic Richfield
Company, and Texaco, Inc.***

William A. Weinischke, Esq.
Environmental Enforcement Section
Environment & Nat. Resources Division
United States Dept. of Justice
P. O. Box 7611 Ben Franklin Station
Washington, D.C. 20044
***Counsel for the United States as Plaintiff***

Joshua M. Levin, Esq.
Environmental Defense Section
Environment and Nat. Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044
***Counsel for the United
States as Counterclaim Defendant***

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **December 6, 2013**, at San Diego, California.

| Linda Jean Fraley | *Linda Jean Fraley* |
|---|---|
| Declarant | Signature |